UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO.  3:21−cv−00144−TWP−MJD |
| | ) | |
| UNIVERSITY OF SOUTHERN INDIANA,) | | |
| DAMEION DOSS, | ) | |
| BETH DEVONSHIRE, | ) | |
| D. STAFFORD & ASSOCIATES, | ) | |
| KAREN NUTTER, | ) | |
| GRAND RIVER SOLUTIONS, INC. | ) | |
| Defendant | ) | |

**PLAINTIFF'S CONSOLIDATED BRIEF IN RESPONSE TO DEFENDANTS DAMEION DOSS AND BETH DEVONSHIRE'S MOTION TO DISMISS AND DEFENDANT D. STAFFORD & ASSOCIATES MOTION TO DISMISS**

Plaintiff submits his consolidated Response to (i) Motion of Defendants Doss and Devonshire to Dismiss Counts II and III [Dkt. 219], and (ii) Defendant D. Stafford & Associates Motion To Join Motions to Dismiss of USI, Doss and Devonshire [Dkt. 248].[1]

**Introduction**

Defendant Dameion Doss ("Doss") and Beth Devonshire's ("Devonshire") Motion to Dismiss, and Defendant D. Stafford & Associates ("Stafford") joinder Motion to Dismiss seek to dismiss Counts II (42 U.S.C. § 1983 claims) and III (Intentional Infliction of Emotional Distress ("IIED")) of the Second Amended Complaint. For the reasons explained below, both motions should be denied.

---

[1] Stafford did not file a brief in support of its motion, and it makes no independent argument; it simply adopts the motions and briefs of USI, Doss, and Devonshire "in its entirety, as its responsive pleading." [Dkt. 248].

**Standard of Review**

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See Burke v. 401 N. Wabash Venture*, LLC, 714 F.3d 501, 504 (7th Cir. 2013). The court will "treat all well-pleaded factual allegations as true" and "construe all inferences that reasonably may be drawn from those facts in the light most favorable to the non-movant." *Id.*

**Argument**

**A.  No claim is asserted against Stafford in Count II.**

While Stafford joins in Doss and Devonshire's Motion to Dismiss "in its entirety," Plaintiff did not assert a claim against Stafford in Count II. [Dkt. 248; Dkt. 196, ¶¶ 414-430]. Count II asserts 42 U.S.C. § 1983 claims against the individual Defendants, *i.e.*, Doss, Devonshire, and Karen Nutter. *Id.*  Thus, Stafford's motion as to Count II should be denied.

**B.  Count II asserts a plausible Due Process Claim against Doss and Devonshire.**

A successful Due Process claim must meet the following elements: 1) a protected interest 2) a deprivation of that protected interest, and 3) a denial of due process. *Price v. Board of Educ. Of City of Chicago,* 755 F.3d 605, 607 (7th Cir. 2014). Doss and Devonshire have elected not to challenge the third element of Plaintiff's Due Process claim, and they are barred from doing so in their Reply Brief. *Commissioning Agents, Inc. v. Long*, 143 F. Supp. 3d 775, 785 (S.D. Ind. 2015). [Dkt. 220 at 5].  As outlined in greater detail below, Plaintiff has sufficiently alleged the deprivation of his protected interests, and accordingly, Doss and Devonshire's motion to dismiss should be denied.

## 1.  Plaintiff pled the existence of a protected interest.

In order to satisfy the first element of his procedural Due Process claim, Plaintiff need only allege the existence of either a protected property interest or a protected liberty interest. *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.,* 741 F.3d 769, 772 (7th Cir. 2013).

### (i)  Property Interest

While Plaintiff recognizes that this Circuit has long held that there is not a stand-alone property interest in one's education, such an interest may exist by virtue of contract between a student and a university. *Doe v. Purdue,* 928 F.3d 652, 660 (7th Cir. 2019).

Indiana courts have long recognized that the relationship between student and institution is contractual in nature. *See e.g. Amyaya* v. *Brater,* 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013) ("the legal relationship between a student and university [i]s one of implied contract"); *Gordon v. Purdue Univ.,* 862 N.E.2d 1244, 1251 (Ind. Ct. App. 2007) ("[T]he relationship between a student and an educational institution is contractual in nature…."); *Neel v. Indiana University Board of Trustees,* 435 N.E.2d 607, 610 (Ind. Ct. App. 1982) ("The most pervasive and enduring theory is that the relationship between a student and an educational institution is contractual in nature.") This contractual relationship has been recognized by the Seventh Circuit and acknowledged as the standard throughout the United States. *See Ross v. Creighton,* 957 F.2d 410, 416 (7th Cir. 1992) ("It is held generally in the United States that the 'basic legal relation between a student and a private university or college is contractual in nature.")

Further, "[i]t is generally well-accepted that the catalogues, bulletins, circulars, and regulations of a university made available to the matriculant become of [sic] part of the contract." *Amaya,* 981 N.E.2d at 1240 (citing *Ross,* 957 F.2d at 416). USI's sexual harassment policy is no less part of a contract between Plaintiff and USI (the "Policy").  [Dkt. 196-1].

Plaintiff has sufficiently alleged the existence of an implied contract with USI, including the "exact promises [USI] made to [Plaintiff] and, and the promises that [Plaintiff] made in return." *See Doe v. Purdue,* 928 F.3d at 660 (acknowledging that a student claiming a violation of due process must be specific as to the particulars of the implied contract.) Plaintiff alleged that at the time the Title IX Process commenced, he was a student in good-standing and paying tuition to USI. [Dkt. 196, ¶¶ 1, 355, 413, 421, 422]. In addition to paying tuition, Plaintiff's consideration as part of his contract with USI was his compliance with all requirements of enrollment imposed by USI, which included compliance with the Policy, a specific "term and condition of enrollment at the University." [Dkt. 196,  ¶¶ 1, 370, 421; Dkt. 196-1 at 1].

