UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

JOHN DOE,                                                    )
                                    Plaintiff,               )
                                                             )
                        v.                                   ) CASE NO.  3:21-cv-00144-TWP-CSW
                                                             )
UNIVERSITY OF SOUTHERN INDIANA, *et al*.   )
                                    Defendants.              )

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL AND FOR
SANCTIONS AS TO DEFENDANT UNIVERSITY OF SOUTHERN INDIANA**

Plaintiff files this Brief in Support of his Motion to Compel as to Defendant University of

Southern Indiana ("USI").

## I.      BACKGROUND

USI possesses relevant and responsive documents which it refuses to produce. This

includes documents which USI states do not exist, but its 30(b)(6) designee testified do exist.

USI concealed relevant and exculpatory documents during the Title IX process, yet again it is

withholding documents and information based on meritless objections, waived assertions of

privilege, and an intentional failure to provide 30(b)(6) deposition testimony. Plaintiff seeks an

order compelling USI to produce specified documents and sanctioning it.

During this litigation, USI produced emails between persons discussing the use of **non**-

Policy terms and new charges for the Hearing that Jane Doe did not allege. This is contrary to

law, and a basis for proving Title IX sex discrimination. In Interrogatory Answers, USI asserts

that notice and implementation of pre-Hearing Policy amendments was made by a single email to

Plaintiff prior to the Hearing. [See attached Exhibit 1, No. 8 citing Dkt. 41-1]. Yet, USI has no

document evidencing any approval, implementation, or notice to the USI community of any pre-

hearing Policy amendments. USI had its counsel create a Spreadsheet in discovery which

included purported pre-Hearing Policy amendments but no USI person knows anything about the Spreadsheet. USI's creation of the Spreadsheet and assertion of pre-Hearing Policy amendments and charges is an after-the-fact attempt to cover-up its discriminatory conduct against Plaintiff. Thus, the discovery sought herein is relevant and critical to Plaintiff's claims. As set forth below, USI is using all means possible to avoid producing documents and testimony that will prove there was never a pre-Hearing Policy amendment and the new charges were fabricated, and USI is covering-up its intentional gender bias against Plaintiff.

## II.      LOCAL RULE 37.1 COMPLIANCE

On August 30, 2023, Plaintiff's counsel Robert Burkart sent emails requesting a meet and confer on privilege log issues with USI's counsel William Kealy and Joseph Harrison, and Defendant Grand River Solutions' counsel Ed O'Brien. On September 1, 2023, Robert Burkart had a meet and confer by telephone with counsel Ed O'Brien at 10:15 a.m. (Eastern) as to privilege assertions. On September 8, 2023, USI counsel sent an email that USI was asserting privilege to Defendant Grand River Solutions' emails. Plaintiff's counsel Robert Burkart had a meet and confer with USI's counsel William Kealy and Joseph Harrison as to privilege log issues, as best recalled occurred in person on September 6, 2023. The Court held a hearing on September 28, 2023, on USI and Defendant Grand River Solution privilege log issues, and it entered an order on September 29, 2023, allowing the filing of motions on privilege assertions. [Dkt. 290]. Plaintiff's counsel Robert Burkart had a meet and confer telephone conference with USI's counsel William Kealy on October 9, 2023, at 11:15 a.m. (Eastern) as to 30(b)(6) deposition issues, and a telephone conference with USI counsel Joseph Harrison on October 12, 2023, at 10:30 a.m. (Eastern) as to USI's responses to Plaintiff's Fifth Request for Production. There were additional email communications between said Plaintiff's counsel and USI's counsel

on October 13, 16, 20, and 23 but did not resolve the issues. The Court held a discovery telephone conference on October 26, 2023, and entered an order setting a deadline for a renewed USI 30(b)(6) deposition on December 1, 2023. [Dkt. 309].

On November 9, 2023, Plaintiff's counsel Robert Burkart and USI's counsel William Kealy had a telephone conference at 9:00 a.m. (Eastern) regarding USI's Response to the 6th and 7th RFPs and additional 30(b)(6) issues but did not resolve the issues. The Court held another discovery conference on November 17, 2023, and entered an order stating, "The parties may engage in motion practice, if necessary, regarding Plaintiff's Fifth, Sixth, and Seventh Requests for Production, and Defendant's privilege objections" (the "Order"). [Dkt. 325]. When the same 30(b)(6) deposition issues arose on December 1, 2023, Plaintiff's counsel Robert Burkart emailed the Magistrate Judge's Courtroom Deputy, and copied USI's counsel, on December 8, 2023, as to whether a new Local Rule 37.1 process was required or if Plaintiff could proceed pursuant to the Order. Plaintiff's counsel was advised by email on December 8, 2023, by the Courtroom Deputy, "I spoke with Magistrate Judge Wildeman and the parties can proceed with their motions/briefs."

## III.    APPLICABLE LEGAL STANDARDS

### 1.  The Scope of discovery.

"The broad scope of discovery permitted by Rule 26 is based on the principle that access to all relevant information promotes the search for the truth." *Rackemann v. Lisnr, Inc.,* No. 117CV00624TWPMJD, 2017 WL 11614560, at *1 (S.D. Ind. Oct. 31, 2017); *Est. of Daniels by Stover v. City of Indianapolis*, No. 120CV02280JRSMJD, 2021 WL 4844145, at *1 (S.D. Ind. Oct. 18, 2021). "The Federal Rules of Civil Procedure permit liberal discovery to make trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to

the fullest practicable extent." *Rector v. Town of Fishers*, No. 1:11-CV-0674-JMS-TAB, 2012 WL 2154343, at *1 (S.D. Ind. June 13, 2012).

### 2. Objections to discovery.

After a motion to compel is filed,

The party objecting to the discovery then bears the burden of showing the specific reasons why each particular request is improper. . . ); *see Barker v. Kapsch Trafficcom USA, Inc.*, 2020 WL 3618945, at *1 (S.D. Ind. July 1, 2020) ("When a party raises objections to discovery requests, the objecting party bears the burden to explain precisely why its objections are proper given the broad construction of the federal discovery rules."). . . . *Est. of Daniels by Stover, supra*.

### 3. Privilege standard.

The Seventh Circuit uses the following standard governing privilege: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). The party seeking to establish the privilege bears the burden of demonstrating that all of the requirements for invoking the attorney-client privilege have been met. *Long v. Anderson Univ.,* 204 F.R.D. 129, 134 (S.D. Ind. 2001). "As the attorney-client privilege and work product protection restrict the flow of relevant information, they are narrowly construed by courts to minimize their impact upon the discovery process." *Rackemann v. Lisnr, Inc.,* No. 117CV00624TWPMJD, 2017 WL 11614560, at *1 (S.D. Ind. Oct. 31, 2017) citing *In re Walsh,* 623 F.2d 489, 493 (7th Cir. 1980). "The Seventh Circuit's cases are consistent with this general rule, and caution that the scope of privileges 'should be confined to the narrowest possible limits.'" *Rackemann* citing *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir. 1983).

As a general matter, the attorney-client privilege will not shield from disclosure statements made by a client to his or her attorney in the presence of a third party who is not an agent of either the client or attorney. *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997). The inquiry into whether documents are subject to a privilege is a highly fact-specific one. *Long v. Anderson Univ.*, 204 F.R.D. 129, 134 (S.D. Ind. 2001). "Only when the district court has been exposed to the contested documents and the specific facts which support a finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-client privilege in fact applies." *Long citing In re Grand Jury Proceedings,* 220 F.3d 568, 571 (7th Cir.2000), quoting *Holifield v. United States,* 909 F.2d 201, 204 (7th Cir.1990). An assertion of privilege therefore must be made on a document-by-document basis. *Long citing United States v. White,* 970 F.2d 328, 334 (7th Cir.1992). As the party seeking to establish the privilege, USI bears the burden of demonstrating that all of the requirements for invoking the attorney-client privilege have been met. *Long, supra*. Where there are a finite number of documents being withheld, this Court can review the documents listed on the privilege log, *in camera,* before making any decision. *Am. Com. Lines LLC v. Lubrizol Corp.*, No. 4:12-CV-135-SEB-WGH, 2013 WL 3781119, at *2 (S.D. Ind. July 18, 2013).

### 4. **Waiver of Privilege.**

Federal Rule of Evidence 502(a) sets forth the test for whether disclosure in a federal proceeding operates as a waiver of privilege.

