**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-00144-TWP-CSW |
| | ) | |
| UNIVERSITY OF SOUTHERN INDIANA, | ) | |
| DAMEION DOSS, | ) | |
| BETH DEVONSHIRE, | ) | |
| D. STAFFORD & ASSOCIATES, | ) | |
| KAREN NUTTER, | ) | |
| GRAND RIVER SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**</u>

This matter is before the Court on motions to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6), filed by some of the Defendants in this action. Plaintiff John Doe's Second

Amended Complaint asserts three claims: Count I: Violation of Title IX (against University of

Southern Indiana ("USI") only); Count II: Claims under 42 U.S.C. § 1983 (against all individual

Defendants); and Count III: Intentional Infliction of Emotional Distress (IIED) (against all

Defendants). (Filing No. 196 at 50-55). USI has filed a Motion to Dismiss Count III of John Doe's

("John") Second Amended Complaint (Filing No. 209), Defendants Dameion Doss ("Doss") and

Beth Devonshire's ("Devonshire") move to Dismiss Counts II and III of Plaintiff's Second

Amended Complaint (Filing No. 219), and Defendant D. Stafford & Associates' ("Stafford") move

to Join the Motions to Dismiss of USI, Doss, and Devonshire (Filing No. 248).

For the following reasons, the Motions are **granted.**

# I.   **BACKGROUND**

As required when reviewing a motion to dismiss, the Court construes the Second Amended Complaint in the light most favorable to John, accepts John's well-pleaded facts as true, and draws all reasonable inferences in John's favor. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013) (citing *Iqbal*, 556 U.S. at 678).

## A.   **Factual Background**

This case concerns a sexual assault allegation submitted by Jane Doe ("Jane") accusing John of a sexual assault that occurred on November 14, 2020 (Filing No. 196 ¶ 63, 64). USI found John responsible and imposed a suspension, which became final on September 22, 2021. *Id.* at ¶¶ 283, 286-288, 335. John initiated this action seeking relief from that determination of responsibility and from the disciplinary suspension. *Id.* at 56.   The fifty-seven-page Second Amended Complaint with attachments,[1] provides a plethora of facts relating to the alleged assault and investigation. This background section is not intended to provide a comprehensive explanation of all the facts of this case, rather, it discusses those relevant to the motions before the Court.

### 1.   **The Relevant Parties**

USI is an Indiana state public educational institution located in Evansville, Vanderburgh County, Indiana. *Id.* ¶ 2. As a public educational institution receiving federal financial assistance, USI is subject to Title IX of the Educational Amendments Act of 1972 ("Title IX"). *Id.* ¶ 4; (*see* Filing No. 196-1 at 1). Title IX prohibits USI from excluding or depriving a student from educational participation or benefits on the basis of sex discrimination. *Id.* ¶ 5. USI employed and contracted with several individuals and businesses for help providing services related to Title IX.

---

[1] Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim; these documents may be considered by a district court in ruling on the motion to dismiss without converting the motion into a motion for summary judgment. Fed.Rules Civ.Proc.Rules 10(c), 12(b)(6), 56, 28 U.S.C.A.

*Id.* ¶¶ 10, 19, 21, 26, 31, 36. That included Doss, who on January 1, 2021, was employed by USI as its deputy civil rights and Title IX coordinator. (Filing No. 196 at ¶ 26.)

On June 17, 2021, USI and Stafford entered into a written contract (the "Stafford Contract") whereby Stafford would provide interim Title IX coordinator services to USI. *Id.* ¶ 10. Under the Stafford Contract, Stafford was to perform services as an independent contractor in the manner of one who is recognized as a specialist in the types of services to be performed. *Id.* ¶ 14.

Under the Stafford Contract, Stafford provided services to USI and USI designated Devonshire as the interim Title IX coordinator under the Stafford Contract for USI. *Id*. at ¶ 15. As of July 1, 2021 Devonshire was employed by Stafford, *id*. at ¶ 18, and on July 5, 2021, USI appointed Devonshire as their interim Title IX Coordinator. *Id.* ¶ 19.

On July 21, 2021 USI also contracted with Grand River, a company which represented to USI that it had expertise in Title IX and the Regulations. *Id.* ¶¶ 34. Under the Grand River Contract, Grand River would provide three people to conduct the Title IX hearing involving John and Jane. *Id.* ¶¶ 35.

The three persons designated to conduct the hearing were Karen Nutter ("Nutter"), Kevin Lineberger, and Tera Johnson (collectively, the "Decision Makers") *Id.* ¶¶ 31, 32, 36. The Decision Makers would hear and reach a determination regarding the alleged sexual assault allegation. *Id.* ¶ 173. The Decision Makers were represented to be experts or "topshelf" on matters relating to Title IX and the regulations. *Id.* ¶¶ 20, 22, 29, 43. USI designated Nutter as the "Hearing Officer" of the Decision Makers. *Id.* ¶ 174. USI issued a Hearing Notice which stated:

> This administrative hearing is for Decision Makers to evaluate relevant evidence to determine whether or not the Respondent [John] is responsible for engaging in Sexual Harassment, as defined by the University's Sexual Harassment Policy.

*Id.* ¶ 176.

### 2.      The Sexual Assault Allegation

During the 2020-2021 school year, John and Jane were both freshman at USI. *Id.* ¶ 45. John and Jane communicated numerous times weekly and hung out together with mutual friends. *Id.* ¶¶ 47, 48. On November 14, 2020, Jane invited John over for a party. *Id.* ¶ 50. John then went to Jane's residence apartment. *Id.* ¶ 51. At one point in the evening, Jane began vomiting and ended up on the bathroom floor. *Id.* ¶ 52. John and Jane's roommate helped Jane get into her bed. *Id.* ¶ 54. After being in bed, Jane returned to the common area of the apartment where others were socializing, and at approximately 5:30 a.m., Jane went to a McDonald's restaurant with her roommates and others.  *Id.* at ¶¶55, 56.

After November 14, 2020, John and Jane continued to communicate numerous times each week and Jane visited John's residence hall apartment on at least one occasion. *Id.* ¶ 57, 58. They also communicated during the semester break. *Id.* ¶ 59. On February 11, 2021, while smoking marijuana, Jane had a panic attack and told her roommates that John had "fingered her" without her consent during the early morning of November 14, 2020. *Id.* ¶ 62. One of Jane's roommates called USI's Public Safety Office to report the sexual assault. *Id.* ¶ 63. On February 11, 2021, at approximately 8:30 p.m., a USI public safety officer and a Vanderburgh County Sheriff's Deputy interviewed Jane. *Id.* ¶ 64.

### 3.      The Sexual Harassment Policy

As of February 25, 2021, USI had a Sexual Harassment Policy (the "February Policy"). that defined Sexual Harassment as including sexual assault which was defined as:

> Sexual assault, meaning an offense classified as a forcible or nonforcible sex offense under the uniform crime reporting system of the Federal Bureau of Investigation (https://ucr.fbi.gov/nibrs/2012/resources/nibrs-offense-definitions);

*Id.* ¶ 87. The February Policy prohibited discrimination on the basis of sex, including Sexual Harassment (Filing No. 196-1 at 1). USI knew on March 1, 2021, that the Federal Bureau of Investigation (FBI)-National Incident-Based Reporting System's ("NIBRS") definition of forcible rape was "the carnal knowledge of a person, forcibly and/or against that person's will or not-forcibly or against the person's will in instances where the victim is incapable of giving consent because of his/her temporary or permanent mental or physical incapacity." (Filing No. 196 ¶ 89).