In return, USI was not only to provide Plaintiff with an education, it was, among other things, required to comply with the terms of the Policy. As stated in the Second Amended Complaint:

- USI promised Plaintiff that he would not be sanctioned or suspended for a violation of the Policy without good cause and through a process that was fair, impartial, thorough, equitable and in accordance with the process, procedure, and rights outlined in the Policy and Regulations;
- USI granted Plaintiff specific rights in the Policy which afforded him a right to a continuing education absent a process in accordance therewith which resulted in a determination and sanction with good cause; and
- The Policy granted Plaintiff specific rights which USI took from Plaintiff.

[Dkt. 196 at ¶ 366-368]. These obligations were expressly acknowledged by USI's statement, "We do have certain Federal regulations and other rules that we must follow. These are meant to guide us as we provide due process to all parties and to not follow them could result in dire consequences, such as an overturned decision, for everyone involved." [Dkt. 196, ¶ 120].

Examination of the Policy further supports the conclusion that it constitutes a valid contract between Plaintiff and USI. The "Introduction" of the Policy provides:

> In accordance with Title IX of the Educational Amendments Act of 1972 and its implementing regulations, the University prohibits discrimination on the basis of sex, including Sexual Harassment (as defined below), in its education programs or activities. This prohibition on sex discrimination includes, but is not limited to, admission and employment.

[Dkt. 196-1 at 1]. The "Scope" of the Policy provides, "For students, compliance with this policy is a term and condition of enrollment at the University." *Id*. The "Jurisdiction" of the Policy provides:

> This policy applies to all USI faculty, staff, students, and visitors. This policy applies in connection with any USI education program or activity, whether on or off campus, including academic, educational, extra-curricular, athletic, residential, employment (including work-study), and other College programs and activities.

[*Id*.] "Reporting to the University" in the Policy provides:

> If the Complainant or the Title IX Coordinator chooses to file a Formal Complaint, such Formal Complaint will be handled in accordance with the Formal Complaint Resolution Process described below.

[*Id*. at 6.] The "Formal Complaint Resolution Process" in the Policy provides:

> The University's response to a Formal Complaint of Sexual Harassment will treat Complainants and Respondents equitably and provide a process . . . free from conflicts of interest or bias against the Complainant or Respondent . . . .

> The University will conduct the Formal Complaint Resolution Process on a confidential basis, consistent with the requirements of this Policy and applicable law.

[*Id*. at 8.] Contrary to the foregoing terms and conditions in the Policy, USI states, "This policy is not a contract." [*Id*. at 6.]

Despite USI's characterization, the Policy contains (i) Plaintiff's agreement to be bound by the Policy as a term of his enrollment, and (ii) USI's agreement that it will conduct a Title IX grievance process in accordance with the Policy and applicable law. Thus, the Policy unambiguously extends benefits, terms, obligations, and agreements between Plaintiff and USI. Any argument by USI to advance form over substance relative to the Policy is readily rejected.

5

*See e.g.*, *Turner v. Indiana Teachers' Ret. Fund*, No. 1:07-CV-1637-DFH-JMS, 2008 WL 2324114, at *5 (S.D. Ind. June 5, 2008) ("the Seventh Circuit has taught courts to look to substance over form when evaluating the entity's general legal status.") citing *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 696 (7th Cir. 2007); *Huber v. Sering*, 867 N.E.2d 698, 704 (Ind. Ct. App. 2007) (conceiving the relationship of a vendor-vendee in different terms than mortgagee-mortgagor is to pay homage to form over substance).

Doss and Devonshire cite multiple cases for the proposition that Plaintiff cannot state a due process claim due to a violation of the Policy. [Dkt. 220 at 6-7]. Each of these cases are factually distinguishable, as they involve purely state-created policies, not ones, as here, required by federal law. Both *Wade v. Ind. Univ. Sch of Med.,* 2019 U.S. Dist. LEXIS 116115 (S.D. Ind. 2019) and *Grant v. Trs. of Ind. Univ.,* 2016 U.S. Dist. LEXIS 40732 (S.D. Ind. 2016) concern employment claims, not claims by a student who has injured by numerous violations of a Title IX mandated policy and process. In each of these cases, the policies and procedures being challenged were pure creations of state law, not the product of a federal mandate. Similarly in *Osteen v. Henley,* 13 F.3d 221 (7th Cir. 1993) *Charleston,* 741 F.3d 769, and *Park v. Indiana University School of Dentistry,* 692 F.3d 828 (7th Cir. 2012), each of the Plaintiffs challenged violations of purely state-created policies in the area of student discipline and code of conduct, not Title IX.

On the other hand, the grievance process contained within the Policy, which is the focus of Plaintiff's claim, is expressly required by the Regulations, specifically 34 C.F.R. § 106.8(c). ("A recipient must adopt and publish grievance procedures that provide for the prompt and equitable resolution of student and employee complaints alleging any action that would be prohibited by this part…") Moreover, 34 C.F.R. § 106.45(b) sets forth the requirements for a

recipient's published grievance procedure. As recited in Plaintiff's Second Amended Complaint, Plaintiff's due process rights have been violated as a result of Doss and Devonshire's intentional disregard for these requirements, and as further contained in the Policy.

It is clear that Plaintiff had an implied contract with USI, and with that, a specific right to a fair, just, and impartial Title IX grievance process. Accordingly, Plaintiff has sufficiently pled the existence of a protected property interest as required for his due process claim.