> Waiver occurs when "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). "The idea is to limit subject matter waiver to situations in which the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials." 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2016.2 (3d ed.).

*Rackemann* at *2.

In noting the "classic sword and shield problem that creates an implied waiver of

privilege," this Court has held:

> An implied waiver occurs when (1) [t]he party asserting the privilege acts
> affirmatively (2) to place the privileged communications in issue between the
> party seeking discovery and itself (3) such that denying access to the
> communication becomes manifestly unfair to the party seeking discovery."
> *Volterra Semiconductor Corp. v. Primarion, Inc.*, 2013 WL 1366037, at *2 (N.D.
> Cal. Apr. 3, 2013) (citations and internal quotation marks omitted); *see also*
> *Waterfield v. Waterfield*, 61 N.E.3d 314, 326 (Ind. Ct. App. 2016) ("Indiana
> courts have previously held that evidentiary privileges created 'to shield selected
> information from discovery ... may not be wielded as swords at the will of a
> party.' *Madden v. Ind. Dept. of Transp.*, 832 N.E.2d 1122, 1128 (Ind. Ct. App.
> 2005). In other words, 'a party may not place an issue before the trier of fact and
> then assert a privilege to prohibit the introduction of evidence regarding that
> issue.' " *Id.*).

*Doe v. Netflix, Inc.*, No. 122CV01281TWPMJD, 2023 WL 2712365, at *2 (S.D. Ind. 3-30-23).

> The attorney-client privilege is 'generally waived when the client asserts claims
> or defenses that put his attorney's advice at issue in the litigation, which is
> another way of stating that a party cannot use privilege as both a sword and a
> shield. But that maxim applies when a party is relying on the advice it received
> from its counsel as part of its defense.

*Gookins v. Cnty. Materials*, No. 119CV00867JPHMJD, 2020 WL 489567, at *3 (S.D. Ind. 1-30-

23).

## IV.   ARGUMENT

**1.  USI refuses to produce the Policy amendment history from its Clean Catalog
    Software that was used to create the Spreadsheet.**

On March 30, 2023, USI served its Second Supplemental Answers to Interrogatories

which included a spreadsheet of seventy-nine (79) **purported** amendments to its Sexual

Harassment Policy ("Policy") occurring between July 9, 2021 and August 23, 2021 (the

"Spreadsheet").[1] [Dkt. 330-18]. The Spreadsheet includes columns with a range of purported

Policy amendments with an "Implementation Date: Between: July 9 and August 3, 2021, and

August 5 and August 23, 2021." *Id.* USI stated that there were purported Policy amendments

"implemented prior to [USI's] Title IX hearing as to Jane Doe's complaint against John Doe"

"between July 26, 2021 and August 2, 2021," *i.e.*, prior to the Title IX hearing on August 4, 2021

(the "Hearing"). [See attached Exhibit 1, Int. Answer 8]. The Spreadsheet **purports** to identify

unspecified Policy amendments approved by unspecified persons on unspecified dates which

were implemented on unspecified dates by unspecified means. As USI produced the Spreadsheet

in response to Plaintiff's Interrogatories, USI concedes that Spreadsheet information is relevant

and responsive under FRCP 26.

> **a. Plaintiff requested all documents relating to the Spreadsheet.**

Plaintiff's Fifth RFP Nos. 195-245 sought all documents relating to the Spreadsheet,

including documents evidencing approval, changes, implementation dates, *etc.*, and USI

responded on October 2, 2023, by asserting objections and citing unspecified documents in RFP

Response No. 194.[2] [Dkt. 33-10].[3] As required by FRCP 34(b)(2)(C), USI did not identify any

document being withheld based on the objections asserted. Failing to identify a document

withheld based on an objection is a representation by USI that no responsive document was

withheld. *3D Sys. Corp. v. Miller*, No. 117CV03252RLYMJD, 2018 WL 7350943, at *1 (S.D.

---

[1] USI's First Supplemental Answer to Interrogatories attested that the purported Policy
amendments occurred between August 2, 2021, and August 25, 2021. [Exhibit 1, Int. Answer 8].
[2] USI's Response to RFP No. 194 did not identify any specific document by Bates number, but
instead made reference to general types of documents. [Dkt. 33-10].
[3] Plaintiffs' RFPs defined "documents" broadly as including any electronic or stored information
in any medium. [Dkt. 33-10].

Ind. Jan. 31, 2018); *Todero v. Blackwell*, No. 117CV01698TWPMJD, 2018 WL 10601816, at *1

(S.D. Ind. Apr. 6, 2018). Per FRCP 34(b)(2)(C).

> **b. USI gave information from its Clean Catalog Software to its counsel to create the Spreadsheet but withheld such information in discovery.**

Aaron Trump ("Trump"), USI's Chief Governmental and Legal Affairs Officer, was first

deposed on October 3, 2023. [Dkt. 341-1]. USI uses a software called Clean Catalog that

maintains a policy's history and changes similar to Microsoft Word track changes. [Dkt. 332-41,

Page ID # 15297, lines 3-25; Page ID # 15298, lines 1-19]. Thus, Clean Catalog contains

historical information on Policy changes.

Trump testified that he provided Policy information to USI's counsel from Clean Catalog

that **counsel** used to create the Spreadsheet and USI cited in its Supplemental RFP Responses.

His testimony makes certain that USI possesses "documents," *i.e.*, data and electronic

information, responsive to the RFP Nos. 195-245 that it has concealed and withheld:

> Q  Take me through how did you go about making determinations of these responses in this Exhibit 81?
> A  I would have either gone through the record of the Clean Catalog, which is where we store the handbook, to see where it shows the different revisions occurred.  And all of that would have been provided to counsel.  I believe they prepared a spreadsheet that summarized that, those relevant changes, or at least the relevant timeline of those changes.

[Dkt. 341-1, Page ID 9848:21-25; 9849:1-12]. As he further testified:

> Q  Does Clean Catalog give you like an archive of what was in there at certain times?
> A  I believe it has a record of the policy revisions as they occurred, but I'm not exactly sure. I don't manage Clean Catalog, but that's my best recollection of how it works.
>
> Q  So you would have had to look at Clean Catalog, and that would show you dates of policy revisions?
> A  Yes.
>
> Q  And that document hasn't been produced in this case, has it?

A  I'm not aware that it is a document.  I think it was utilized to produce a summary.  So the revisions or dates were pulled off of that. I believe those were provided, and then those were utilized to create a summary spreadsheet by counsel.

Q  So Clean Catalog shows you the published date of any policy?
A  I believe so.

Q  Okay.  I didn't ask for the policy.  I asked for the Clean Catalog information that you testified that shows publish dates.  Did you ask anybody to gather that information and produce it?
A  I don't exactly know what that is. Clean Catalog has a list of when a revision occurred, and the policy next to that number. That date is on the policy. We provided that.

Q  So what did you have to do in order to go into Clean Catalog and see that information?
A  I think I just clicked on the handbook, and it had a list of the revisions, and I produced those revisions.

[Dkt. 341-1, Page ID 9849:7-25; 9850:1-25; 9851:1-25; 9854:14-25; 9855:1-4].

After Trump's deposition, Plaintiff's counsel sent an email on October 23, 2023, to USI's counsel requesting supplementation of the Clean Catalog information:

As to USI 5th RFP responses, Nos.195-257 asked for all documents relating to policy revisions and implementation dates. Trump testified that Clean Catalog contains data relating to the policy revisions, dates, etc., and that such Clean Catalog data was used for the Spreadsheet. That Clean Catalog data was not produced. Please confirm that USI will supplement with the Clean Catalog data.

[*See* attached Exhibit 2].[4] In total disregard of Trump's unambiguous deposition testimony, USI's counsel responded on November 14, 2023, stating:

Your summary misstates Mr. Trump's testimony and is inaccurate. USI has no additional responsive documents to Plaintiff's Fifth Request for Production of Documents.

[*See* attached Exhibit 3]. Regardless, USI's Director of IT testified that USI does possess information on Clean Catalog that can be readily produced.

Q  Okay.  And then in terms of this -- these questions -- these topics on removal and deletion, how does that apply to what's referred to as Clean Catalog?

---

[4] FRCP 26(e)(1)(A) mandates supplementation were a response is incomplete.