The February Policy also outlined the Formal Complaint Resolution Process. Following receipt of a Formal Complaint, USI was to provide Formal Notice to known parties of the Formal Complaint Resolution Process and the allegations against them (Filing No. 196-1 at 9). Following the filing of a Formal Complaint, USI would then begin an investigation to gather relevant evidence. *Id.* at 10. All relevant evidence would be summarized in an Investigative Report. *Id.* There would also be a live hearing before the decision makers. *Id.* Following the presentation of information at the hearing, the decision makers determine whether the respondent is responsible for Sexual Harassment. *Id.* at 11. If the decision makers determine that respondent is responsible for Sexual Harassment, they deliberate further to determine appropriate sanctions. *Id.* at 12. A written determination regarding responsibility is then provided to the parties simultaneously. *Id.* In Section IX of the February Policy, USI promised:

> The University's response to a Formal Complaint of Sexual Harassment will treat Complainants and Respondents equitably and provide a process in which the Title IX Coordinator, Investigator, Decision-Makers, Hearing Officer, Appellate Officer, and any facilitator of an Informal Resolution are free from conflicts of interest or bias against the Complainant or Respondent (or against complainants and respondents generally).

*Id.* at 8; (*accord* Filing No. 196 ¶ 360).

4.    **The Investigation**

After Jane reported sexual assault by John, USI began investigating. The public safety officer and Sheriff's Deputy each prepared a separate written report based on their interview with Jane (Filing No. 196 ¶ 65).  On February 16, 2021, Doss and USI's former Title IX coordinator met with Jane regarding the alleged sexual assault. *Id.* ¶ 80. A memorandum was prepared and maintained by USI regarding the conversation with Jane on February 16 (the "February 16 Memo"). *Id.* ¶ 81. On February 18, 2021, Doss and USI's former Title IX coordinator met with John and wrote a written memorandum regarding that conversation (the "February 18 Memo"). *Id.* ¶¶ 83, 84. On February 25, 2021, Jane submitted a written complaint by email to USI's Title IX Officer accusing John of sexual assault on November 14, 2020. *Id.* ¶ 85.

On February 25, 2021, Doss and USI employee, Dr. Shelly Blunt, met with Jane regarding the alleged sexual assault and prepared a memorandum (the "February 25 Memo"). *Id.* ¶¶ 90, 91. On March 21, 2021, Jane submitted two Title IX complaints against John; one referring to an incident that allegedly took place on October 4, 2020 (the "October Incident Complaint") and another incident that allegedly took place on November 8, 2020 (the "November 8 Complaint"). *Id.* ¶¶ 96, 98.  On March 26, 2021, USI sent a written letter to John notifying him that a formal complaint of sexual harassment had been filed against him by Jane (the "Notice"). *Id.* ¶ 100. The Notice stated:

> The following is a summary of the allegations of sexual harassment contained in the Complaint:
>
> > The Complainant, [Jane[]], states in her Complaint that the Respondent, [John] violated the University of Southern Indiana's Sexual Harassment Policy by committing Sexual Assault, defined as a forcible sex offense, that occurred on November 14, 2020, on the University's campus in [] Hall, Room [].

(the "Complaint Allegations"). *Id.* ¶ 101. A similar notice was sent to Jane on March 23, 2021. *Id.* ¶ 103.

Following the filing of the Formal Complaint, the Title IX Coordinator was to designate an Investigator to conduct a prompt, thorough, fair, and impartial investigation and prepare a written Investigative Report (Filing No. 196-1 at 10). USI designated attorney Demetrius Peterson (the "Investigator"). (Filing No. 196 ¶ 107). The Investigator had conversations with Jane and her roommates. *Id.* ¶¶ 149, 151. The Investigator also spoke with and received information from John. *Id.* ¶ 154. USI sent certain documents to the Investigator for purposes of the investigation but did not disclose the February 16 Memo, the February 18 Memo, the February 25 Memo, the March 18 Complaint, the October Incident Complaint, or the November 8 Complaint. *Id.* ¶¶ 109, 114. Doss also did not provide the memorandums or complaints to the Investigator. *Id.* ¶ 115.

Following the investigation, the Decision Makers received information in preparation for the hearing.

### 5.    <u>The Hearing</u>

A Title IX hearing on Jane's Formal Complaint was scheduled for August 4, 2021. *Id.* ¶ 216. The purpose of the hearing was for the Decision Makers to evaluate relevant evidence to determine whether or not John was responsible for engaging in Sexual Harassment (Filing No. 196-1 at 10-11). Prior to the hearing, Devonshire and Nutter discussed the Agenda and USI's Statement of Rights and Process for the Title IX hearing (Filing No. 196 ¶ 226). On August 2, 2021, Devonshire and Nutter sent an email to John and his advisor, copying Doss, and described rape and fondling as:

> • Rape (or attempts to commit same) The penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim.

• Fondling (or attempts to commit same) The touching of the private body parts of another person for the purpose of sexual gratification, without the consent of the victim, including instances where the victim is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental incapacity

*Id.* ¶ 231. USI modified and supplemented the definition of rape and forcible fondling as part of its sexual harassment policy on August 2, 2021. *Id.* ¶ 233. The definitions of rape or fondling as communicated to John on August 2, 2021, were not the definitions of rape or fondling as referenced by the February Policy. *Id.* ¶ 235. USI changed the allegations of sexual assault by Jane and the charges as to John immediately prior to the hearing. *Id.* ¶ 237.

On August 4, 2021, the Decision Makers conducted the Title IX hearing by Zoom. *Id.* ¶ 238. At the hearing, the Decision Makers allowed Jane to testify about statements from non-witnesses and repeatedly asked her questions concerning the statements made by non-witnesses. *Id.* ¶¶ 239, 244, 246, 247, and 248. Section 106.45(b)(6)(i) of the Title IX Regulations (the "Regulations") prohibited reliance on statements of non-witnesses who were not subjected to cross-examination at a Title IX hearing. *Id.* ¶ 240. USI and its Decision Makers also used a suggestive questioning process for Jane. *Id.* ¶ 263. The questioning and allowance of testimony was contrary to the February Policy and the Regulations. *Id.* ¶ 250. After the hearing, Nutter and Devonshire spoke about the deliberations and their decision making. *Id.* ¶ 280.

### 6.    The Decision

On August 25, 2021, USI, through its Decision Makers, issued the written determination, summary, and decision as to the allegations of the Formal Complaint. *Id.* ¶ 283. The decision stated:

### Hearing Overview: Allegations of Title IX Sexual Harassment

This hearing was conducted to determine whether [John], ("Respondent") engaged in prohibited conduct in violation of the University of Southern Indiana's Sexual Harassment Policy by committing Sexual Assault, defined as a forcible sex offense, that occurred on November 14, 2020 on the University's campus in . . . Specifically,

[Jane] alleged that while in her residence hall room, Respondent kissed her, touched her breast, and digitally penetrated her vagina without her consent.