### (ii) Liberty Interest

Plaintiff has also sufficiently alleged that Doss and Devonshire deprived him of a protected liberty interest. In order for Plaintiff's liberty interest theory to move forward, he must allege that he suffered a change in legal status, as well as state-inflicted reputational damage, commonly known as the "stigma-plus" test. *Doe v. Purdue,* 928 F.3d at 661.

Plaintiff's three semester suspension from USI constitutes a change in legal status, which Doss and Devonshire do not dispute. *See Doe v. Purdue,* 928 F.3d at 662 ("After conducting an adjudicatory proceeding, Purdue formally determined that John was guilty of a sexual offense. That determination changed John's status: he went from a full-time student in good standing to one suspended for an academic year.") Accordingly, the only remaining inquiry for this Court as to Plaintiff's "stigma-plus" claim is whether he sufficiently pled state-inflicting reputational damage.

Plaintiff alleges in his Second Amended Complaint that the effects of Defendants' misconduct is the permanent inclusion of a Title IX determination and discipline, loss of good-standing, and loss of scholarships on his educational records. [Dkt 196, ¶ 355]. Plaintiff further alleges that he will be forced to disclose of the same when applying to any other educational institution. [Dkt. 196. ¶ 394]. Finally, Plaintiff alleges that USI requires all applicants to disclose

educational disciplinary sanctions, and the reasonable inference therefrom is that all educational institutions of similar standing would require the same. [Dkt. 196, ¶ 395] *See Twombly,* 550 U.S. at 570 (all inferences to be drawn from the well-pleaded factual allegations are to be construed in favor of the non-movant.) Any argument that the above referenced disclosures amount to self-publication are unpersuasive when considering the reality of the academic application processes. As USI is the custodian of Plaintiff's official academic records, any publication of the information contained therein would necessarily be made by USI.

In light of the well-pleaded factual allegations, Doss and Devonshire's reliance on *Oliveri v. Rodriquez,* 122 F.3d 406 (7th Cir. 1997) cannot carry the day. In *Oliveri,* the Seventh Circuit stated that while it is likely that future prospective employers may inquire as the nature of the plaintiff's discharge from his prior position, it was not certain. *Id.* at 408-09. On the other hand, Plaintiff has alleged that *any* application to a different educational institution would require disclosure of the Title IX determination and discipline, and at this stage of the litigation, those allegations of compelled disclosure must be accepted as true. *See Twombly*, 550 U.S. at 570. Under this set of facts, Plaintiff's circumstances are similar to the plaintiff's in *Doe v. Purdue* who was required by the third-party entity to disclose prior Title IX discipline. 928 F.3d at 661-62 (Disclosure is not self-published, even if an applicant is required to authorize it.)

Doss and Devonshire also argue that Plaintiff's stigma plus claim fails, because Plaintiff has not alleged publication specifically by either of them. [Dkt. 220 at 10] Such an argument seeks to improperly confuse the two elements of Plaintiff's due process claim being challenged: 1) the existence of a protected interest; and 2) deprivation of that interest. The stigma-plus analysis only goes to whether there in fact lies a protected liberty interest. *See Id.* at 661-64 (Seventh Circuit Court of Appeals conducted "stigma-plus" analysis before pivoting to analysis

of whether there was sufficient allegations of fundamentally unfair procedures). Plaintiff need only allege that Doss and Devonshire deprived him of a protected liberty interest without due process, not that they were involved in the establishment of any protected interest. Such an assertion would be akin to arguing that Plaintiff's property interest theory could only survive if Doss and Devonshire were involved in the formation of the implied contract between Plaintiff and USI. This has not been argued by Doss and Devonshire, and for good reason; there is no legal basis for it.

Doss and Devonshire's own argument inherently acknowledges this critical distinction. They state, "[w]hether John harbors a stigma-plus claim against USI is irrelevant to the question whether he has stated any such claim against Doss or Devonshire." [Dkt. 220 at 10]. This argument is misguided as Doss and Devonshire know that a due process claim cannot be brought against USI, because § 1983 claims can only be brought against "persons," not states or state entities. *Will v. Mich Dep't of State Police,* 491 U.S. 58, 71 (1989). In fact, Doss and Devonshire make this exact point earlier in their brief. [Dkt. 220 at 8 n.2]. Accordingly, their argument that a due process, stigma-plus claim may only be brought against the party making the publication, which in nearly all scenarios is going to be the university itself, is illogical.

Doss and Devonshire further cite to *Doe v. Trs. of Ind. Univ.* 2021 U.S. Dist. LEXIS 105760 (S.D. Ind. 2021) for their position. However, the excerpt they rely upon is merely dicta. The court stated in its opinion that it "need not squarely hold that John's consent bars recovery because the evidence shows that IU *never disclosed false and defamatory information* to any third party." *Id.* at *13 (emphasis in original). Critically, the disclosure at issue in *Doe v. Trs. of Ind. Univ.* only stated the existence of a suspension, not the reasoning behind the suspension. *Id.* Therefore, the facts at hand here are easily distinguishable as Plaintiff alleged that he would be

required to disclose the fact that he received discipline for a Title IX matter, which would lead

any recipient of that information to infer that Plaintiff was guilty of sexual misconduct.

In the Preamble to the Regulations, the Department of Education repeatedly recognized

the seriousness of any disclosure of a Title IX determination, which include "life-altering

consequences that flow from a determination regarding responsibility," therefore emphasizing

"the need for each determination to be factually accurate." Nondiscrimination on the Basis of

Sex in Education Programs or Activities Receiving Federal Financial Assistance, 88 Fed. Reg.

30026, 30378 (May 19, 2020) (to be codified at 34 C.F.R. pt. 106). Those consequences include

"reputational stigma" and a "lasting impact on a student's personal life, in addition to [the

student's' 'educational and employment opportunities'." *Id.* at 30276 (citing *Doe v. Univ. of

Cincinnati,* 872 F.3d 393, 403 (6th Cir. 2017)).