A   So Clean Catalog is also a hosted service to which we don't have access to the back end.  It's something – it's a service for which we pay for.  It's a piece of software just like, you know, any other commercial platform that you may use in your day-to-day either personal or business life.  So you're asking basically does Clean Catalog manage change control?  I just want to make sure I understand the question.

Q   Yeah.  I mean, information on there, does that get deleted or --

A   As I understand -- so I have a -- I have a little bit of experience with Clean Catalog as a user because, you know, certain policies like you presented here -- I don't remember if this specific one was one, but I've been here a year, and there were a couple policies that were sent to me to review the changes and approve the changes that were made in Clean Catalog to a couple policies. And so I, as a user, log in.  I can see what was there before, what's been changed, what's proposed and I can hit approve, and then it will amend the document. My understanding is that Clean Catalog – that's its purpose, is to maintain a history of the document's life cycle.  And that's why you pay for that platform.  You know, it's very similar to what, you know, Microsoft Word does when you just turn on track changes and enforce that everyone has to -- you know, when you share that document, everyone has to track the changes, you could do that just in Word, but it's hard to do that at scale.  If you want to manage all your policies, you like to have a platform that kind of does that for you, and Clean Catalog does that for us.

Q   Okay.  So Clean Catalog then provides, like you said, some kind of history of all the changes to particular policies?

A   That's my understanding, yes, sir.

Q   All right.  And then that -- I guess like any other piece of data, that can be printed off to show what those were when?

A   I'll answer in general terms.  My understanding of a policy management software, of which I've implemented more than one, its purpose is to be able to refer to a document as, you know, it existed in its life cycle.  So you'll be like what was the, you know, environmental safety policy as of -- if you were managing in that system in 2020 and you were preserving that document, you want to be able to go back and see what it was.  That's my understanding of how those function and my experience of how they function. So you should be -- and I don't want to -- again, I'm not a Clean Catalog expert.  That's my understanding in general of document policy management platforms is what they do.

Q   But that contains data that you can print off then?

A   Well, generally you can print anything that's on a computer screen, so –

[Dkt. 341-15, Page ID 15297:3-25; 15298-15300:1-3].

USI is withholding responsive Policy information in its Clean Catalog system; likely because it will contradict USI's assertions of Policy amendments being implemented immediately prior to the Hearing. USI also omitted the required disclosure under FRCP 34(b)(2)(C) that it was withholding documents based on objections, and it did not identify any Clean Catalog information on its Privilege Log.

As Trump testified, the Spreadsheet was a "summary" of the Clean Catalog information. Thus, the Clean Catalog information is clearly responsive to the foregoing RFPs, and it is not privileged. USI continues to improperly withhold relevant and responsive documents in bad faith. The Court should compel USI to immediately produce the Clean Catalog Policy information (i) that USI currently possesses and (ii) that USI provided to its counsel months ago to create the Spreadsheet. As set forth below, USI should also be sanctioned for its willful misconduct. *Todero v. Blackwell*, No. 117CV01698TWPMJD, 2018 WL 10601816, at *1 (S.D. Ind. Apr. 6, 2018) (failure to comply with Rule 34(b)(2)(C) can constitute a material misrepresentation by omission and subject a party to sanctions).

### 2. USI fails to produce documents responsive to RFP Response Nos. 267, 271, 275, 279, and 283.

RFP Nos. 267, 271, 275, 279, and 283 each sought documents relating to a specific USI Maxient Report , *i.e*., an incident report form, containing specific allegations of alleged misconduct by Jane Doe against Plaintiff. [Dkt. 330-10]. For example,

> **REQUEST NO. 267:** All documents relating to the allegations in Maxient Report Bates No. USI 000182-00183.

*Id*. USI responded with the same response to each:

> **RESPONSE:** Maxient Report No. USI [---] is an incident report form, not "allegations." No documents were submitted with the Report.

*Id*. These Maxient Reports relate to the allegations of the Second Amended Complaint, are raised

in Plaintiff's summary judgment filing, and are part of the exculpatory documents that USI

concealed during the Title IX process. [*See* Dkt. 196; Dkt. 342]. The RFPs were not limited to

documents "submitted with the Report." USI's response is an evasive non-response. These RFPs

sought all documents relating to the allegations within the Maxient Reports which would include

USI emails, memos, reports, notes, communications, interviews, *etc*. USI made no objection to

the RFPs, but rather responds with a statement that is nonresponsive in order to avoid producing

responsive documents. The Court should compel USI to produce all documents responsive to

RFPs 267, 271, 275, 279, 283.

### 3.  USI's objections to RFP No. 258 are meritless.

In Response to RFP No. 258, USI stated:

> **REQUEST NO. 258:** All documents evidencing documents and/information
> provided to staff, faculty and administrators relating to the "update" referenced in Bates
> No. USI 10787.

> **RESPONSE:** Objection. USI objects to the phrasing "documents evidencing
> documents" as unintelligible. USI objects to this request as not relevant because there is
> no pending claim or defense relating to "documents and/information provided to staff,
> faculty and administrators relating to the 'update'".
> This request assumes facts not in evidence, specifically that documents were
> generated and given to specific persons at a specific time.
> This request fails to comply with the requirement of Rule 34(b)(1)(A) to "describe
> with reasonable particularity each item or category of items to be inspected."
> This request is overbroad as to time and topic and is therefore unduly
> burdensome.

[Dkt. 330-10].

RFP No. 258 is a follow-up RFP to an email exchange between USI's Title IX

Coordinator Beth Devonshire ("Devonshire") and USI's Dean of Students dated August 10,

2021, produced by USI as Bates No. USI 10787 in response to RFP No. 173, and further

incorporated into RFP Response Nos. 180, 181, and 182. [Dkt. 330-9].[5] USI's Response to RFP

No. 173 produced emails, draft policy language, and other documents of a USI Working Group

which was tasked with updating USI's sexual harassment policy and which resulted in a new

sexual harassment policy that USI states was implemented and communicated to USI faculty,

staff, and student body through publication on the USI's website on August 23, 2021 (the "New

Policy"). [*See* attached Exhibit 4].

> The below email exchange (Bates No. USI 10787) states:
>
> Hey there,
> I have been asked to provide our employees an update on the changes we have made to
> Title IX at the University meeting next week. This is for staff, faculty and administrators.
> Happy to chat about what you would like me to provide them with in the way of an update.
> [Dean of Students]
>
> Hi there!
> Do you want to talk tomorrow? I have a PP I can share with you and happy to co-present
> as well.
> [Devonshire]

[See attached Exhibit 5]. USI made **no** relevance objection. Instead, it asserts a lack of specificity

and that the Request is unintelligible. RFP No. 258 clearly seeks documents or information as to

Title IX "changes" or "update" provided to USI employees at the meeting referenced in Bates

No. USI 10787. Devonshire's email references a "PP" which is likely a PowerPoint document

and should contain information provided to USI employees at the meeting. USI's objection that

RFP No. 258 if overbroad as to time is baseless as Bates No. USI 10787 is dated August 10,

2021, and refers to a meeting with employees "next week." USI's objection that the topic is

---

[5] RFP No. 173 sought all documents reviewed, consulted, or relied upon in preparing the
Spreadsheet. [Dkt. 330-9]. RFP Nos. 180, 181, and 182 sought all documents as to discussions,
adoption, or implementation of Policy amendments. *Id*.

overbroad is likewise baseless as RFP No. 258 relates to the singular topic of Title IX "changes" or "update" provided to USI staff at the meeting noted in Bates No. USI 10787.

USI selectively produced documents in response to RFP Nos. 173, 195-245 related to the Spreadsheet but is withholding other related documents based on meritless objections. [Dkt. 330-9, 330-10]. Documents responsive to RFP No. 258 relate directly to the purported Spreadsheet Policy amendments, including pre-Hearing approval, notice and implementation. Simply because the responsive documents will contradict USI's assertion that it implemented Policy amendments immediately prior to the Hearing is not a basis to withhold relevant discovery. [*See* FRCP 26(b)(1)]. As set forth below, USI's 30(b)(6) designee testified that USI has no knowledge of (i) who approved the purported pre-Hearing amendments on the Spreadsheet, (ii) what the specific purported pre-Hearing amendments are on the Spreadsheet, and (iii) the specific implementation date for each of the purported pre-Hearing Spreadsheet amendments. Thus, documents responsive to RFP No. 258 are also relevant to provide information on the Spreadsheet issues for which USI claims no knowledge.