As stated in the July 26, 2021 Hearing Notice, these allegations, if substantiated, would be a violation of one or more of the following:

Sexual harassment under Title IX (20 U.S.C. §§ 1681-1688), Title IX Regulations (34 C.F.R. part 106), and

Specifically, Sexual Harassment:

3. Sexual assault, meaning an offense classified as a forcible or nonforcible sex offense under the uniform crime reporting system of the Federal Bureau of Investigation (https://ucr.fbi.gov/nibrs/2012/resources/nibrs-offense-definitions). Specific language concerning these definitions can be found here: https://www.usi.edu/sexual-assault-prevention-and-response/sexual-harassmentreltated-polices-procedures/sexual-violenceassault/.

Of relevance to these allegations:

- The forcible sex offense of Rape is defined as "the penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim."
- The forcible sex offense of Fondling is defined as "the touching of the private body parts of another person for the purpose of sexual gratification, forcibly and/or against that person's will or not forcibly or against the person's will in instances where the victim is incapable of giving consent because of his/her youth or because of his/her temporary or permanent mental or physical incapacity."

*Id.* ¶ 286. The decision concluded:

Considering the totality of the evidence in the record, the Decision Makers find that [Jane's] account is more credible than [John's]. Because [Jane's] account is more credible than [John's], the Decision Makers further find that it is more likely than not that in the early morning hours of November 14, 2020, [John] touched [Jane's] breasts and vagina, and digitally penetrated her, without her consent. Because it is more likely than not that he engaged in these actions, the Decision Makers find that [John] violated University policy against Sexual Harassment, specifically Rape and Forcible Fondling.

*Id.* ¶ 287. USI imposed the following sanctions: (1) suspension, effective fall semester 2021 and eligible to return spring semester 2023; and (2) Title IX Sexual Harassment education following return from suspension. *Id.* ¶ 288.

**B.      Procedural Background**

On September 4, 2021, John filed his original Complaint in state court (Filing No. 1-1). The original Complaint alleged several claims against USI only: (1) violation of Title IX, erroneous outcome; (2) violation of Title IX, deliberate indifference; (3) violation of due process under the Fourteenth Amendment; (4) violation of equal protection under the Fourteenth Amendment; (5) breach of contract, specific performance; (6) judicial review of USI's appeal decision; (7) preliminary and permanent injunction; and (8) temporary restraining order. *Id.* USI removed the case to federal court on September 29, 2021 (Filing No. 1).

On October 18, 2021, John filed an Amended Complaint against USI only, which reduced his claims to three: (1) violation of Title IX; (2) preliminary and permanent injunction; and (3) attorneys' fees (Filing No. 27). The Court heard oral argument on December 17, 2021, on John's motion for preliminary injunction (Filing No. 105), which it denied on May 10, 2022 (Filing No. 133). John appealed to the United States Court of Appeals for the Seventh Circuit and on August 30, 2022 the district court's denial of a preliminary injunction was affirmed. (Filing No. 158).

On April 24, 2023, John filed the operative Second Amended Complaint against USI and added Defendants Doss, Devonshire, Stafford, Nutter and Grand River. (Filing No. 196). The Second Amended Complaint asserts three claims: Count I: Violation of Title IX (against USI only); Count II: Claims under 42 U.S.C. § 1983 (against all Defendants); and Count III: Intentional Infliction of Emotional Distress (IIED) (against all Defendants). *Id*. at 50-55. USI seeks dismissal of Count III (Filing No. 209), Doss and Devonshire seek dismissal of Counts II and III (Filing No.

219), and Stafford seeks Join the Motions to Dismiss filed by USI, Doss, and Devonshire (Filing No. 248).)

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009). The allegations must "give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

## III.   <u>DISCUSSION</u>

USI seeks dismissal of Count III: Intentional Infliction of Emotional Distress, asserting the Second Amended Complaint "does not allege facts that, if presumed to be true, are plausible on

their face to show (i) that Plaintiff overcame the bar of the Indiana Tort Claims Act ("ITCA") by meeting the ITCA's statutory notice requirement or (ii) that USI engaged in intentional infliction of emotional distress."  (Filing No. 209.)  Doss and Devonshire seek dismissal of Count II, a Section 1983 claim, asserting the Second Amended Complaint does not show a deprivation of a protected property or liberty interest, and Count III, alleging intentional infliction of emotional distress is barred by the ITCA (Filing No. 219).  Stafford moved to join in the motions to dismiss filed by Doss and Devonshire, as well as USI's motion (Filing No. 247). The Court will first address Stafford's Motion to Join and then proceed to the claims specified in each motion to dismiss.

A.   **Stafford's Motion to Join the Motions to Dismiss of USI, Doss, and Devonshire (Filing No. 248)**

Allowing one party to join another party's motion is well within the district court's substantial case management discretion. *United Staes ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 956 (8th Cir. 2017). Stafford seeks to join the motions to dismiss filed by USI, Doss and Devonshire; and John does not oppose. Accordingly, Stafford's Motion to Join the Motions' to Dismiss is **granted**.

B.   **USI's Motion to Dismiss (Filing No. 209)**

USI asks the Court to dismiss Count III: Intentional Infliction of Emotional Distress, because the Second Amended Complaint does not allege facts that are plausible on their face to show that John met the ITCA statutory notice requirement or that USI engaged in IIED (Filing No. 209 at 1). John responds that he is not required to plead the filing of a tort claim notice, and sufficient facts are alleged to establish a viable claim for intentional infliction of emotional distress. (Filing No. 228).

### 1.  <u>John has not met the Indiana Tort Claims Act Notice Requirements</u>

All Indiana tort claims are subject to ITCA's procedural requirements. *Brown v. Alexander*, 876 N.E.2d 376, 383 (Ind. Ct. App. 2007). Compliance with ITCA procedural requirements, while fact-sensitive, is a question of law. *Alexander v. City of South Bend*, 256 F.Supp.2d 865, 876 (N.D. Ind. 2003). The ITCA provides that a tort claim against a political subdivision is barred unless notice is filed with the governing body of that political subdivision within one hundred eighty (180) days after the loss occurs. Ind. Code § 34-13-3-8(a). This notice requirement also applies when the party sued is an individual employee of the political subdivision. *VanValkenburg v. Warner*, 602 N.E.2d 1046, 1048 (Ind. Ct. App. 1992). The purpose of the notice requirement under the ITCA is to provide the political subdivision the opportunity to investigate the facts surrounding an accident so that it may determine its liability and prepare a defense. *Porter v. Fort Wayne Cmty. Sch.*, 743 N.E.2d 341, 344 (Ind. Ct. App. 2001).

A plaintiff must prove compliance with the ITCA notice requirement before trial and when a plaintiff fails to give the required notice, the defendant has an affirmative defense of noncompliance. *Brown*, 876 N.E.2d at 383. A defendant is required to raise the affirmative defense of noncompliance in a responsive pleading to the plaintiff's complaint. *Id.* at 383-84. Once the defendant raises failure to comply with ITCA's notice requirements as an affirmative defense, the burden shifts to the plaintiff to prove compliance. *Id.* If plaintiff does not respond to defendant's arguments with evidence of compliance, the claim should be dismissed. *See Gibson v. Carrington*, No. 1:20-cv-02812-SEB-DLP, 2021 WL 1667036 at *2 (S.D. Ind. 2021).

In *Gibson*, this court held plaintiff's inability to show compliance with ITCA's notice requirement after defendants raised the issue in their motion to dismiss warranted dismissal:

> Here, Mr. Gibson's complaint includes no allegations to plausibly suggest that he
> has complied with the requirements of the Indiana Tort Claims Act and he has not

come forth with any evidence of compliance in response to Defendants' motion to dismiss. Because Mr. Gibson has failed to comply with the notice requirements of the Indiana Tort Claims Act, he is therefore barred from pursuing a state law excessive force claim. Accordingly, Defendants' motion to dismiss Count 1 of Mr. Gibson's complaint is <u>GRANTED</u>.