Based on the foregoing, Plaintiff has adequately pled facts sufficient to satisfy both

elements of the stigma-plus test. His three-semester suspension from USI marked a change in his

legal status, which coupled with the certain disclosure of his wrongfully imposed Title IX

determination and discipline, is enough to establish a liberty interest at this stage of the litigation.

Accordingly, Plaintiff has adequately pled the first element of his due process claim.

## 2. The Second Amended Complaint contains numerous allegations that Doss and Devonshire took actions which deprived Plaintiff of his protected interest.

Doss and Devonshire argue, without citation to authority, that they cannot be held liable

for a due process violation, because they were not the ones that issued the written determination.

[Dkt. 220 at 9] This argument fails for two main reasons. First, it is immaterial that neither Doss

nor Devonshire actually sat on the hearing panel or signed the written decision. Second, their

actions throughout the Title IX Process demonstrate a complete disregard for Plaintiff's protected

interests afforded by the Policy and Regulations, as well as any commitment to a fair and impartial process.

Allegations of Doss and Devonshire's conduct which resulted in the deprivation are recited in greater detail in Section (C)(7) below and are incorporated herein by reference. Thus, Plaintiff alleges not only that Doss and Devonshire were directly involved in the deprivation of his protected interests to a fair and impartial Title IX process, they intentionally violated the Policy and Regulations, resulting in a knowingly erroneous determination of responsibility and suspension. Accordingly, Plaintiff has adequately pled a due process claim against both Doss and Devonshire.

**C.  Count III asserts a plausible IIED claim against Doss, Devonshire, and Stafford.**

Stafford is a Delaware company doing business in Indiana.  [Dkt. 196, ¶¶ 11, 13]. Stafford contracted with USI to provide services as an independent contractor (the "Contract"). [Dkt. 196, ¶¶ 14, 15].  Devonshire was an employee of Stafford. [Dkt. 196, ¶ 18].  Stafford appointed Devonshire under the Contract to provide interim Title IX coordinator services for USI. [Dkt. 196, ¶ 19].  These allegations are incorporated into Count III.  [Dkt. 196, ¶¶ 414, 431].

**1.  Doss does not have immunity for the alternative claim asserted in Count III that he acted outside the scope of his employment with USI.**

"Government entities and their employees are subject to liability for torts committed by them, unless one of the [Indiana Tort Claims Act "ITCA") ] exceptions provides immunity." *Jacks by Jacks v. Tipton Cmty. Sch. Corp.*, 94 N.E.3d 712, 716 (Ind. Ct. App. 2018) quoting *Indiana Dep't of Transp. v. Sadler*, 33 N.E.3d 1187, 1191 (Ind. Ct. App. 2015). Doss, however, argues that Count III is "barred by Ind. Code § 34-13-3-5(a)." [Dkt. 220 at 15]. Plaintiff does not dispute that a lawsuit alleging an employee acted within the scope of the employee's

employment bars an action by the claimant against the employee personally. *See* Ind. Code § 34-13-3-5(b).

FRCP 8(d)(2), however, allows a party to plead in the alternative.

(d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.
. . .
(2) *Alternative Statements of a Claim or Defense.* A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

As Doss concedes, Plaintiff pled alternatively in Count III that if Doss acted outside the scope of his USI employment, he is personally liable under Count III. [Dkt. 220 at 15 citing Dkt. 196, ¶ 440]. Doss argues that Plaintiff failed to plead facts sufficient to plausibly show any actionable conduct outside the course and scope of his employment with USI.

To the contrary, Plaintiff alleges that Doss knowingly and intentionally withheld relevant exculpatory evidence and the identity of witnesses from the investigator, the decision makers, the appeal officer, and Plaintiff during the Title IX process, and that the same was contrary to his duties under USI's Policy, and the Title IX Regulations. [Dkt. 196, ¶¶ 111-116, 189-190, 326-331, 346-351]. Plaintiff further alleges that Doss knowingly disregarded Policy and Title IX violations, and that he allowed a grievance process to advance that was tainted with bias, wrongful conduct, and aimed at harming Plaintiff. [Dkt. 196, ¶¶ 349-352, 423-428]. Neither USI nor Doss has filed an Answer to the Second Amended Complaint asserting that Doss was acting within the course and scope of employment as to the alleged actions. "Whether an employee's actions were within the scope of employment is a question of fact to be determined by the factfinder." *Burton v. Benner*, 140 N.E.3d 848, 852 (Ind. 2020). Thus, the alleged facts support the alternative claim against Doss.

Indiana Code § 34-13-3-5 further states,

> (c) A lawsuit filed against an employee personally must allege that an act
> or omission of the employee that causes a loss is:
> (1) criminal;
> (2) clearly outside the scope of the employee's employment;
> (3) malicious;
> (4) willful and wanton; or
> (5) calculated to benefit the employee personally.
> The complaint must contain a reasonable factual basis supporting the
> allegations.

In addition to the alternative pleading of Doss's acts outside the scope of his USI employment,

Plaintiff alleges that Doss's conduct was extreme and outrageous, malicious, and intentional.

[Dkt. 196, ¶¶ 441-444]. As a result, Doss is not entitled to dismissal of Plaintiff's alternative

claim under Count III.

### 2. Devonshire is not entitled to ITCA statutory immunity.

Devonshire argues, *without legal authority*, that "Count III's allegation that Doss and

Devonshire were employees or agents of USI translates as an allegation that each was a USI

"employee" for ITCA purposes." [Dkt. 220 at 13]. Applicable law readily rejects such

argument. Count III incorporates the allegation that Devonshire was an employee of Stafford

and an independent contractor with USI. [Dkt. 196, ¶¶ 14, 15, 18, 19].