Of significance and contrary to its objections, USI also produced Bates Nos. USI 11145-11153 in response to RFP No. 173 which is an email to USI staff dated September 3, 2021, about Title IX "updates" and the New Policy. [*See* Exhibit 4, Bates Nos. USI 11145-11153]. If a communication to staff in September 2021 about Title IX Policy "updates" is relevant and responsive, so too are documents communicating Title IX Policy "updates" to staff in mid-August 2021. If Policy amendments were made between July 9 and August 3 as USI asserts on the Spreadsheet, then updates to USI staff two weeks later would have disclosed the same. The Court should order USI to produce all documents responsive to RFP No. 258.

**4. USI waived privilege for Log emails between July 26, 2021, and August 25, 2021.**

On its Second Updated Privilege Log (the "Log"), USI identifies Bates Nos. 10493-10545 as "Requests for or conveyance of legal advice regarding misconduct policy update," *i.e.*, the Policy. [Dkt. 332-22]. Said documents consist of (i) emails dated July 19-20, 2021, among Trump, Devonshire, and Andrew Lenhardt ("Lenhardt") (USI's Executive Director of Human Resources at the time), and (ii) emails dated August 25, 2021, between Trump and Devonshire. *Id*. The Log also identifies Bates Nos. 09099-09101 and 09103-09554 as "Requests for or conveyance of legal advice regarding final hearing notice letter." *Id*. These emails dated July 26, 2021, are among Trump, Devonshire, Karen Nutter ("Nutter") of Grand Rivers Solution, and/or Lenhardt.[6] *Id*. All of the foregoing are referred to as the "Withheld Emails."

**A.  USI does not specify what RFPs the Withheld Emails relate to.**

Neither the Log nor USI's RFP Responses identify which of the Withheld Emails is responsive to which RFPs. Thus, the Withheld Emails must be responsive to each of the RFPs for which privilege is cited.

**B.  Trump and Devonshire testify as to privileged communications regarding the Hearing allegations and purported pre-Hearing Policy amendments.**

Trump was deposed on October 3, 2023, and he testified as to the substance of his communications, in his capacity as USI legal counsel, with Devonshire about purported pre-Hearing Policy amendments.[7] [Dkt. 341-1, Page ID 9985-9889:1-17; 9898:11-25; 9899- 990:1-

---

[6] USI Bates Nos. 09102 and 09555-09556 are the same emails involving Nutter that Defendant Grand River Solutions possessed. In response to Plaintiff's motion to compel, USI asserted privilege to the Nutter emails held by Grand River Solutions. [Dkt. 334]. The Court rejected USI's claim of privilege and ordered Grand River Solutions to produce the same. [Dkt. 347]. Grand River Solutions timely produced such emails to Plaintiff. Therefore, the challenge to USI's privilege assertion on these two emails is moot. Such, however, is neither a concession nor a waiver of Plaintiff's objection as to those emails or the Privileged Emails.

[7] The evening before Trump's October deposition, USI sent an email saying that Trump would be USI's 30(B)(6) designee on the Spreadsheet topics in the 30(b)(6) subpoena. [*See* attached Exhibit 6].

14]. Trump also testified as to his communications with Devonshire regarding the allegations for the Hearing, including the new allegation of non-consensual kissing. [Dkt. 341-1, Page ID 9845-9847:1-22]. Devonshire likewise testified as to purported communications with Trump on pre-Hearing Policy amendment. [Dkt. 341-4, Page ID 10813:9-18]. USI disclosed selective Trump emails with the Working Group on purported amendments referenced on the Spreadsheet. [*See* Exhibit 4, Bates Nos. USI 10618, 10649, 10681-10689, 10748, 10789, 10793-10794, 10826-10827, 10862-10863, 10899, 10907, 10974, 11009, 11043, 11113, 11117, 11120, 11122, 11126-11131]. USI selectively disclosed Trump's purported privileged communications, while withholding emails on the same subject matter.

### C.  On summary judgment, Defendants rely on Trump and Devonshire's testimony as to privileged communications.

In their summary judgment briefs, Defendants cite Trump and Devonshire's deposition testimony relative to their arguments on the Hearing allegations and purported pre-Hearing Policy amendments. [Dkt. 315, Page ID 4433-4434, 4453; Dkt. 319-1, Page ID:4678, 4684-4686; Dkt. 317-1, Page ID 4567 incorporating USI facts and arguments]. Thus, Defendants intentionally rely upon Trump's attorney-client communications as to the Hearing allegations and purported -pre Policy amendments for their defense to Plaintiff's claims.

### D.  USI produces selective documents of the Working Group's communications with Trump.

As organized by Devonshire, USI put together a working group of USI department heads, executives, and other USI persons who were tasked with updating USI's Sexual Harassment Policy in July-August 2021 (the "Working Group"). [Dkt. 341-1, Page ID 9878:21-25; Dkt 341-4, Page ID 10806:20-25; 10807:1]. This Working Group included Doss, Devonshire and Lenhardt, and Trump was copied on emails. [Dkt. 341-4, Page ID 11083-11085; Dkt. 341-1,

Page ID 9880:9-16]. On July 14, 2021, Devonshire sent an email to the Working Group, including Lenhardt, with Trump copied, stating that she "would be working on a draft document which I will share with all of you for feedback." [Dkt. 332-28, Page ID 11084-11085]. On July 30, 2021, Devonshire sent an email to the Working Group and Trump and included a draft new sexual harassment policy for discussion. [Dkt. 332-28, Page ID 11084]. The Working Group and Trump were then sent a Zoom notice for an August 6, 2021, meeting, *i.e.*, a date after the Hearing. [Dkt. 332-28, Page ID 11086].

In response to RFP No. 173, USI produced numerous emails by, between, and among Doss, Devonshire, Trump, Lenhardt, and/or other Working Group persons relating to draft policy communications. [*See* attached Exhibit 4]. These include communications from Trump as to purported legal advice on draft policy issues. [*See* attached Exhibit 4, Bates Nos. USI 10618, 10649, 10681-10689, 10748, 10789, 10793-10794, 10826-10827, 10862-10863, 10899, 10907, 10974, 11009, 11043, 11113, 11117, 11120, 11122, 11126-11131].  On August 20, 2021, Devonshire advised another time that the new sexual harassment policy had not yet been approved or posted. [*See* attached Exhibit 4, Bates Nos. USI 10861]. Devonshire, Trump, and the Working Group continued their communications through August on the "draft" policy until the final version was sent to USI Vice-Presidents for final approval and then implemented and communicated to faculty, staff, and the student body as the New Policy by publishing it on USI's website on August 23, 2021. [*See* attached Exhibit 4, Bates Nos. USI 9902, 9905; Exhibit 7, USI Response to 30(b)(6) Topic Nos. 5, 6, 7, 8, 9, 10].[8]

---

[8] As referenced in the emails, "Steve" referred to USI Vice President of Finance and Administration, and "Mohammed" referred to VP Provost Mohammed Khayum. [Dkt. 341-1, Page ID 9902, 9905. Trump testified that all USI policy amendments are required to be approved by a USI Vice-President. [Dkt. 341-1, Page ID 9902:11-24].

Devonshire did not recall telling any Working Group member that any Policy amendment had been approved or implemented prior to the Hearing. [Dkt. 341-4, Page ID 16-22]. Devonshire drafted a communication which was sent by campus wide email to USI faculty and staff on September 3, 2021, stating:

> Over the summer, USI created a campus-wide policy committee — comprised of members from the Title IX Office, Student Affairs, Academic Affairs, Human Resources, Public Safety, and Legal Affairs, to review the existing policy and make changes as needed. This Committee's recommended updates to the exiting policy are summarized below:
> . . .
> - **Updated definitions** of Prohibited Behaviors including: . . .
>   - ○ **Sexual Assault (including rape, fondling, incest, and statutory rape)**
> **. . . .**

[Exhibit 4, Bates Nos. USI 11133-11135; 11136-11153]. USI has represented in RFP responses that it possesses no non-privileged document or information evidencing approval, implementation, or notice to faculty, staff, or students of any pre-Hearing Policy amendment. [*See* Dkt. 330-12, RFP Response No. 343 which (i) only asserts objections and incorporates RFP Response Nos. 184 and 209 which only assert objections [Dkt. 330-10, 330-9], and (ii) contains no statement that USI is withholding documents under FRCP 34(b)(2)(C); therefore, under *3D Sys. Corp.*, *supra*, this is a representation that no responsive document was withheld].