*Id. See also Fowler v. Brewer*, 733 N.E.2d 858, 865 (Ind. Ct. App. 2002) (finding the knowledge of claimant's injury, and even an opportunity to investigate, is insufficient to satisfy the notice requirement).

Though John is correct that he was not required to plead facts showing he filed a notice of his IIED tort claim with USI in his Second Amended Complaint, once USI raised the issue as an affirmative defense, he was required to provide evidence of notice in his response. *Compare Taleyarkhan v. Purdue Univ.*, 837 F.Supp.2d 965, 968 (N.D. Ill. 2011) ("[C]omplaints need not anticipate an attempt to plead around defenses…Plaintiff's silence on the ITCA in his complaint is not dispositive.") (internal quotations and citations omitted), *with Irwin Mortg. Corp. v. Marion Cnty. Treasurer*, 816 N.E.2d 439, 445, 447 (Ind. Ct. App. 2004) (holding ITCA notice requirements barred state law claims because once defendants raised non-compliance as an affirmative defense plaintiff "failed to demonstrate substantial compliance with the statute.").

Here, John's Second Amended Complaint includes no allegations to plausibly suggest that he has complied with the requirements of the ITCA. Instead, he argues that, in state court practice, the lack of a tort claim notice is an affirmative defense that does not place any burden on Plaintiff for purposes of Rule 12(b)(6) analysis. As noted by USI, this court does not adhere to that interpretation. *In Gibson v. Carrington*, No. 1:20-cv02812-SEB-DLP, 2021 U.S. Dist. LEXIS 81287, at *6 (S.D. Ind. Apr. 28, 2021), this court required the plaintiff, in response to a Rule 12(b)(6) motion challenging the complaint's failure to allege compliance with the ITCA's tort

claim notice requirement, to allege proof of compliance with that notice requirement at the pleading stage.

USI properly raised the affirmative defense of noncompliance in their Motion to Dismiss and John failed to present any evidence showing compliance in response to USI's Motion. Instead of referring to possible attempts of compliance with ITCA's notice requirements, John's response in opposition simply provides three paragraphs of argument explaining why he was not obligated to plead the filing of a statutory claim notice (*see* Filing No. 288 at 2-3). John has failed to comply with the notice requirements of ITCA and is therefore barred from pursuing an IIED claim against USI. Accordingly, USI's motion to dismiss Count III of Plaintiff's Second Amended Complaint is **granted**.

**2. <u>John has not shown that USI engaged in Intentional Infliction of Emotional Distress</u>**

Even if John had properly alleged compliance with ITCA's notice requirements, his IIED claim would fail because he has not sufficiently alleged facts to support his claim in Count III. USI argues persuasively that the Second Amended Complaint's conclusory allegations reciting the elements of an IIED claim are insufficient to survive a motion to dismiss. USI argues "[t]he Second Amended Complaint does not describe conduct that is "beyond all possible bounds of decency" and "[t]he IIED tort is reserved for truly rare circumstances, not for John's disagreement with how USI carried out its federally mandated Title IX obligations regarding Jane's report against John and the resulting responsibility decision." (Filing No. 210 at 8.)  In response, John contends that the Second Amended Complaint alleges sufficient facts to establish a viable claim for IIED.

To establish a claim for IIED, a plaintiff must plead that a defendant: "(1) engaged in extreme and outrageous conduct, (2) which intentionally or recklessly, (3) caused, (4) severe emotional distress to another." *Rihm v. Hancock Cnty. Libr.*, 954 F. Supp. 2d 840, 858 (S.D. Ind.

2013).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6)".  *Lekens v. Swifty Farms, Inc.*, No. 4:20-cv-00228-SEB-DML, 2021 WL 3401255, at *2 (S.D. Ind. Aug. 4, 2021) (citing *Iqbal*, 556 U.S. at 678).

"The requirements to prove [IIED] are 'rigorous.'" *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). For a defendant's conduct to be extreme or outrageous, it is not sufficient that "defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."
*Lekens*, 2021 WL 3401255, at *6. Liability can only be found when a defendant's conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lachenman v. Stice*, 838 N.E.2d 451, 456-57 (Ind. Ct. App. 2005). If a complaint fails to contain sufficient factual allegations that the defendant intended to emotionally harm the plaintiff, the complaint may be dismissed for failure to state a claim upon which relief can be granted. *See Tucker v. Roman Catholic Diocese of Lafayette-In-Indiana*, 837 N.E.2d 596, 603 (Ind. Ct. App. 2005).

Seventh Circuit precedent has not addressed whether the mishandling of a Title IX investigation gives rise to a claim for IIED. In such an absence, the Court considers helpful the District Court for the Eastern District of Pennsylvania's decision in *Doe v. The Trustees of the Univ. of Pa.*, 270 F. Supp. 3d 799, 826-27 (E.D. Pa. 2017). That case involved a student's challenging of disciplinary proceedings that resulted in him being found in violation of the university's sexual violence policy. *Id.* at 827. Defendants argued the complaint did not allege extreme or outrageous

conduct sufficient to support a claim for IIED. *Id.* The student maintained that the complaint stated a claim for IIED because it "allege[d] that University officials distorted the facts of Plaintiff's and Jane's encounter, improperly attacked Plaintiff's credibility, unjustifiably branded Plaintiff a rapist, threatened Plaintiff with expulsion when expulsion was not justified, and ultimately imposed an unfair sanction." *Id.* The court held that such conduct, even if objectionable, was not the type of "desperate and ultra extreme conduct" that is "beyond all possible bounds of human decency" such that it gives rise to an IIED claim. *Id.*; *see also Fellheimer v. Middlebury Coll.*, 869 F.Supp. 238, 247 (D. Vt. 1994) ("A College's decision, when confronted with a female student's accusation of rape, to confront the male student with the charges, hold a hearing, and support the findings of the initial tribunal on appeal, even where various procedural errors are alleged, cannot form the basis of an IIED claim.").

The Court agrees with USI that John has not alleged any facts that, if assumed to be true, would plausibly show that USI acted with an intent to inflict emotional harm. *See George v. Republic, U.S. Dist.* LEXIS 50124, at *14-15 (plaintiff "pled no facts supporting an inference that Republic Airways acted intentionally in causing her any emotional harms" and plaintiff "failed to identify any conduct of Republic Airways that qualifies as 'extreme and outrageous,' 'exceed[ing] all bounds' tolerated by civilized society.").

For these reasons, dismissal of Count III as to USI is warranted.

**C.    Doss and Devonshires' Motion to Dismiss (Filing No. 219)**

Doss and Devonshire request dismissal of Count II and Count III of the Second Amended Complaint. They argue Count II fails to allege facts showing a deprivation of a protected property or liberty interest by them. (Filing No. 220 at 1-2). They also argue that Count III is barred by the ITCA and fails to state a claim for IIED.