Devonshire quotes *Jacks by Jacks, supra*, for the following legal proposition:

> "For purposes of the ITCA, an 'employee' is 'a person presently or formerly
> acting on behalf of a governmental entity, whether temporarily or permanently or
> with or without compensation . . . .' I.C. § 34-6-2-38(a)."

[Dkt. 220 at 13]. Devonshire, however, conveniently omits the next sentence in *Jacks by*

*Jacks, supra*:

> However, the term does not include "an independent contractor." I.C. § 34–6–2–
> 38(b)(1).

*Jacks by Jacks* at 717. Indiana Code § 34-6-2-38(b)(1) expressly **excludes** both "an independent

contractor" and "an agent or employee of an independent contractor" from the definition of

"employee" and "public employee" under the ITCA. Thus, "Devonshire's employment and authorization to act as USI's interim Title IX coordinator" [Dkt. 220 at 15], does not afford her statutory immunity under the ITCA as to Count III.  As a result, Devonshire is subject to individual liability for the IIED claim under Count III.  *See State v. Alvarez by next friend Alvarez,* 150 N.E.3d 206, 218–19 (Ind. Ct. App. 2020).

### 3.   Stafford does not have statutory immunity under the ITCA.

Stafford joins in USI's motion "in its entirety."  [Dkt. 248].  USI argued, in part, that Count III is barred by the Indiana Tort Claims Act ("ITCA") because the Second Amended Complaint does not plead the filing of an ITCA notice.  [Dkt 210 at 1].  The ITCA only applies to political subdivisions and its employees. I.C. § 34-13-3-1, *et seq.; VanValkenburg v. Warner*, 602 N.E.2d 1046, 1048 (Ind. Ct. App. 1992).  Stafford is not an Indiana governmental entity, and Devonshire is not an Indiana government employee. [Dkt. 196, ¶¶ 11, 13, 14, 15, 18, 19].   Thus, the ITCA is not applicable to either.  As a result, Stafford's ITCA notice argument as to dismissal of Count III lacks legal support.

Stafford also joins in Doss/Devonshire's motion as to statutory immunity for Count III.  As noted in Section (C)(2), *supra*, Devonshire is a Stafford employee, and she has no immunity under the ITCA. Likewise, Stafford is not a governmental entity, and it has no immunity under the ITCA.  I.C. § 34-13-3-1, *et seq.; Jacks by Jacks, supra.*

### 4.   No ITCA notice is required as to the IIED claim against Devonshire.

Devonshire argues that "John's Count III against Doss and Devonshire is barred by his failure to allege plausible facts to show that John complied with the ITCA tort claim notice requirements."  [Dkt. 220 at 16].  As noted in Section (C)(2) *supra*, Devonshire is not covered by the ITCA, and therefore ITCA notice under I.C. § 34-13-3-8 is inapplicable.

**5.   Stafford is not a government entity entitled to notice under the ITCA.**

Stafford makes no argument that I.C. § 34-13-3-8 requires a tort claim notice to it for the IIED claim in Count III.  Stafford relies solely on the argument presented by Doss, Devonshire, and USI as to ITCA notice.  As neither Stafford nor Devonshire is an Indiana governmental entity or governmental employee, the ITCA does not apply. I.C. § 34-13-3-1, *et seq*.; *Jacks by Jacks, supra.* Thus, Stafford's ITCA notice joinder argument lacks legal authority.

**6.   An ITCA notice was not required for the alternative claim against Doss, and Plaintiff is not required to plead ITCA notice.**

Doss argues that the "official capacity" IIED claim against him should be dismissed for "failure to allege plausible facts to show ITCA compliance." [Dkt. 220 at 16].  As noted in Section (C)(1), *supra*, Plaintiff's alternative claim against Doss is not an "official capacity" claim.  Rather, such alternative claim seeks to impose individual liability to the extent his actions occurred outside the scope of his USI employment, which is not a claim against USI.  Therefore, ITCA notice requirement is inapplicable.  *See* I.C. § 34-13-3-8.

More importantly, however, Plaintiff is not required to **plead** that he provided an ITCA notice to USI.  Doss refers to this USI argument as a "notice defect," and he adopts USI's argument on this point in Dkt. 209 and 210.  [Dkt. 220 at 16].  Therein, USI argues:

> The 445 averments of the Second Amended Complaint do not aver that John Doe filed a notice of his IIED claim with USI. Because John has not alleged that he did so, there is nothing to construe in his favor on that factual question.

[Dkt. 210 at 4].  Plaintiff incorporates herein his argument at Section A of his Response in Opposition to USI's Motion to Dismiss [Dkt. 228 at 2-3].

USI's argument herein was previously rejected in *Taleyarkhan v. Purdue University,* 837 F.Supp. 2d 965, 968 (N.D. Ill. 2011).

15

> Plaintiff's complaint does not contain facts regarding whether he did or did not
> provide defendant with the appropriate notice under the ITCA. However,
> "complaints need not anticipate an attempt to plead around defenses." *United
> States v. N. Trust Co*., 372 F.3d 886, 886 (7th Cir. 2004). True, "[a] litigant may
> plead itself out of court by alleging (and thus admitting) the ingredients of a
> defense," *U. S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir.
> 2003), but a plaintiff's omission of facts from his complaint which would
> ultimately defeat an affirmative defense does not justify dismissal. *Id.; Hollander
> v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). Accordingly, Plaintiff's silence
> on the ITCA in his complaint is not dispositive.