### E.  USI failed to issue a litigation hold to its IT department which resulted in the permanent deletion of relevant information.

Devonshire testified that purported Policy amendments reflected information on USI's Title IX website. [Dkt. 341-4, Page ID 10845:11-25; 10846:1-25; 10847:1-12]. When Plaintiff asked for the website source documents as to Devonshire's assertion, USI admitted that it had no such document. [Dkt. 330-9, RFP Response Nos. 167-169]. USI did not issue litigation hold notices prior to November 5, 2021, despite the initiation of the lawsuit on September 25, 2021. [Exhibit 8, Int. Answer No. 5]. When Trump issued the litigation hold notices, he only sent the

same to Doss, Devonshire, Shelly Blunt (Associate Provost for Academic Affairs), the Title IX investigator, Nutter, and the Appeal Officer. *Id*. He did **not** issue a litigation hold to USI's IT department. [Dkt. 341-1, Page ID 9913:5-7].

USI's 30(b)(6) designee on topics of USI's deletion of Title IX website information testified that USI's automatic deletion was not stopped after the litigation commenced, and USI permanently deleted all information that had been removed from USI's Title IX website during the period between July and August 2021. [Dkt. 341-15, Page ID 16268-15279]. In other words, USI's failure to issue a litigation hold to its IT department resulted in the permanent deletion of relevant information.

**F. USI has no knowledge of anyone approving pre-Hearing Policy amendments.**

USI's Spreadsheet purports to show Policy amendments that were approved, implemented, and noticed during unspecified dates from July 9, 2021, through August 23, 2021. [Dkt. 330-18]. This includes purported Policy changes occurring immediately prior to the Hearing. *Id*.

Devonshire testified that she had **no** authority to make Policy changes. [Dkt. 341-4, Page ID 10813]. The President of Defendant D.Stafford & Associates (the company contracting her services to USI) confirmed Devonshire's lack of authority to unilaterally implement policy changes. [Dkt. 341-7, Page ID 12183:20-25; 12184-12186:1]. As noted above, USI claims there were purported definitional Policy amendments made two (2) days prior to the Hearing, and Defendants refer to the same on summary judgment. Defendant Nutter testified, and Plaintiff's Title IX expert opined, that making Title IX policy changes during the period between the Title IX investigation and the hearing would be contrary to best practices and improper. [Dkt. 341-13, Page ID 14343:10-25; 143441-17; Dkt. 332-37, Page ID 9256]. Devonshire testified that Trump

approved the purported pre-Hearing Policy amendment. [Dkt. 341-4, Page ID 10813:13-18]. Trump, however, **denied** in two separate depositions that he ever approved any Policy amendment. [Dkt. 341-1, Page ID 9853:11-14; Dkt. 341-1, Page ID 10341:22-24].

After the Court ordered USI to reproduce a 30(B)(6) designee on the Topics for a second deposition, Trump was again designated by USI on the Spreadsheet topics. [Dkt. 341-2]. When deposed on December 1, 2023, as to who approved the purported pre-Hearing Policy amendments on the Spreadsheet, Trump testified that he spoke with USI VPs and **none** had knowledge of approving a pre-Hearing amendment. [Dkt. 341-2, Page ID 10316:3-25; 10317:1-22]. Trump further testified that USI has no knowledge of anyone approving purported definitional Policy amendments on August 2, 2021, or any other purported pre-Hearing amendment on the Spreadsheet. [*Id*. at 10334-10340].

Despite USI having no knowledge of who approved, implemented, or noticed purported Spreadsheet pre-Hearing Policy amendments, Defendants argue on summary judgment as if approval, implementation, and notice of pre-Hearing Policy amendments were established facts.

**G.  USI disclosed privileged communications to a non-agent.**

As a result of the Court's order [Dkt. 347], Defendant Grand River Solutions produced the Nutter emails that USI asserted privilege as "Requests for or conveyance of legal advice regarding final hearing notice letter" [*See* Exhibit 9]. As a result of disclosing such purported privileged communications to a non-agent, USI has waived privilege to the Withheld Emails on the same subject matter. *Evans, supra*.

**H.  USI has put the Withheld Emails at issue, and it cannot selectively produce and rely upon information for its advantage and then withhold related information that in fairness must be produced.**

Based on the foregoing, USI has waived privilege to the Withheld Emails. Plaintiff's 6th and 7th RFPs sought communications of Trump, Devonshire, and the Working Group as to the following:

**REQUEST NO. 308:** All documents evidencing communications with Aaron Trump relating to amendments or changes to USI's Sexual Harassment Policy during the period from July 8, 2021, through September 22, 2021.

**REQUEST NO. 309:** All documents evidencing communications with Aaron Trump relating to definitional amendments or changes to USI's Sexual Harassment Policy during the period from July 8, 2021, through August 4, 2021.

**REQUEST NO. 311:** All documents evidencing communications with Aaron Trump during the period from July 8, 2021, through August 4, 2021, relating to Jane Doe's allegations against John Doe for the Title IX Process.

**REQUEST NO. 312:** All documents evidencing communications with Aaron Trump during the period from February 25, 2021, through July 12, 2021, relating to Jane Doe's allegations against John Doe for the Title IX Process.

**REQUEST NO. 314:** All documents evidencing communications with Aaron Trump during the period from July 13, 2021, through August 4, 2021, relating to Jane Doe's allegations against John Doe for the Title IX Process.

**REQUEST NO. 322:** All documents evidencing communications during the period from July 14, 2021, through September 3, 2021, by, between, and/or among each person on the "Policy Working Group" as referenced on USI Bates No. 10681 regarding any amendment, change, and/or update of USI's Sexual Harassment Policy and/or discussions relating thereto.

**REQUEST NO. 338:** All documents evidencing communications involving Beth Devonshire during the period from July 8, 2021, through July 26, 2021, relating to any definitions referenced in the Title IX Process hearing notice to John Doe dated July 26, 2021.

**REQUEST NO. 339:** All documents evidencing communications involving Beth Devonshire from July 8, 2021, through August 2, 2021, relating in any way to the matters referenced in USI Bates No. 04831.

**REQUEST NO. 340:** All documents evidencing communications involving Beth Devonshire during the period from July 27, 2021, through August 2, 2021, relating to any definitions for the Title IX Process hearing.

**REQUEST NO. 341:** All documents, including communications during the period from July 8, 2021, through August 2, 2021, relating in any way to the matters referenced in USI Bates No. 04831.

**REQUEST NO. 342:** All documents evidencing discussion, approval, and/or implementation of the definitions referenced in USI Bates No. 04831 as part of USI's Sexual Harassment Policy.

[Dkt. 330-11; 330-12].

In response to each said RFP, USI (i) cited other RFP responses producing selective documents, (ii) asserted privilege objections, and (iii) incorporated the Log:

**RESPONSE:** USI objects: Defendant objects to this Request to the extent that it seeks communications between USI and its attorneys for the purpose of confidential advice and counsel. This Request is objectionable to the extent that it seeks attorney-client communications, privileged documents, or attorney work-product in anticipation of litigation. Subject to objections and without waiver, USI states: *See* responsive non-privileged documents previously produced by USI as RFP [. . . . ]. *See also* USI's Second Updated Privilege Log.

*Id*. USI intentionally and selectively produced purported privileged communications and information (i) to non-agent Nutter, (ii) to Plaintiff in discovery, (iii) in Trump's deposition, (iv) in Devonshire's deposition, (v) in the Working Group emails produced, and (vi) in summary judgment filings. In other words, USI cites, discloses, and relies on favorable privileged communications to support its defense, but withholds related, unfavorable privileged communications on the same subject matter. For example, USI has produced email communications among the Working Group and Trump. [Exhibit 4]. Yet, it withholds the remaining Working Group emails with Trump on the identical subject matter. [Dkt. 330-11, RFP Response No. 322]. This use of privilege as a sword and shield is precluded. *Netflix, supra*.