### 1.  Count II: Section 1983 Claim

Count II alleges a claim pursuant to 42 U.S.C. § 1983 against Doss and Devonshire for deprivation of John's protected interests without procedural due process (Filing No. 196 ¶¶ 420-30). In particular, John alleges that "Defendants Doss and Devonshire oversaw these deprivations of due process and expressly ratified them as officials responsible for Title IX adjudications at USI." *Id*. at ¶ 428.  The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. "To demonstrate a procedural due process violation of a [protected] right, the plaintiff must establish that there is (1) a cognizable [protected] interest; (2) deprivation of that [protected] interest; and (3) a denial of due process." *Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 607 (7th Cir. 2014). Doss and Devonshire argue the Second Amended Complaint fails to allege facts that plausibly show either a protected interest or deprivation by Doss or Devonshire (Filing No. 220 at 5).

### a.  Protected Property Interest

A plaintiff must identify a protected property interest at stake in their complaint. This circuit has held that a student does not have a stand-alone property interest in education at a state university. *See Bissessur*, 581 F.3d at 601; *Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008). Instead, the student must show that he has a "*legally protected entitlement* to his continued education at the university." *Charleston v. Bd. of Trustees of Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013) (emphasis in original). In the context of higher education, "any property interest is a matter of contract between the student and the university." *Doe v. Purdue Univ.*, 928 F.3d 652, 660 (7th Cir. 2019). Therefore, "a student [must] establish that an implied contract existed between himself and the university that entitled the student to a specific right, such as the right to a

continuing education or the right not to be suspended without good cause." *Bissessur*, 581 F.3d at 601.

Contracts between universities and students may come from a variety of sources. *Gociman v. Loyola Univ. Chi.*, 41 F.4th 873, 883 (7th Cir. 2022). Such sources include catalogues, bulletins, circulars, and regulations of the institution. *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992). Such sources must point to an "identifiable contractual promise that the [university] failed to honor." *Bissessur*, 581 F.3d at 602. In *Charleston*, where the plaintiff alleged a protected property interest based on the Student Disciplinary Policy and University Statutes, the Seventh Circuit held that those allegations were insufficient to state a claim for a violation of the plaintiff's federally protected due process rights because there is no "federal constitutional right to a *state-mandated process*." *Charleston*, 741 F.3d at 773 (emphasis added).

Conversely, in *Shannon v. Bd. of Trustees of Univ. of Ill.*, a basketball player sought a preliminary injunction after he was accused of sexual assault, and the university suspended him from sports, arguing written and implied contracts entitled him to procedural safeguards. No. 24-cv-2010, 2024 WL 218103 at *11 (C.D. Ill. Jan. 19, 2024). The court found the basketball player sufficiently alleged that the written and implied contracts entitled him to procedural safeguards because the Division of Intercollegiate Athletics policy explicitly stated that all sports suspensions would be done in compliance with all applicable University policies and procedures, which when read sensibly, included the OSCR policy which outlined the University's regulations for handling allegations of student sexual misconduct. *Id.*

Like the plaintiff in *Charleston*, John alleges he had a legally protected entitlement to his continued education at the university through the existence of an implied contract with USI. (*See* Filing No. 196 ¶ 420) ("Plaintiff had a property interest in his education as a result of the

relationship existing between him and USI, in which he had a reasonable expectation that he would not be treated unlawfully by USI or in violation of its procedures."). However, it is not enough for a complaint to merely state that an implied contract existed. *Bissessur*, 581 F.3d at 603. A complaint must be specific about the promises the university made to the student, and the promises the student made in return. *Id.* at 603-04.

John argues the Second Amended Complaint sufficiently alleged the "exact promises [USI] made to [Plaintiff]" and "the promises that [Plaintiff] made in return." (Filing No. 269 at 4). The Complaint alleges the following promises:

> 366. USI represented to and promised Plaintiff that he would not be sanctioned or suspended for a violation of the February Policy without good cause and through a process that was fair, impartial, thorough, equitable and in accordance with the process, procedure, and rights outlined in the February Policy and the Regulations.

> 367. USI granted Plaintiff specific rights in the February Policy which afforded him a right to a continuing education absent a process in accordance therewith which resulted in a determination and sanction with good cause.

> 368. The February Policy granted Plaintiff specific rights which USI took from him and which wrongfully deprived him of educational benefits and opportunities and property interests.

(Filing No. 196 ¶¶ 366-368).

In essence, John claims that USI agreed to conduct a Title IX grievance policy in accordance with the February Policy. While the Second Amended Complaint lists several alleged promises made by USI, it does not identify where those promises were made in the February Policy. The February Policy is a state-created university process and as the Seventh Circuit has held many times, a violation of state law is not a denial of due process. *See Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993); *Park v. Ind. Univ. Sch. of Dentistry*, 629 F.3d 828 (7th Cir. 2012); *Grant v. Trs. Of Ind. Univ.*, No. 1:13-cv-826-TWP-DML, 2016 WL 1222344, at *10 (granting summary judgment on procedural due process claim arguing "[plaintiff] was denied federally

protected due process rights because IUSB did not follow the procedures within the IU Handbook" because "the Seventh Circuit had repeatedly held that a state-created process does not confer federal due process rights.").

John argues the cases above are factually distinguishable because they involve purely state-created policies, unlike the February policy, which he asserts is required by federal law (*see* Filing No. 269 at 6). But John does not submit any case law to support this position. Although the February Policy may comply with Title IX requirements, it is unique to USI and provides a process for how USI specifically will handle sexual harassment; all universities are not required to follow the February Policy created by USI. John's alleged interest in USI's contractually-guaranteed university process is not protected by the federal Constitution.

### b.  **Protected Liberty Interest**

John also alleges Doss and Devonshire have deprived him of a protected liberty interest. The meaning of "liberty" is broad and includes the liberty to follow a trade, profession, or other calling. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972). To establish a liberty interest John must satisfy the "stigma-plus-test," showing that the state inflicted reputational harm was accompanied by an alteration in legal status that deprived him of a right he previously held. *See Doe v. Purdue*, 928 F.3d at 661 (citations omitted).

In *Doe v. Purdue*, the Seventh Circuit held the plaintiff adequately alleged deprivation of a protected liberty interest in the freedom to pursue his occupation of choice when Purdue University suspended him for an academic year after finding him guilty of a sexual offense. 928 F.3d at 663. Doe was an active member of the Navy ROTC program and based on a finding of guilt he was expelled from the Navy ROTC program, his ROTC scholarship was terminated, and he was unable to pursue a career in the Navy. *Id.* at 661-63. The Seventh Circuit held the Purdue's decision to brand Doe as a sex offender inflicted reputational harm and the expulsion changed plaintiffs' legal

status from "full-time student in good standing to one suspended for an academic year." *Id.* Because Doe had an obligation to authorize Purdue to disclose the proceedings to the Navy, Purdue, not Doe, was responsible for the publication of the reputational harm. *See id.* at 662-63; *see Dupuy v. Samuels*, 397 F.3d 493, 510 (7th Cir. 2005) (finding the publication requirement of the stigma-plus test was satisfied when the plaintiffs were obligated to authorize a state agency to disclose its finding that they were child abusers to the plaintiffs' current and prospective employers because publication was compelled and certain).