*See also, Adams v. Traylor-Wolff,* 2012 WL 3061837, at *2 (N. D. Ind. July 25, 2012) (denying a

motion to dismiss because "plaintiff's silence on the ITCA in his complaint was not dispositive

on the issue.").

Citing *Taleyarkhan*, Judge Pratt in *Antey v. Donahue*, No. 3:12-CV-00085-TWP, 2013

WL 466222, at *4 (S.D. Ind. Feb. 7, 2013), also rejected the very argument that USI and Doss

now advance.

> The purpose of a 12(c) motion is to test the sufficiency of the plaintiff's complaint
> and identify defects in a plaintiff's claim, not the presence of a defendant's
> affirmative defense. *Taleyarkhan v. Purdue Univ.,* 837 F.Supp.2d 965, 969
> (N.D.Ind.2011). "[P]laintiffs need not anticipate and attempt to plead around all
> potential defenses. Complaints need not contain any information about defenses
> and may not be dismissed for that omission." *Xechem, Inc. v. Bristol–Myers
> Squibb Co.,* 372 F.3d 899, 901 (7th Cir.2004). Only where a plaintiff admits all of
> the elements of an impenetrable defense, thus pleading herself out of court, may a
> complaint that otherwise states a claim be dismissed; however, omission of facts
> from her complaint which would ultimately defeat an affirmative defense does not
> justify dismissal. *Id.; U.S. Gypsum Co. v. Ind. Gas Co., Inc.,* 350 F.3d 623, 626
> (7th Cir.2003).
>
> The assertion that a plaintiff failed to comply with the ITCA notice requirement is
> an affirmative defense. *Taleyarkhan,* 837 F.Supp.2d at 968 (citing *Brown v.
> Alexander,* 876 N.E.2d 376, 383–84 (Ind.Ct.App.2007)). In this case, Plaintiff has
> not pleaded herself out of court because her Complaint does not admit that her
> ITCA notice was filed after the notice period. The Court declines to consider the
> evidence included with Defendants' Motion, as the Plaintiff has not been afforded
> the opportunity to properly respond to a motion for summary judgment and there
> may be other circumstances under which the notice period may be tolled that are
> outside of the consideration of this Court under the present 12(c) motion. *See
> White v. Stuben Cnty., Ind.,* No. 1:11–CV–019, 2011 WL 4496504, at *14

(N.D.Ind. Sept.27, 2011) (explaining circumstances under which ITCA notice period may be tolled). Therefore, the motion for judgment on the pleadings on Count II of Plaintiff's Complaint as to the City of Evansville is **DENIED.**

*Antey* at *4.

### (i)  USI/Doss has not argued a notice defect.

While Doss refers to a "notice defect," he never identifies the defect.  [Dkt. 220 at 16].  A "notice defect" assumes the filing of a ITCA notice. *See*, e.g., *Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 262 (Ind. 2014) (substantial compliance with ITCA notice can only be invoked by a claimant who has filed a timely notice of claim that is technically defective). In fact, USI and Doss (i) do not assert that Plaintiff failed to file an ITCA notice; (ii) do not assert that USI did not receive an ITCA notice from Plaintiff; (iii) do not assert that an ITCA notice from Plaintiff was untimely; or (iv) do not assert that an ITCA notice from Plaintiff did not substantially comply with the ITCA requirements.[2]  As Judge Pratt held in *Antey*, if USI and Doss seek to raise these ITCA "defect" issues, they must file a summary judgment motion to which Plaintiff can respond. *Antey* at *4.

To be clear, USI and Doss only argue that Plaintiff failed to **plead** the filing of an ITCA notice.  The law does not require the same to be pled. *Antey, supra*.  Doss does not adopt USI's Reply Brief [Dkt. 235], and he does not cite or rely on the pro se prisoner case of *Gibson v. Carrington*, No. 120CV02812SEBDLP, 2021 WL 1667036, at *2 (S.D. Ind. Apr. 27, 2021), cited therein to support his argument. Doss cannot sandbag Plaintiff and advance a new argument based on *Gibson* for the first time in his to-be-filed Reply Brief. *Long, supra*.  Even if

---

[2] Doss cannot raise such issues in a reply brief.  *Long*, 143 F. Supp. 3d at 785. Moreover, "[t]he question of whether a plaintiff has complied with the requirements of the ITCA is one of law, but the answer may depend upon the resolution of disputed facts." *Lyons at* 262.  In addition, fraudulent concealment may estop a defendant from asserting an ITCA notice defense.  *Id*.

Doss had relied on *Gibson*, his reliance thereon would be unavailing as *Gibson* addressed compliance with the ITCA, and counsel for the moving party, City of Muncie, had a duty of candor to the Court to disclose if the plaintiff had filed a tort claim notice. *Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1067 (7th Cir. 2000) (lawyers have a duty of candor to the court). Therefore, if an ITCA notice had been filed in *Gibson*, it would have been disclosed by the moving party's counsel. As a result, *Gibson* could only apply to factual settings where no ITCA notice had been filed. Here, USI and Doss do not challenge the sufficiency of an ITCA notice received from Plaintiff; they only challenge whether the filing of an ITCA notice must be **pled**.[3] This is a factual scenario controlled by *Antey, supra*. Thus, USI and Doss's argument fails.

### 7. The Second Amended Complaint asserts a plausible IIED claim against Doss, Devonshire, and Stafford.

Doss and Devonshire, and Stafford by joinder, advance a single sentence which adopts by reference USI's argument in Dkt. 209 and 210 "for failure to allege specific facts that allow this Court to draw the reasonable inference that Doss or Devonshire is liable for [IIED]."[4] [Dkt. 220 at 16]. They present no other argument. [Dkt. 220 at 16; Dkt. 248]. Plaintiff adopts by reference herein Section B of his Response in Opposition to USI's Motion to Dismiss [Dkt. 228].