**1. USI waived privilege to the Log emails between July 26th and August 25th.**

Waiver occurs when "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness

to be considered together." Fed. R. Evid. 502(a). USI has intentionally used privileged communications on the Hearing allegations and purported pre-Hearing Policy amendments for its advantage in defending the case and in advancing its summary judgment motion; so too, have all other Defendants. In doing so, USI cannot hide behind a selective disclosure of purported privileged communications. Fairness dictates that Plaintiff is entitled to see the Log entries as they show context, provide relevant information, and enable him to assess USI's defense. Moreover, USI claims **no** 30(b)(6) knowledge of who was involved in decision-making for the Hearing allegations, who approved purported pre-Hearing Policy amendments, the specific implementation dates, or the specific amendments on the Spreadsheet. Thus, the only documents on the same, and the only way for Plaintiff to obtain information thereon and assess USI's defense, is through said Log communications on those very subject matters.

There can be no dispute as to the first two elements of the attorney client privilege waiver test: Devonshire and Trump's deposition testimony on purported privileged communications regarding the Hearing allegations and purported pre-Hearing Policy amendments, Defendants' citation on summary judgment, USI's disclosure of Trump's communications with the Working Group, USI's disclosure of purported privileged communications to Nutter were (i) intentional and (ii) concern the same subject matter as the undisclosed Log communications. From the subject matter description on the Log and by incorporating the Log into RFPs Responses, USI has conceded the undisclosed Log communications concern the same subject matter as the disclosed communications. *Rackemann, supra,* at *2.

This Court has held under the third element of FRE 502(a), the scope of the waiver should extend only to information that "ought in fairness ... be considered together" with the information disclosed. *Rackemann citing City of Lakeland Employees' Pension Plan v. Baxter*

*Int'l Inc.*, 2013 WL 2151509, at *3 (N.D. Ill. 2013). In other words, "a party may not place an issue before the trier of fact and then assert a privilege to prohibit the introduction of evidence regarding that issue." *Netflix, Inc., supra*. The remainder of the information contained in the specified Log communications "ought in fairness" be disclosed to allow Plaintiff to fully evaluate USI's defense, obtain the only available documents, and to provide context for the same. *Rackemann citing Doe 1 v. Baylor University*, 2017 WL 3470943, at *7, —— F.R.D. —— (W.D. Texas 2017) ("'Would it be fair to allow Baylor to protect remaining undisclosed details regarding the Pepper Hamilton investigation when it intentionally, publicly, and selectively released certain details of the investigation, including attorney-client communications?' The Court concludes ... that it would not."). USI cannot use selective privileged information for its defense and advantage in the litigation, and then invoke privilege to deny Plaintiff access to the related information on the Log. The unique facts and circumstances herein result in USI's waiver of privilege as to Bates Nos. USI 10493-10545, 09099-09101 and 09103-09554.

### I.   The work product doctrine is not applicable.

USI also asserts the work product doctrine as to Bates Nos. USI 09101, 09103-09554. [Dkt. 332-22]. For work product protection to attach, the material must be prepared "in anticipation of litigation or for trial by or for another party." *Id*. at *2, citing Fed. R. Civ. P. 26(b)(3). The Log's "Subject Matter Description" describes said emails as "Requests for or conveyance of legal advice regarding final hearing notice letter." *Id*. These admittedly relate to the notice for the August 4, 2021, Hearing. No litigation was pending or threatened as of July 26, 2021, as the Hearing had not occurred and no Title IX decision or discipline had resulted. USI admits, through the Log, that Bates Nos. USI 09101, 09103-09554 for emails dated July 26, 2021, relate to the Hearing and not anticipated litigation.

Moreover, Bates Nos. USI 09102, one of the Nutter emails ordered by the Court to be produced, shows that these communications of July 26, 2021, relate **solely** to the Title IX Hearing and not any anticipated litigation. [Exhibit 9]. Thus, the work product doctrine is neither applicable nor a basis to withhold responsive documents on the Log.

### G. USI failed to comply with the Court's order on the 30(b)(6) deposition and should be sanctioned.

Trump's individual deposition was scheduled for October 3, 2023. USI's counsel sent an email at 7:19 p.m. the night before stating that Trump would also be USI's 30(b)(6) designee on Spreadsheet topics identified in the 30(b)(6) subpoena. [Exhibit 6]. Trump testified that he communicated with **no one** in preparation for the 30(b)(6) topics, and he could not provide answers as to the Spreadsheet topic questions.  [Dkt. 341-1, Page ID 9809:10-18; 99354:22-25; 9935:1-8]. A discovery conference was held with the Magistrate Judge on November 17, 2023, and the Court ordered USI to present its 30(B)(6) designee on December 1, 2023, for a second deposition on the topics, including the Spreadsheet. [Dkt. 309].

USI again designated Trump as the 30(b)(6) on the Spreadsheet topics, and Trump testified that he did **not** speak with Devonshire, Dameion Doss ("Doss") (USI's deputy Title IX coordinator), Carrie Lynn ("Lynn") (USI's former Title IX coordinator), or Lenhardt as to the Spreadsheet topics. [Dkt. 341-2, Page ID 10315:3-6; 10433-10438]. Trump did speak with USI's VPs and President but none of them had information on the Spreadsheet topics. [*Id*. at Page ID 10316:3-25; 10317:1-22]. This is hardly surprising given that none of them were involved in the Title IX matter. As to the persons who were involved in the Title IX matter, *i.e*., Doss, Devonshire, and Lynn, USI took no action to communicate with them. [*Id*. at 10318:5-19; 10325:15-25; 10326:1-25; 10327:1-9]. Doss is still at USI. Devonshire is represented by the same counsel herein as USI. *Id*. Trump was present at Devonshire's deposition, and he testified

that USI knows how to reach her. *Id*. Trump has spoken with Lynn during this litigation, and USI

knows how to reach her. *Id*.  Lenhardt is no longer at USI but Trump spoke with Lenhardt during

his deposition, and USI knows how to reach him. *Id*.

Rule 30(b)(6) allows a party to depose an entity, and the rule requires that party, "[i]n its

notice or subpoena[,]" to "describe with reasonable particularity the matters for examination."

Fed. R. Civ. P. 30(b)(6). Once properly noticed, the entity must designate a person(s) "who

consent to testify on its behalf" and "may set out the matters on which each person will testify."

*Id*. During the deposition, the designee is required to "testify about information known or

reasonably available to the [corporation]." *Id*. The corporation's duty to prepare a Rule 30(b)(6)

witness extends, "beyond matters personally known to [the] designee," to all information

reasonably available to the corporation, "whether from documents, past employees, or other

sources." *Fuentes v. Classica Cruise Operator Ltd, Inc.*, 32 F.4th 1311, 1321–22 (11th Cir.

2022) citing *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006);

*Kartagener v. Carnival Corp.*, 380 F. Supp. 3d 1290, 1294 (S.D. Fla. 2019).

If the designee is not able to answer questions regarding the subject matter he was

designated to testify about, the corporation has failed to satisfy its obligation to prepare the

designee and may be subject to sanctions. *Fuentes*, citing *Black Horse Lane Ass'n, L.P. v. Dow

Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000). Here, USI intentionally avoided obtaining

information reasonably available to it.

### 1. USI failed to satisfy its 30(b)(6) duty.

USI intentionally avoided speaking with persons who were involved in the Title IX

process and had knowledge relative to the 30(b)(6) topics. Instead, and prior to the second

30(b)(6) deposition, USI sent a "Written Response to Plaintiff's 30(B)(6) Deposition Notice (the

"30(b)(6) Response") which was prepared by counsel. [Exhibit 7]. The 30(b)(6) Response was

**not** based on reasonably available information from Doss, Devonshire, Lynn, or Lenhardt.

### a.   USI intentionally avoided reasonably available information on Topic 1.

FRCP 30(b)(6) Topic 1 asked why USI did not disclose various exculpatory documents

to the Title IX Investigator, Decision Makers, Appeal Officer, and Plaintiff. The 30(b)(6)

Response stated:

> RESPONSE: As to the investigator: Because Carrie Lynn, USI's Title IX
> Coordinator during the investigation, left USI before the conclusion of the
> investigation and has not been deposed and left no record as to her selection of
> documents to provide to the investigator, USI does not have information
> regarding her decision-making on disclosure to the investigator. As to the decision
> makers, the appeal officer, and John Doe: USI has no information on this topic
> beyond information disclosed by previously deposed witnesses in this case.