However, in *Olivieri v. Rodriguez*, the Seventh Circuit held that a plaintiff who publicizes negative information about himself cannot establish that the defendant deprived him of a liberty interest. 122 F.3d 406, 408 (7th Cir. 1997).  In *Olivieri*, a probationary police officer asserted a procedural due process claim against his superintendent after he was terminated for sexually harassing female probationary officers.  *Id.* at 407.  The court noted that the "defendant [had not] disclosed to anyone the grounds of plaintiff's discharge."  *Id.* at 408.  The police officer then argued that because he would have to tell potential employers why he was terminated, him self-publishing the negative information was the same as if "the Department had taken out a full-page ad in every newspaper in the nation announcing [his] termination [ ] for sexually harassing female probationary officers at the Chicago police training academy."  *Id.*  The Court rejected the officer's argument because disclosure was voluntary and speculative; it was uncertain whether the officer's prospective employers would ever find out why he was discharged because they might not ask, or the police department may choose not to disclose why the officer was terminated. *Id.* at 408-09.

John argues that USI deprived him of two protected liberty interests: continuing his education and pursuing his occupation of choice (Filing No. 196 ¶ 422). The Court finds that the

Second Amended Complaint does not properly allege a deprivation of either alleged liberty interest.

### i.    The Second Amended Complaint does not allege a deprivation of a protected liberty interest in pursuing higher education

"The Supreme Court has assumed, *arguendo*, the existence of a liberty interest in pursuing higher education at a public university, and this Court will do so as well." *Despard v. Bd. of Trustees of Ind. Univ.*, No. 1:14-cv-1987-WTL-DML, 2015 WL 4946112, at *3 (S.D. Ind. Aug. 18, 2015); *see also Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82-85 (1978) (assuming the existence of a liberty interest in pursuing a medical career for the purpose of analyzing petitioner's due process claim).

Even if a liberty interest in continuing higher education at a public university exists, John has not satisfied the stigma plus test. As stated previously, the complaint must allege a change in legal status and state-inflicting reputational damage. John argues, and Doss and Devonshire do not dispute, that the Second Amended Complaint properly alleges that John's three-semester suspension from USI constitutes a change in legal status. The problem arises because the Second Amended Complaint does not sufficiently allege state inflicted reputational harm.

John contends the Second Amended Complaint alleges state inflicted reputational harm because "*any* application to a different educational institution would require disclosure of the Title IX determination and discipline." (Filing No. 269 at 8) (emphasis in original). What the Second Amended Complaint alleges is that (1) John's educational records at USI will permanently reflect the Title IX determination and discipline, loss of good standing, and loss of scholarships (Filing No. 196 ¶ 355) and (2) John will be forced to disclose the sexual assault determination and sanctions when applying to the educational institution of his choosing (*Id.* ¶ 394). These allegations are insufficient to satisfy the publication requirement.

John relies on *Doe v. Purdue*, arguing that because USI is the custodian of his academic records, any publication of the Title IX determination would be made by them. *See Doe v. Purdue*, 928 F.3d at 662 (finding that disclosure is not self-published if plaintiff is obligated to authorize or share the disclosure). The Court agrees with John that *if* he were to apply to another educational institution, because he has an obligation to disclose the Title IX determination, USI, and not John, would be responsible for the publication of reputational harm. However, like in *Olivieri*, publication of reputational harm is merely speculative, not compelled and certain, because the Second Amended Complaint does not allege that John has applied, or has any intention of applying, to another institution. John's Title IX disciplinary action would only be publicized if he did in fact apply to another school. Absent any such application, no state-inflicted reputational harm related to continuing his education exists. Accordingly, the Second Amended Complaint fails to allege a deprivation of a protected liberty interest in continuing education by Doss or Devonshire.

### ii.     The Second Amended Complaint does not allege a deprivation of a liberty interest in pursuing the occupation of one's choice

John also argues that his Second Amended Complaint sufficiently alleges that his suspension threatens his liberty to pursue the occupation of his choice because he will not be hired anywhere that asks for his educational records or disciplinary information. (Filing No. 196 ¶ 396). The government infringes upon an individual's liberty interest to pursue the occupation of their choice when statements made by a state actor impugn "the individual's good name, reputation, honor, or integrity" or impose a "stigma or other disability on the individual which forecloses other opportunities." *Roth*, 408 U.S. at 573. The Fourteenth Amendment protects only the individual's liberty to pursue a particular occupation, however, and not the individual's right to any one job. *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001). Thus, for the purposes of an occupational

liberty claim, defendants' actions must prevent the plaintiff from pursuing opportunities in their *chosen* profession. *Id.* at 670.

John's Second Amended Complaint, nor his opposition thereto, points to any alleged fact that demonstrate a loss in liberty to follow a *chosen* profession. Unlike in *Doe v. Purdue*, where plaintiff was deprived of his ability to pursue his occupation of choice—the Navy— John does not allege any occupation of choice. Without knowing John's particular occupation of choice, the Court cannot reasonably infer that employment opportunities would be foreclosed due to the Title IX determination. Accordingly, the Second Amended Complaint fails to adequately plead a deprivation of an occupational liberty against Doss and Devonshire, and they are entitled to dismissal of Count II.

### 2. <u>Count III: Intentional Infliction of Emotional Distress Claim</u>

Count III asserts a claim against Doss and Devonshire for IIED (Filing No. 196 ¶¶ 441-43). Doss and Devonshire argue they have statutory immunity, and ITCA bars Count III's tort claim against them and they cannot be held personally liable because the Second Amended Complaint does not plausibly allege any conduct outside their employment or agency with USI (Filing No. 220 at 13-15).

### a. <u>Immunity under ITCA</u>

Doss and Devonshire argue they have statutory immunity under the ITCA for their alleged conduct as USI employees. "The ITCA governs lawsuits brought against political subdivisions and their employees, and it provides substantial immunity for conduct within the scope of the employees' employment." *E.D. v. Noblesville Sch. Dist.*, No. 1:21-cv-03075-SEB-MPB, 2022 WL 4599119, at *13 (S.D. Ind. Sept. 30, 2022). For purposes of the ITCA, an "employee" is "a person presently or formerly acting on behalf of a governmental entity, whether temporarily or permanently or with or without compensation…" Ind. Code. § 34-6-2-38(a).

     **i.**      **<u>Doss is entitled to statutory immunity under the ITCA because</u> <u>as an USI employee he was acting within the scope of his</u> <u>employment</u>**

The Second Amended Complaint alleges that Doss was employed by USI as the Title IX Coordinator. Doss is therefore considered an employee under the ITCA. John does not dispute that Doss is an employee of USI or that a lawsuit alleging an employee acted within the scope of the employee's employment bars an action against the employee personally.

As stated previously, "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code. § 34-13-3-5(b); *see also Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the [ITCA], there is no remedy against the individual employee so long as he was acting within the scope of his employment."). "This means that a plaintiff cannot sue a government employee 'personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of employment.'" *E.D.*, 2022 WL 4599119, at *13. However, a plaintiff may bring an action against a government employee in his or her personal capacity if the employee acted outside the scope of his or her employment. Ind. Code § 34-13-3-5(b). The ITCA provides that:

> A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:
>
>     (1) criminal;
>     (2) clearly outside the scope of the employee's employment;
>     (3) malicious;
>     (4) willful and wanton; or
>     (5) calculated to benefit the employee personally.

The complaint must contain a reasonable factual basis supporting the allegations. Ind. Code § 34-13-3-5(c). "Where the plaintiff elects to sue the governmental employee in [his] original capacity, notice is required only if the act or omission causing the plaintiff's loss is within

the scope of the defendant's employment." *Bienz v. Bloom*, 674 N.E.2d 998, 1004 (Ind. Ct. App. 1996).