As to a motion under FRCP 12(b)(6), this Court has stated, a "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to [him] that might be redressed by the law." *Swanson v. Citibank, N.A.*,

---

[3] USI and Doss's failure to plead argument does not lead to an inference that Plaintiff did not file an ITCA notice with USI because all inferences are construed in Plaintiff's favor. *Burke, supra*. To the contrary, the tort claim allegations pled by Plaintiff against USI and Doss lead to a reasonable inference that Plaintiff filed an ITCA notice with USI. *Id*.

[4] Neither Doss nor Devonshire adopt USI's argument or authority in USI's Reply Brief at Dkt. 235. [Dkt. 220 at 16-17]. Stafford does. [Dkt. 248].

614 F.3d 400, 403 (7th Cir. 2010).  Here, Plaintiff alleges substantial facts supporting the IIED

claims in Count III against Doss, Devonshire, and Stafford. [Dkt. 228, Section (B)(2) at 5-7].

Plaintiff further alleges:

- Doss and Devonshire were experts on Title IX and the title IX Regulations (the "Regulations");
- Devonshire represented herself as an expert on Title IX and the Regulations;
- USI and Stafford represented Doss and Devonshire as experts on Title IX and the Regulations;
- Stafford represented itself as having expertise in Title IX and the Regulations;
- USI represented that Devonshire was "top shelf" on matters relating to Title IX and the Regulations;
- USI represented to the public and USI students that Devonshire was an experienced professional on Title IX matters;
- USI represented to students that Doss was experienced and knowledgeable on Title IX and the Regulations;
- Doss and Devonshire were trained on Title IX and the Regulations;
- Devonshire and Stafford trained college and university personnel on Title IX and the Regulations;
- Doss's duties as Deputy Title IX Coordinator required knowledge of Title IX and the Regulations;
- Devonshire was contracted through Stafford to be the interim Title IX coordinator for USI.

[Dkt. 196, ¶¶ 12, 19-20, 22-30].

Despite their expertise, Plaintiff alleges that Doss and Devonshire intentionally

disregarded USI's Title IX policy and the Regulations in conducting the grievance process

involving Plaintiff to cause harm to Plaintiff.

- Devonshire and Doss knew that USI's Policy and the Regulations required a Title IX grievance process that was fair and equitable and free of conflicts of interest and bias;
- Devonshire and Doss knew USI had a case file on Jane Doe's Title IX complaint against Plaintiff;
- Devonshire and Doss knew USI possessed relevant evidence as Jane Doe's Title IX complaint against Plaintiff but did not disclose the same to Plaintiff, the investigator, the decision makers, or the appeal officer;
- Devonshire and/or Doss created a new allegation of sexual assault against Plaintiff shortly before the Title IX hearing and neither advised Plaintiff that such allegation was manufactured by USI and was knowingly false;

19

- The information withheld by Doss and Devonshire was relevant and exculpatory evidence for Plaintiff that would have exonerated him, and it contradicted Jane Doe's alleged version of events;
- Doss and Devonshire knew USI possessed documents relevant to the Title IX case but intentionally withheld such documents during the Title IX process;
- Doss and Devonshire knew that new evidence was a basis to reconsider and for a Title IX appeal but Plaintiff only learned of the withheld evidence through discovery in this case;
- Doss and Devonshire told Plaintiff that he would notified if Jane Doe filed an appeal response, but when Jane Doe filed an appeal response, Plaintiff was not advised;
- Devonshire withheld Jane Doe's appeal response because it would have shown that Devonshire and Doss manufactured a knowingly false allegation of sexual assault against Plaintiff;
- Doss and Devonshire knew that under USI's Policy and the Regulations that USI had the obligation to gather all relevant evidence for the Title IX process;
- Doss and Devonshire ignored and altered USI's Policy and Regulation definition of sexual assault and created a new false allegation of sexual assault immediately prior to the Title IX hearing;
- Devonshire and Doss did not disclose their conflict of interest and bias against Plaintiff in withholding relevant, exculpatory evidence;
- Devonshire and Doss took actions to favor Jane Doe, to harm John Doe, to quell the false allegations that John Doe was a serial rapist, and to ensure that John Doe would be held responsible for a rape determination that was never alleged against him;
- Despite knowing of the multiple violations of Policy and Regulations, and the intentional withholding of relevant, exculpatory evidence, Doss and Devonshire allowed the hearing to advance, a decision to be rendered, and an appeal decision to be carried to Plaintiff's harm.

[Dkt. 196, ¶¶ 101, 104-106, 111-113, 115-116, 163-171, 189-190, 192, 194-197, 206-215, 217-219, 221, 223, 225-229, 231, 271-280, 299-304, 311, 318, 321, 323-331, 346-352, 378, 382, 392].

Despite being Title IX experts, Doss and Devonshire had the opportunity at every stage of the Title IX process to disclose the relevant and exonerating evidence but they chose to withhold such evidence and allowed the determination against Plaintiff and the discipline to be imposed upon him.  Doss and Devonshire further allowed the multiple violations of the Policy and Regulations to go uncorrected knowing the harm that would result to Plaintiff. As Plaintiff

alleged, Doss and Devonshire's misconduct was intentional against Plaintiff and they "intentionally or recklessly caused severe emotional distress to Plaintiff." [Dkt. 196, ¶ 441]. Even after the determination and suspension, Doss and Devonshire did not disclose the existence of relevant and exonerating evidence which further shows their intent to harm Plaintiff. A reasonable inference from Doss and Devonshire's alleged misconduct occurring despite their Title IX expertise is that they intended to cause and/or recklessly caused emotional harm to Plaintiff.