[Exhibit 7, Response to Topic 1]. Trump testified that USI has no knowledge why the

exculpatory documents were not provided to the Investigator. [Dkt. 341-2, Page ID 10327-

10333]. As to the Decision Makers and Appeal Officer, Trump testified that USI would rely on

the deposition testimony of Doss, Lenhardt, or Devonshire for an answer. *Id*. Trump admitted,

however, that he did **not** read the deposition transcripts in preparation for the Topics, and he

could **not** identify specific deposition testimony upon which USI relied to answer the topic

questions. *Id*. This is an intentional avoidance of the 30(b)(6) duty. Trump further admitted that

USI did not speak with Doss, Lynn, Lenhardt, or Devonshire in preparation for Topic 1. [*Id*. at

10318:5-19; 10325:15-25; 10326:1-25; 10327:1-9; Exhibit 7, Response to Topic 29]. USI

intentionally failed to communicate with the persons who would have knowledge on the Topic to

avoid disclosing the unfavorable evidence of its discriminatory conduct.

### b.   USI's misconduct continues on Spreadsheet Topics 2, 3, and 4.

FRCP 30(b)(6) Topics 2, 3, 4 asked:

(i)      TOPIC 2: Who approved the changes, amendments, and/or updates identified as Nos. 13, 15, 40, 41, 61 and 65 on the Spreadsheet? (*i.e.*, the purported pre-Hearing Policy amendments);

(i)      TOPIC 3: What were the changes, amendments, and/or updates identified as Nos. 13, 15, 40, 41, 61 and 65 on the Spreadsheet?;

(ii)     TOPIC 4: What was the implementation date of each of the changes, amendments, and/or updates identified as Nos. 13, 15, 40, 41, 61, and 65 on the Spreadsheet?

[Exhibit 7]. As Trump testified in his October deposition, all USI policy amendments are required to be approved by a USI Vice-President. [Dkt. 341-1, Page ID 9902:11-24]. Trump spoke with the USI President and VPs on the Topics, and **each** advised that he/she had had **not** approved any pre-Hearing amendment under Topic 2.[9] [Dkt. 341-2, Page ID 10316:11-25; 10317:1-16]. Yet, Trump did not communicate with Doss, Lynn, Lenhardt, or Devonshire as to and Topics, including 2, 3, and 4. [*Id.* at 10318:5-19; 10325:15-25; 10326:1-25; 10327:1-9; Exhibit 7, Response to Topic 29]. Despite admitting that USI's counsel prepared the Spreadsheet, counsel had no information to provide Trump on the Topics. [Dkt. 341-2, Page ID 10319:10-25; 10320-10321:1-8].

USI's 30(b)(6) Response stated:

**TOPIC 2**: Who approved the changes, amendments, and/or updates identified as Nos. 13, 15, 40, 41, 61 and 65 on the Spreadsheet?
**RESPONSE**: USI has no information on this topic beyond information disclosed by previously deposed witnesses in this case, including Beth Devonshire.

**TOPIC 3**: What were the changes, amendments, and/or updates identified as Nos. 13, 15, 40, 41, 61 and 65 on the Spreadsheet?
**RESPONSE:** USI has no information on this topic beyond information provided in the Spreadsheet and information disclosed by previously deposed witnesses in this case.

---

[9] On August 17, 2021, Lenhardt sent an email stating that he would send the New Policy to VP Steve Bridges for final approval "tomorrow," and on August 23, 2021, Trump sent an email attaching the New Policy and advising that is was forwarded to VP Steve Bridges and VP Mohammad Khayum. [Exhibit 4, Bates Nos. USI 10859, 11077].

> **TOPIC 4**: What was the implementation date of each of the changes, amendments, and/or updates identified as Nos. 13, 15, 40, 41, 61, and 65 on the Spreadsheet?
> **RESPONSE**: See the Spreadsheet, documents produced in Response to RFP No. 194, and testimony of previously deposed witnesses in this case. USI has no additional, more precise information on this topic.

[Exhibit 7]. As to Topic 2, Trump never read the deposition transcripts in preparation for the

30(b)(6) Topics, and he could not specify any deposition testimony to answer the Topic

questions.

> Q  So as to Topic 2, which asked who approved the changes, amendments and or updates identified as Nos. 13, 15, 40, 41, 61, and 65 on the spreadsheet, you have no knowledge as you sit here today?
> A  I have no information beyond the testimony that was provided by Beth Devonshire and Andrew Lenhardt in their depositions.
>
> Q  And you can't specify any specific testimony that USI relies upon today in their depositions, right?
> A  I would refer back to their transcripts of their depositions.
>
> Q  Did you read Mr. Lenhardt's deposition transcript before today?
> A  I have read it before today, yes.
>
> Q  Did you read it in preparation for testifying on Topic 2 today?
> A  No.

[Dkt. 341-2, Page ID 10340:15-25; 10341:1-7].

On Topic 3's questions as to the purported pre-Hearing amendments on the Spreadsheet,

USI again had no answer other than to refer to other documents Trump did not review for the

deposition.

> Q  Do you know what the specific amendments that are identified in all these entries on this spreadsheet are?
> A  I would rely on what the spreadsheet says.
>
> Q  Okay.  So with respect to, say, Entry 13, you have no knowledge of what those specific amendments are on the spreadsheet?
> A  Correct.

Q  Who would know?
A  Well, I believe we produced the documents that it's comparing, and so I would look at the difference between those two documents.

Q  And did you do that for purposes of today?
A  No, I did not.

Q  So you can't testify what the specific changes were as identified in Entry 13 on the spreadsheet today?
A  No.  I would simply provide the documents we've already provided to you.

[Dkt. 341-2, Page ID 10337:24-25; 10338-10339:123].

Q And so if I go down on any of these entries, and it looks like there's roughly 80, you couldn't provide me with the specific changes that are – or amendments that are identified in here, right?
A  I'd refer you back to the documents you've already been provided.

Q  Okay.  And as you sit here today, can you tell me who approved each of the amendments on this spreadsheet?
A  I can't.  I'd refer back to Beth Devonshire's testimony and Andrew Lenhardt's testimony during their depositions.

[Dkt. 341-2, Page ID 10339:24-25; 10340:1-25]. Rather than provide specific answers and information to the Topic questions, USI avoided the knowing unfavorable testimony of discriminatory conduct by disregarding its 30(b)(6) duty.  In reality, USI knows there was no pre-Hearing Policy amendment, and it is simply trying to coverup its discriminatory conduct as to Plaintiff by fabricating a story after the fact.

As to the **specific** "Implementation dates" for the purported pre-Hearing Spreadsheet amendments on Topic 4, Trump stated:

Q . . . Now, as to the implementation dates in Topic 4, what was the implementation date for Entry 13 on the spreadsheet?
A  I'd rely on the information in the spreadsheet.

Q  And the spreadsheet just has a range from July 9 to August 3, 2021, right?
A  Correct.

Q  It doesn't have a specific date for each of the purported amendments, correct?
A  Correct.

> Q  And so as you sit here today as USI's corporate representative, you can't -- have no
> answer or you cannot provide the specific date in which the amendment on Entry 13 was
> implemented?
> A  Correct.

[Dkt. 341-2, Page ID 10342:7-21]. As to the specific implementation date for the purported

Amendments on the Spreadsheet, USI stated in the 30(b)(6) Response:

> RESPONSE: See the Spreadsheet, documents produced in Response to RFP No.
> 194, and testimony of previously deposed witnesses in this case. USI has no
> additional, more precise information on this topic.

[Exhibit 7, Response to Topics 4, 10].

Trump confirmed that he would just refer back to the Spreadsheet for any specific

implementation date on any purported Spreadsheet amendments. [Dkt. 341-2, Page ID 10342:22-

25; 10343:1-6]. This circular rationale evidences USI's continued avoidance in obtaining

reasonably available information under 30(b)(6).[10] Shockingly, Trump testified that USI, through

him as 30(b)(6) designee, does not know what "implementation date" on the Spreadsheet means.

[Dkt. 341-2, Page ID 10343:7-25; 10344:1-20]. Of course, Trump did not make any effort to ask

someone what "implementation date" meant, and his testimony contradicts USI's Interrogatory

Answer (signed by Trump) which stated:

> As to text in [New Policy] that modifies or supplements text in [Policy], the
> modifying or supplementary text was **implemented** by notice at varying dates
> between July 9, 2021 and August 23, 2021 and was effective upon
> **implementation**.