Doss and Devonshire argue Doss cannot be held liable because he was acting within the scope of his employment.  But John contends the Second Amended Complaint sufficiently pleads facts to show that Doss acted outside the scope of his USI employment and is personally liable. "[I]n order for an employee's act to fall 'within the scope of employment,' the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business." *Barnett v. Clark,* 889 N.E.2d 281, 283 (Ind.2008).  "[T]o be incidental ... [an act] must be one which is subordinate to or pertinent to an act which the servant is employed to perform." *Celebration Fireworks, Inc. v. Smith,* 727 N.E.2d 450, 453 (Ind.2000) (quoting Restatement (Second) Agency § 229 cmt. b (1958)).  Even tortious acts may fall within the scope of employment "if [the employee's] purpose was, to an appreciable extent, to further his employer's business." *Id.* (quoting *Kemezy v. Peters,* 622 N.E.2d 1296, 1298 (Ind.1993)).

Although the Second Amended Complaint implies that Doss might have been acting outside the scope of his employment, (*see* Filing No. 196 ¶ 440), the other facts alleged in the Second Amended Complaint do not support John's assertion that the ITCA does not apply.  "A plaintiff's complaint cannot merely allege wrongdoing in order to defeat the protections afforded under the ITCA but must assert a reasonable factual basis supporting any allegations of the aforementioned acts [under I.C. § 34-13-3-5]." *Perry v. Donahue*, 703 F.Supp.2d 839, 857 (N.D. Ind. 2010).  Thus, "the remainder of the facts pled in [the Second Amended Complaint] must support the allegation that [Doss] acted in a manner that was criminal, clearly outside the scope of the employee's employment, malicious, willful and wanton, or calculated to personally benefit the

27

Defendants." *Katz-Crank v. Haskett*, No. 1:13-cv-00159-TWP, 2015 WL 1268288, at *3 (S.D. Ind. Mar. 18, 2015).

In *Katz-Crank*, a plaintiff asserted a claim for IIED against investigators with the Indiana Secretary of State's Office and the Secretary of State in their individual capacities after she was arrested and charged with felony theft. *Id.* The amended complaint alleged that "investigators failed to consider exculpatory evidence and failed to testify "as to how the investigation proceeded or what evidence they discovered." *Id.* at *4. This Court held that these acts were considered "within the scope of employment" because they were performed in their roles as investigators in furtherance of the Secretary of State's mission which is to investigate and prosecute suspected violations of securities laws. *Id*. This Court also held that the Secretary of State was working within the scope of her employment, even if she did a poor job in the investigation, because the actions fell within the purpose and duties of the Secretary of State such as investigating and instituting criminal proceedings. *Id.* at *3.

John argues that Doss was acting outside the scope of his employment, but like in *Katz-Crank*, all the allegations in the Second Amended Complaint relate back to his duties as USI's deputy civil rights and Title IX Coordinator. The Second Amended Complaint alleges Doss knew of information relevant to the investigation and did not disclose such information to John contrary to his duties under USI's policy (Filing No. 196 ¶ 111-16, 189-90, 327-31, 346-51). The Second Amended Complaint also alleges that Doss "infected the Investigation, Hearing, and Appeal with bias against Plaintiff on the basis of sex." *Id.* ¶ 351. As noted in *Katz-Crank*, a poor job in an investigation does not support an argument that Doss was acting outside the scope of his employment. *See* 2015 WL 1268288, at *3. The Second Amended Complaint explicitly alleges that "Doss was acting as alleged herein to further USI's interests and within the course and scope

of his employment with USI." ([Filing No. 196](#) ¶ 438).  The allegation that "[t]o the extent any individual Defendant's actions as alleged herein were not committed within the course and scope of their employment or agency, said individual Defendant is personally liable", *id.* ¶ 440, is conclusory and no facts in the Second Amended Complaint give rise to support that allegation.

The Court concludes that, based upon the factual allegations in the Second Amended Complaint, John has not sufficiently alleged that Doss was acting outside the scope of his employment, and John has not alleged that Doss was acting with malice, willfully and wantonly, or for his personal benefit.  The ITCA does apply to the Count III claim against Doss, which accordingly is barred by statutory immunity.[2]  Doss and Devonshire' motion to dismiss Count III of the Second Amended Complaint as to Doss is **granted**.

### ii.  Devonshire is not entitled to statutory immunity under the ITCA because she is an independent contractor

John argues that Devonshire is not an employee with USI but instead an independent contractor.  Indiana Code § 34-6-2-38(b) excludes both "an independent contractor" and "an agent or employee of an independent contractor" from the term "employee" under the ITCA.  In *Jacks*, the court found that a school bus driver was an independent contractor under the General Assembly's statutory scheme regarding school transportation. *Jacks by Jacks v. Tipton Cmty. Sch. Corp.*, 94 N.E.3d 712, 717 (Ind. Ct. App. 2018).  The school bus driver was an independent contractor because the driver had a "transportation contract" in which "the school bus driver promise[d] to provide, in addition to driving services, a school bus, school bus chassis, or school bus body" instead of an "employment contract" in which the school provided all the necessary

---

[2] John's failure to comply with the notice requirements of ITCA would also bar him from pursuing an IIED claim against Doss.  As stated previously, Section III(B)(1) *supra*, once a defendant raises failure to comply with the ITCA's notice requirements as an affirmative defense, the burden shifts to the plaintiff to prove compliance.  John would have been required to timely submit a tort claim notice to proceed with the IIED claim against Doss in this case. But because John's Second Amended Complaint is insufficient under Rule 12(b)(6), this issue is moot.  In light of its conclusion, the Court need not address whether John, as a matter of law, has properly pled an IIED claim against Doss.

equipment and employed the driver in the same manner as other noninstructional personnel employed by the school.  *Id.*

The Second Amended Complaint alleges that "Devonshire was employed by Stafford" and "Stafford was to perform services as an *independent contractor* in the manner of one who is recognized as a specialist in the types of services to be performed" ([Filing No. 196](#) ¶¶ 14, 18) (emphasis added). "USI, *through Stafford*, appointed Devonshire as USI's interim Title IX Coordinator." *Id.* ¶ 19 (emphasis added).  As interim Title IX Coordinator, Devonshire provided services to USI.  *Id.* ¶ 21.  Doss and Devonshire contend that the Second Amended Complaint only alleges Stafford to be an independent contractor. The Court notes that the Second Amended Complaint only *explicitly* alleges Stafford to be an independent contractor but when drawing all inferences in favor of John, as required at this stage, the Second Amended Complaint also alleges that Devonshire was an independent contractor to USI as well.  Devonshire is not afforded statutory immunity under the ITCA.[3]

### b.  <u>Claim for IIED</u>

John argues that the Second Amended Complaint asserts a plausible IIED claim against Devonshire.  Doss and Devonshire adopt USI's Brief in Support of its Motion to Dismiss Count III ([Filing No. 209](#); [Filing No. 210](#)), asserting that the Second Amended Complaint fails to allege specific facts that allow the Court to draw the reasonable inference that USI (or Devonshire) is liable for IIED.  Doss and Devonshire argue the Second Amended Complaint's process-related allegations do not rise to the requisite level of outrageousness to support a claim for IIED.  The Second Amended Complaint alleges, through multiple averments, that Defendants knew of the

---

[3] Since Devonshire is not covered by the John was not required to provide notice under the ITCA. *See* Ind. Code. § 34-13-3-8; *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999) ("The notice requirements of the ITCA apply [ ] to suits against political subdivisions but also to suits against employees of political subdivisions.").

mandatory Title IX policy and regulations but intentionally disregarded such policies/regulations by not disclosing relevant and exonerating information and allowing a determination against John and the discipline to be imposed upon him (*see generally* Filing No. 196). Doss and Devonshire's contention is correct that John's allegations do not rise to the level of extreme and outrageous conduct needed to support a claim for IIED under Indiana law.