Courts recognize that IIED case are fact sensitive, and each must be considered based on the specific facts alleged. *Bah v. Mac's Convenience Stores, LLC*, 37 N.E.3d 539, 550 (Ind. Ct. App. 2015) ("[w]hat constitutes 'extreme and outrageous' conduct depends, in part, upon prevailing cultural norms and values."). USI (and Doss, Devonshire, and Stafford by reference) carefully cites caselaw but fails to assess the factual basis underlying those IIED cases, and none provide material insight into analyzing the conduct alleged herein by Plaintiff.[5]  That is because none of USI's cited cases involve multiple instances of university personnel knowingly withholding relevant and exculpatory evidence throughout a Title IX process, university personnel manufacturing an allegation of sexual assault, university personnel intentionally disregarding university policy and the Regulations and violations thereof, and altering a policy and Regulation definition to ensure a determination against an accused, *etc*.

There is no reported IIED case which involves facts as alleged in the Second Amended Complaint. That is why this case is an outlier.  The specific facts of the Second Amended Complaint present a truly rare circumstance "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

---

[5] *See* Dkt. 228 at 7-14.

regarded as atrocious, and utterly intolerable in a civilized community." *State v. Alvarez by next friend Alvarez,* 150 N.E.3d 206, 218–19 (Ind. Ct. App. 2020) (quoting *Bradley v. Hall*, 720 N.E.2d 747, 752 (Ind. Ct. App. 1999)). Any average member of the community would review the allegations and arouse resentment against Doss and Devonshire and exclaim, "Outrageous!" *Id*.

A recent Indiana appellate case reversing a trial court's dismissal of IIED claims was based on facts far removed from those alleged by Plaintiff in the Second Amended Complaint. The plaintiff in *Hall v. Shaw*, 147 N.E.3d 394, 408–09 (Ind. Ct. App. 2020) *trans. denied* 160 N.E.3d 517, alleged that "the trial court erred in dismissing IIED claims against [defendants] related to [defendant's] voicemail, which [plaintiff] argues should be able to proceed on a theory of civil conspiracy." From the following four allegations, the Indiana Court of Appeals held that the trial court erred in dismissing [plaintiff's] . . . "IIED claims against [defendants]." *Id*.

161. At all times herein Shaw, Narducci, [and others] were acting as agents of CIPA and were co-conspirators.

165. Additionally, Narducci, as an agent of CIPA, in furtherance of the conspiracy to inflict extreme emotional distress for [Hall] on July 31, 2018, left a voice mail for [Hall] on July 31, 2018, in response to the lawsuit, and said, in part, in a rude and threatening manner, "Guess what dumb*** you and your f****** probation license is going down the drain! Straight up. You suing me! I don't give a f***! You know why because you engaged us into this bull****! You mother******* are done! For real ... So when you play this f****** tape for your f****** lawyer, you let your lawyer know that this s*** ain't going to be easy! Remember that. ... If you think you mother******* know who I am you better go down to that city-county building and keep **409** checking mother******..." (Exhibit 35).

166. All of these wrongful actions herein were made in furtherance of the conspiracy to intentionally inflict emotional distress for the purpose of eliminating Hall's competitive security business and caused Hall to sustain severe emotional distress.

167. CIPA has responsibility for all of the injuries and damages caused by the extreme, outrageous, and illegal actions of its agents: Shaw, Narducci, [and others] because all of these persons were conspiring together to intentionally cause Hall to suffer emotionally in furtherance of CIPA's business interests to eliminate Hall as a competitor.

*Id.*  If a single, expletive-laced alleged voicemail satisfies the extreme and outrageous IIED standard to survive a motion to dismiss, the multiple and extensive allegations of intentional misconduct by Doss, Devonshire, and Stafford directed at Plaintiff likewise meet the IIED standard to survive Doss, Devonshire, and Stafford's Motions to Dismiss.

From the allegations of the Second Amended Complaint, the Court can draw a reasonable inference that Doss and Devonshire are liable for the alleged IIED misconduct. Stafford is alleged to be liable for Devonshire's actions occurring within the course and scope of her Stafford employment under the doctrine of respondeat superior. [Dkt. 196, ¶ 434]. Thus, the Court can also draw a reasonable inference that Stafford is liable for the IIED misconduct alleged as to its employee Devonshire.[6]

### Conclusion

The Court should deny Doss, Devonshire, and Stafford's Motions to Dismiss.

Respectfully submitted,

**ZIEMER STAYMAN WEITZEL & SHOULDERS, LLP**

*/s/ Robert L. Burkart*

Robert L. Burkart, #16664-82
Keith W. Vonderahe, #21908-82
Matthew S. Koressel, #35276-49
20 NW First Street, 9th Floor
P.O. Box 916
Evansville, IN  47706-0916
Phone: (812) 424-7575
Fax: (812) 421-5089
E-mail: rburkart@zsws.com
            kvonderahe@zsws.com
            mkoressel@zsws.com

Attorneys for Plaintiff

---

[6] Stafford does not challenge its alleged respondeat superior liability pled under Count III. [Dkt. 196, ¶¶ 434, 437]; *Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 460 (Ind. 2018) (an employer is liable for employees' tortious acts occurring within the scope of employment).

## <u>CERTIFICATE OF SERVICE</u>

   I certify that on July 31, 2023, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

William P. Kealey, Esq.
wpk@stuartlaw.com

Joseph H. Harrison III, Esq.
jhh@stuartlaw.com

Edward M. O'Brien
edward.obrien@wilsonelser.com

D. Craig Lamb
craig.lamb@wilsonelser.com

Timothy V. Hoffman
thoffman@sanchezdh.com

John R. McInerney
JMcInerney@sanchezdh.com


*/s/ Robert L. Burkart*
Robert L. Burkart