---

[10] USI states in the 30(b)(6) Response that the purported pre-Hearing Spreadsheet amendments
were published on USI's website via the New Policy on August 23, 2021, and such amendments
were communicated to USI faculty, staff, and student body by publication of the New Policy on
USI's website on August 23, 2021. [Exhibit 7, Response to Topic Nos. 5-10]. Obviously, if the
New Policy was not implemented and noticed to USI faculty, staff, and students until August 23,
2021, such amendments therein could **not** have been implemented and noticed **prior** to the
Hearing. As Trump admitted, USI has never implemented a policy amendment through an email
to a single student. [Dkt. 341-1, Page ID 9967:17-20].

[See attached Exhibit 1, Int. Answer 8].

Further misconduct is evidenced by the 30(b)(6) Response wherein USI seeks to answer "who" was involved in discussions or decision making of any pre-Hearing Policy amendment by reciting to Response to RFP No. 194 which is just another general reference to documents without any specific Bates Nos. as to the name of any person. [Exhibit 7, Response to Topic 17; Dkt. 330-10]. Trump, however, admitted that USI is **not** relying on Response to RFP No. 194.

> Q  What, if any, documents did you review for purposes of testifying as USI's representative on these topics today?
> A  I referred to the spreadsheet that mentions in your topic, and I referred to the Bates numbers that are mentioned in your topics.
>
> Q  And those would be the only documents you looked at in preparation today?
> A  Correct.

[Dkt. 341-2, Page ID 10341:8-16].

c.   **USI also avoids information on those involved in discussions and decision-making on the Hearing allegations.**

As to Topics 14 and 15 on who was involved in the discussions and decision making regarding the Hearing allegations/charges, USI again sought avoidance. In the 30(b)(6) Response, USI stated:

> RESPONSE: USI has no information on this topic beyond information provided in the Spreadsheet and information disclosed by previously deposed witnesses in this case.

[Exhibit 7, Response to Topics 14, 15]. Contrary to the 30(b)(6) Response, Trump admitted that the Spreadsheet contains **no** information on the Hearing allegations/charges:

> Q  Okay.  The spreadsheet, that doesn't have any information about the allegations for the Title IX hearing, correct?
> A  No.
>
> Q  And it doesn't have any specific information in the spreadsheet about any charges that were for the hearing, correct?

A   No.

[Dkt. 341-2, Page ID 10367:20-23]. Again, Trump simply referred to Devonshire's deposition

without identifying all specific persons involved in discussions and decision making.[11]

USI intentionally did not prepare a 30(b)(6) designee on Topics in the first deposition. In

response to the Court's order requiring another 30(b)(6) deposition, USI again failed to satisfy its

obligation to prepare the designee on various Topics based on information reasonably available,

"whether from documents, past employees, or other sources." *Fuentes, supra*. As a result of

USI's willful misconduct and bad faith, the Court should sanction USI per FRCP 37(b)(2) by

declaring the following are taken as true for all purposes of this litigation, and precluding USI

from offering any testimony or evidence at any stage of the litigation from Doss, Devonshire,

Lynn, or Lenhardt on Topics 1, 2, 3, 4, 14, 15, 17:

- USI intentionally withheld documents identified as USI Bates Nos. 00133-00137, USI Bates Nos. 00138-00142, USI Bates Nos. 01416-01420, USI Bates Nos. 00182-00185, USI Bates Nos. 01398, USI Bates Nos. 01369, and USI Bates Nos. 03656-03659 were not provided to the Title IX investigator, Decision Makers, Appeal Officer, and Plaintiff in the Title IX process;
- USI did not approve any amendment to its sexual harassment policy between July 9, 2021, and August 4, 2021;
- USI did not implement any amendment to its sexual harassment policy during the period from July 9, 2021, through August 4, 2021;
- USI did not give notice of any amendment to its sexual harassment policy to USI students, faculty, or staff during the period from July 9, 2021, through August 4, 2021.

### 5.  The Court should sanction USI and award fees to Plaintiff.

FRCP 37(a)(5) allows Plaintiff to recover his attorneys' fees incurred in bringing this

Motion because, as more specifically set forth above, USI's discovery actions, responses, and

---

[11] The Nutter emails compelled by the Court evidence that she was involved in discussions with Devonshire and Trump regarding the Hearing allegations. [Exhibit 9]. Trump did not communicate with Nutter in preparation for the 30(b)(6) topics. [Exhibit 7, Response to Topic 29].

privilege assertions are not substantially justified and no other circumstances make an award of fees to Plaintiff unjust. The Court should also award Plaintiff all fees incurred in preparing for and taking Trump's depositions because of USI's discovery misconduct.

The "burden of persuasion is on the losing party to avoid assessment of fees, rather than on the winning party to obtain such an award." *Rackemann v. LISNR, Inc.*, No. 117CV00624MJDTWP, 2018 WL 3328140, at *2 (S.D. Ind. July 6, 2018) citing *Malibu Media, LLC*, 2014 WL 5392097, at *1 (citing *Lincoln Diagnostics, Inc. v. Panatrex, Inc.*, No. 07-CV-2077, 2008 WL 4330182, at *3 (C.D. Ill. Sept. 16, 2016). Here, reasonable people could **not** differ as to the appropriateness of USI's contested actions. USI has undertaken improper affirmative steps to intentionally avoid producing relevant and responsive information, documentation, and testimony, including information as to its assertions and defenses herein. Plaintiff has been forced to spend substantial time and expense in addressing these discovery issues, and he should recover all fees incurred relative thereto.

## CONCLUSION

The Court should grant the Motion and order USI to produce:

a.      the Policy information contained on USI's Clean Catalog software system that (i) USI currently possesses as to the sexual harassment policies for the period from July 9, 2021, through August 25, 2021, and (ii) that USI provided to its counsel months ago to create the Spreadsheet;

b.      all documents responsive to RFP Nos. 267, 271, 275, 279, 283;

c.      all documents responsive to RFP No. 258; and

d.      USI Bates Nos. 10493-10545, 09099-09101 and 09103-09554 on the Log.

The Court should further sanction USI by:

e.      Ordering USI to pay Plaintiff for his attorneys' fees incurred relative to the Trump depositions and this Motion;

f.      Ordering that the following facts are conclusively established for this litigation:

- USI intentionally withheld the documents identified as USI Bates Nos. 00133-00137, USI Bates Nos. 00138-00142, USI Bates Nos. 01416-01420, USI Bates

34

Nos. 00182-00185, USI Bates Nos. 01398, USI Bates Nos. 01369, and USI Bates Nos. 03656-03659 were not provided to the Title IX investigator, Decision Makers, Appeal Officer or Plaintiff during the Title IX process;

- USI did not approve any amendment to its sexual harassment policy during the period from July 9, 2021, through August 4, 2021;
- USI did not implement any amendment to its sexual harassment policy during the period from July 9, 2021, through August 4, 2021;
- USI did not communicate any amendment to its sexual harassment policy to USI students, faculty, or staff during the period from July 9, 2021, through August 4, 2021.

g.   Ordering that USI may not present testimony in any form during this litigation by Doss, Devonshire, Lenhardt, or Lynn on Topics 1, 2, 3, 4, 14, 15, 17; and

h.   award all other just and proper relief.

I affirm, under penalties of perjury, that the exhibits attached hereto are true and accurate copies of documents produced in discovery or communications of counsel.

ZIEMER, STAYMAN, WEITZEL & SHOULDERS, LLP

By: */s/ Robert L. Burkart*

  Robert L. Burkart #16664-82
  Keith W. Vonderahe #21908-82
  Matthew S. Koressel #35276-49
  20 NW First Street, 9th Floor
  Evansville, Indiana 47706-0916
  Phone: (812) 424-7575
  rburkart@zsws.com
  kvonderahe@zsws.com
  mkoressel@zsws.com

  Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on the 22nd day of January, 2024, a copy of the foregoing motion was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

William P. Kealey - wpk@stuartlaw.com Joseph H. Harrison III - jhh@stuartlaw.com

Craig Lamb - Craig.lamb@wilsonelser.com Edward O'Brien - Edward.O'Brien@wilsonelser.com

Timothy Hoffman - thoffman@sanchezdh.com John McInerney - JMcInerney@sanchezdh.com

  */s/ Robert L. Burkart*
  Robert L. Burkart