The Second Amended Complaint also fails to sufficiently allege that Defendants intended to emotionally harm John. The insufficient averment that "Defendants engaged in extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress to Plaintiff", (Filing No. 196 ¶ 441), is a threadbare recital of the elements of an IIED claim that is unsupported by the other statements in the Second Amended Complaint. Even if Defendants knew of concerns that John was suicidal, reached out regarding his emotional and psychological well-being and yet still proceeded with a mandated Title IX investigation, it is still insufficient to allege an intent to cause emotional distress. *See id.* ¶¶ 391-92. The Second Amended Complaint fails to state a claim for IIED against Devonshire.[4] Doss and Devonshire's motion to dismiss Count III of the Second Amended Complaint as to Devonshire is **granted**.

### D.   <u>Stafford's Motion to Dismiss (Filing No. 248)</u>

Stafford joins in Doss and Devonshire's Motion to Dismiss "in its entirety." (Filing No. 248 at 1). Therefore, Stafford is seeking dismissal of both Count II and Count III.

#### 1.   <u>Count II: Section 1983 Claim</u>

Stafford joins in Doss and Devonshire's Motion to Dismiss "in its entirety". However, in his response, John clarifies that Count II did not assert a claim against Stafford which "asserts § 1983 claims against the individual Defendants" only. (Filing No. 269 at 2.) In their reply, Stafford

---

[4] The Court further notes that the Second Amended Complaint has not plausibly alleged claims for IIED against USI, Doss, or Stafford, either.

withdrew any arguments concerning Count II (Filing No. 272).  Accordingly, Stafford's motion as to Count II is **denied as moot**.

### 2.  <u>Count III: IIED Claim</u>

Count III asserts a claim against Stafford for IIED (Filing No. 196 ¶¶ 434, 441-443). Stafford joined USI's motion "in its entirety" and therefore argues the claim is barred by the ITCA and that the Second Amended Complaint does not plausibly allege facts to state a claim for IIED.

#### a.  <u>Stafford is not entitled to statutory immunity under the ITCA</u>

John argues that Stafford is not entitled to statutory immunity under the ITCA because they are not a governmental entity in Indiana.  As stated previously, an independent contractor is excluded from the term "employee" under the ITCA.  Ind. Code § 34-6-2-38(b).  The Second Amended Complaint clearly alleges that Stafford is an independent contractor (Filing No. 196 ¶ 14).  The Second Amended Complaint also alleges that under the Stafford Contract, Stafford provided services to USI, submitted invoices to USI, and designated Devonshire as the interim Title IX coordinator.  *Id.* ¶ 15.  Stafford is not a governmental entity but an independent contractor who is not afforded statutory immunity under the ITCA.  Since the ITCA does not apply to Stafford ITCA notice was not required either.

#### b.  <u>The Second Amended Complaint does not plausibly plead a claim against Stafford for IIED</u>

John argues that Stafford is vicariously liable "for the acts of Devonshire relating to the matters alleged [in the Second Amended Complaint] which were committed within the course and scope of her employment with Stafford" under the doctrine of *respondeat superior* (Filing No. 196 ¶ 434).

"Under the doctrine of respondeat superior, an employer, who is not liable because of its own acts, can be held liable 'for the wrongful acts of his employee which are committed within the

scope of employment.'" *Robbins v. Trustees of Ind. Univ.*, 45 N.E.3d 1, 8 (Ind. Ct. App. 2015) *citing Doe v. Lafayette Sch. Corp.*, 846 N.E.2d 691, 701 (Ind. Ct. App. 2006). An employee is acting within the scope of their employment when their actions, at least in part, further the interests of their employer. *Id*. at 8. Devonshire's actions were consistent with the work she was hired to do as an employee of Stafford and as interim Title IX coordinator for USI under the Stafford contract.

However, an employer can only be held liable for the *wrongful* acts of their employee. As stated in Section III(C)(2)(b) *supra*, the Second Amended Complaint failed to state a claim for IIED against Devonshire. The alleged actions Devonshire took did not rise to the level of extreme and outrageous conduct needed to survive a motion to dismiss. Because John has failed to properly allege a cause of action for IIED against Devonshire he fails to allege a cause of action for IIED against Stafford. Stafford's motion to dismiss Count III of the Second Amended Complaint is therefore **granted**.

## IV.   <u>CONCLUSION</u>

For the reasons discussed above, USI's Motion to Dismiss Count III of the Second Amended Complaint (Filing No. 209) is **GRANTED**, Doss and Devonshire's Motion to Dismiss Counts II and III of the Second Amended Complaint (Filing No. 219) is **GRANTED**, and Stafford's Motion to Join the Motions of USI, Doss, and Devonshire (Filing No. 248) is **GRANTED**. Stafford's request for Dismissal is **denied as moot** as to Count II and granted as to Count III. Doss, Devonshire, and Stafford are all **dismissed** from the suit.

The Motion of Defendants USI, Devonshire, and Doss for Summary Judgment (Filing No. 314) is **DENIED as moot** as to Defendants Devonshire and Doss, as they have been **dismissed** as Defendants in this suit. Defendant D. Stafford & Associates' Fed. R. Civ. P. 56 Motion for

Summary Judgment (Filing No. 319) is **DENIED as moot** as Stafford has been **dismissed** as a Defendant in this suit. Plaintiff's Cross-Motion for Summary Judgment as to Liability on Plaintiff's Second Amended Complaint as to all Defendants (Filing No. 329) is **DENIED as moot** as to Defendants Devonshire and Doss on Counts II and III, and Stafford & Associates as to Count III, and USI as to Count III, **as these claims against these Defendants have been dismissed**.

The claims remaining are Count I against USI, Count II against Nutter; and Count III against Grand River and Nutter. The Court will issue rulings on the pending summary judgment motions in short order.

The **clerk is directed** to terminate Dameion Doss, Beth Devonshire, and D. Stafford & Associates. The **clerk is also directed** to leave motions 314 and 329 pending as not all issues are resolved.

To avoid the possibility of piecemeal appeals, no partial final judgments will issue at this time.

**SO ORDERED.**

Date:  3/25/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Keith W. Vonderahe
ZIEMER STAYMAN WEITZEL & SHOULDERS
kvonderahe@zsws.com

Matthew Stephen Koressel
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
mkoressel@zsws.com

Robert L. Burkart
ZIEMER STAYMAN WEITZEL & SHOULDERS
rburkart@zsws.com

Joseph Heavrin Harrison, III
STUART & BRANIGIN
jhh@stuartlaw.com

William P. Kealey
STUART & BRANIGIN LLP
wpk@stuartlaw.com

John R. McInerney
jmcinerney@sanchezdh.com

Timothy V. Hoffman
SANCHEZ DANIELS & HOFFMAN LLP
thoffman@sanchezdh.com

D. Craig Lamb
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
craig.lamb@wilsonelser.com

Edward M. O'Brien
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
edward.obrien@wilsonelser.com