UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:21-cv-00144-TWP-CSW |
| | ) |
| UNIVERSITY OF SOUTHERN INDIANA, | ) |
| KAREN NUTTER, | ) |
| GRAND RIVER SOLUTIONS, INC., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON PLAINTIFF'S MOTION TO COMPEL**

This matter is before the Court on Plaintiff's *Motion to Compel and for Sanctions as to Defendant University of Southern Indiana*. (Dkt. 352); (Dkt. 353) (Brief in Support); (Dkt. 354) (Additional Exhibits). Defendant USI filed a *Response in Opposition*.[1] (Dkt. 370). Plaintiff filed a *Reply in Support*. (Dkt. 375). Specifically, Plaintiff seeks the Court's assistance with seven (7) separate requests:

(1) order the production of the Policy information contained on USI's Clean Catalog software system;
(2) order Defendant to produce additional documents related to Jane Doe's Maxient Report;
(3) order Defendant to produce documents related to an "update" regarding the Title IX policy given to USI employees;
(4) order Defendant to produce certain documents on their privilege log;
(5) order Defendant to pay Plaintiff's attorneys' fees incurred relative to the Aaron Trump 30(b)(6) depositions and preparing the *Motion*;
(6) order several facts conclusively established for the rest of the case; and
(7) preclude Defendant from presenting testimony from certain witnesses on 30(b)(6) Topics 1, 2, 3, 4, 14, 15, and 17.

(Dkt. 352).

For the reasons set forth below, the *Motion* is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] There are other named defendants; however, for the purposes of this Order and clarity: "Defendant" refers to University of Southern Indiana ("USI") unless otherwise stated.

## I. BACKGROUND

To provide context for the Court's ruling on the pending motion, the Court briefly summarizes the current allegations as well as the relevant procedural history. Nothing set forth herein constitutes findings of the Court; rather, this limited background is intended to provide context for the issues presented by the parties in the present motion.

On February 25, 2021, Jane Doe made a complaint to USI alleging Plaintiff John Doe sexually assaulted her on November 14, 2020. Defendant USI conducted an investigation. When USI's Title IX Coordinator Carrie Lynn ended her employment, USI contracted with Defendant D. Stafford & Associates to provide an Interim Title IX Coordinator. Defendant Beth Devonshire was the Interim Title IX Coordinator provided through D. Stafford & Associates, and Defendant Dameion Doss was a Deputy Title IX Coordinator already employed by USI. USI also contracted with Defendant Grand River Solutions, Inc. ("GRS") to provide neutral decision makers at the Title IX hearing. Defendant Karen Nutter was the senior hearing officer provided by GRS.

The university held the Title IX hearing on August 4, 2021. "In the jargon of Title IX, the committee found by a preponderance of evidence that [Plaintiff] was 'responsible' for committing sexual assault" on August 25, 2021. *Doe v. Univ. of S. Ind.*, 43 F.4th 784 (7th Cir. 2022) (denying Plaintiff's request for a preliminary injunction). On September 1, 2021, Plaintiff Doe appealed the decision of the hearing panel. The Appeal Officer issued a decision affirming the hearing panel's finding on September 22, 2021.

Plaintiff complains of anti-male bias throughout the investigation and hearing, and alleges due process violations surrounding changes made to USI's sexual assault policy.

Plaintiff originally filed a lawsuit against USI on September 24, 2021, in Vanderburgh Circuit Court, and USI removed the case to this Court on September 29, 2021. (Dkt. 1). Plaintiff sought a preliminary injunction, which was denied by

this Court on May 10, 2022. Plaintiff appealed this denial to the Seventh Circuit, which affirmed the decision on August 8, 2022. The non-expert discovery deadline was October 12, 2023. (Dkt. 223). Trial is currently set for September 9, 2024, and a final pretrial conference is set for August 14, 2024. (Dkt. 257).

On March 25, 2024, the Court issued an Order on the motions to dismiss of USI, Doss, Devonshire, and D. Stafford and Associates. (Dkt. 379). The order terminated Doss, Devonshire, and D. Stafford & Associates as parties to this case.

Fully briefed and still pending before the Court are Motions for Summary Judgment. (Dkt. 314) (USI, Doss, and Devonshire MSJ); (Dkt. 317) (GRS and Nutter MSJ); (Dkt. 329) (Plaintiff Cross-MSJ).

## II. Legal Standards

There are multiple legal standards applicable to the present disputes. The Court addresses each of them in turn.

### A. Discovery, generally

Fed. R. Civ. P. ("Rule") 26(b)(1) discusses the scope of discoverable information, generally. Specifically, Rule 26(b)(1) provides that the information must be (1) nonprivileged; (2) relevant; and (3) proportional. Information does *not* need to be admissible in evidence in order to be discoverable. Fed. R. Civ. P. 26(b)(1).

Federal Rule of Evidence ("FRE") 401 informs that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" *and* "the fact is of consequence in determining the action." A party faces "a significant obstacle in arguing that evidence should be barred because it is not relevant, given that the Supreme Court has stated that there is a 'low threshold' for establishing that evidence is relevant." *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012) (citing *Tennard v. Dretke*, 542 U.S. 274, 285 (2004)).

Fed. R. Civ. P. 37(a)(3)(B) authorizes a party to file a motion to compel when an opposing party fails to disclose, answer, or respond to a discovery request. Fed. R. Civ. P. 37(a)(4) instructs that "an evasive or incomplete disclosure, answer, or

response must be treated as a failure to disclose, answer or respond" for purposes of Rule 37(a).

### B. TIMELINESS

"While Rule 37 does not place a time limit on filing a motion to compel, court have recognized that such motions must be timely when viewed in light of the procedural posture of the case. . . . As a general rule, motions to compel filed after the close of discovery are almost always deemed untimely." *Dixon v. Jefferson Capital Systems, LLC*, 1:19-cv-02457-JMS-DML ([Dkt. 180 at 22](#)), 2021 WL 59084731 (S.D. Ind. Dec. 14, 2021) (citing *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001).

### C. PROTECTIONS FROM DISCLOSURE

Even with the low threshold standard for relevance, courts recognize several mechanisms—known as privileges—which a party may invoke to protect itself from the obligation to disclose otherwise discoverable and relevant information. Here, there are three separate potential protections at play: (1) the work-product doctrine; (2) the attorney-client privilege; and (3) waiver of privilege.

#### 1. THE WORK-PRODUCT DOCTRINE

The work-product doctrine is a federally recognized protection, grounded in the Federal Rules of Civil Procedure, Rule 26(b)(3), and explicitly recognized in Fed. R. Evid. 502(g)(2). Specifically, Rule 26(b)(3) protects material "prepared in anticipation of litigation or for trial by or for a[] party or its representative."

This Court has previously stated that a party invoking the work-product doctrine "must demonstrate that the materials . . . were prepared in anticipation of litigation." *Long v. Anderson*, 204 F.R.D. 129, 136 (S.D. Ind. 2001).

In *Binks*, our Circuit established the point in time at which a document is prepared in anticipation of litigation. *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109 (7th Cir. 1983). Specifically, "while litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Binks*, 709 F.2d at 1119 (*quoting Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982)). However,

"[t]he mere fact that litigation does eventually ensue" is insufficient to invoke the work-product doctrine. *Binks*, 709 F.2d at 1118. Rather, "the party seeking to assert the work product privilege has the burden of proving that at the very least some articulable claim, likely to lead to litigation, has arisen." *Id.* at 1119 (internal quotation omitted).

To overcome the protection afforded by the work-product privilege, a party must show: (1) the materials are otherwise discoverable under Rule 26(b)(1); and (2) it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3).

### 2. THE ATTORNEY-CLIENT PRIVILEGE

"The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. S. Berwyn Sch. Dist.*, 600 F.3d 612, 618 (7th Cir. 2010) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394-99 (1981). "[A]s a general matter, the attorney-client privilege will not shield from disclosure statements made by a client to his or her attorney in the presence of a third party who is *not* an agent of either the client or attorney." *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997).

### 3. WAIVER OF PRIVILEGE

Federal Rule of Evidence 502 provides the legal standard concerning waiver in a federal proceeding. Specifically, FRE 502 requires as a threshold matter that "disclosure is made in a federal proceeding. . . [which] waives the attorney-client privilege or work product protection." Fed. R. Evid. 502. Once such a disclosure is made, a party may move to compel other undisclosed information "only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communication or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502.

### D. SANCTIONS, SPECIFICALLY UNDER 37(B)

The Seventh Circuit has stated a party "lays the predicate for Rule 37(b) sanctions by filing a motion under Rule 37(a) seeking 'an order compelling disclosure or discovery.' *Only if* (and to the extent) the court grants that order, and then the person subject to the order fails to comply with it, may the party seeking discovery move on to Rule 37(b)." *Evans v. Griffin*, 932 F.3d 1043, 1046 (7th Cir. 2019) (internal citations omitted) (emphasis added).

### III. DISCUSSION

Discovery disputes abound in this litigation. The parties appeared for their most recent discovery conferences on September 28, 2023; October 26, 2023; and November 17, 2023. (Dkt. 290); (Dkt. 309); (Dkt. 325). The instant Motion to Compel was not filed until January 22, 2024—over two months after the last discovery conference, and well past the October 12, 2023, discovery deadline. (Dkt. 353); (Dkt. 223). "[M]otions to compel filed after the close of discovery are almost always deemed untimely." *Dixon*, 1:19-cv-02457-JMS-DML (Dkt. 180 at 22). Putting aside the issue of timeliness, the Court addresses each of the items in turn.

### A. THE CLEAN CATALOG INFORMATION AND MAXIENT REPORT DOCUMENTS

Plaintiff insists Defendant is withholding information related to Clean Catalog (a software tool USI uses for content management) and Jane Doe's report submitted through the Maxient system. (Dkt. 353 at 8-12).

Defendant "unequivocally states [] that it does not have additional responsive 'Clean Catalog' documents." (Dkt. 370 at 18). Additionally, Defendant states: "USI has no additional documents responsive to" the RFPs related to the Maxient report. (Dkt. 370 at 21).

The three requirements to discover information under 26(b)(1) are that the information sought is (1) nonprivileged; (2) relevant; and (3) proportional.

Defendant does not assert any privilege to the Clean Catalog information, but instead insists USI has already produced all responsive documents. (Dkt. 370 at

18). Plaintiff asserts the Clean Catalog is relevant and points to a spreadsheet of revisions produced by USI (the "Spreadsheet") in support of its demand for production. (Dkt. 353 at 7). Defendant also does not assert privilege as to the Maxient report. (Dkt. 370 at 21).

The relevance that must be shown is not that of the Spreadsheet or Maxient report themselves, but rather the underlying or collateral documents Plaintiff now seeks. Here, Plaintiff seeks underlying documents supporting the Spreadsheet and/or the Maxient report.

Yet, the Court is not convinced there are additional responsive documents which exist in Clean Catalog. The same is true of any documents related to the Maxient report. Indeed, Defendant has maintained that there are no additional documents.

The Plaintiff has also failed to show proportionality. Rule 26(b)(1) requires the information sought to be proportional to the needs of the case, considering the parties' access to relevant information, the importance the information in resolving the issues, and the weight of the burden compared to the likely benefit.

Plaintiff seeks hypothetical additional data associated with at least seventy-nine (79) policy changes, in addition to documents tangential to approximately fourteen (14) Bates numbered documents. (Dkt. 353 at 6); (Dkt. 370 at 21). Defendant has already produced over 13,000 pages, and Plaintiff has failed to demonstrate that further responsive information exists or how this hypothetical information would advance his case more so than the documents already produced. *See* (Dkt. 370 at 22-23). It would be quite burdensome indeed to attempt to produce something that does not exist. Defendant has stated unequivocally that additional documents do *not* exist. (Dkt. 370 at 18). Because Plaintiff has not convinced the Court additional documents related to Clean Catalog or the Maxient report are relevant or proportional—nor that they even exist—the Plaintiff's *Motion* as to these items is **DENIED**.

### B. THE TITLE IX PRESENTATION TO USI EMPLOYEES

Plaintiff also seeks "documents evidencing documents and/information provided to staff, faculty and administrators relating to the 'update' referenced in Bates No. USI 10787." (Dkt. 353 at 15); (Dkt. 330-10 at 18). Defendant has objected to producing these documents on the grounds that they are not relevant and further, that the request does not describe with particularity the documents sought. (Dkt. 370 at 21-22).

The objections are largely unpersuasive to the Court. True, "documents evidencing documents," is a somewhat incomprehensible turn of phrase. However, removing the language in the request reveals that Plaintiff still seeks "information provided to staff .. relating to the 'update' referenced in Bates No. USI 10787. As best as can be deciphered by the Court, Plaintiff seeks the documents related to a presentation given by Jennifer Hammat, USI's Dean of Students. The question of when and how Title IX policies were communicated to staff is relevant to Plaintiff's claims. Defendant does not assert privilege to these documents, and the burden of producing what seems to amount to a single PowerPoint slide deck has not been shown to be more than negligible.

Therefore, Plaintiff's request is **GRANTED** as to the presentation materials shown or distributed to other members of the USI faculty, administration, or staff related to the presentation discussed in Bates No. USI 10787.

### C. DEFENDANT'S PRIVILEGE LOG

Plaintiff challenges Defendant's assertion of privilege as to the "Withheld Emails." (Dkt. 353 at 15). Plaintiff contends Defendant should have identified which of the emails were responsive to which requests for productions. These arguments have been previously hashed out in discovery conferences. Now, however, Plaintiff also insists Defendant waived privilege to the emails in the summary judgment briefs by citing the deposition testimony discussing events around the time of the emails. Additionally, Plaintiff asserts the disclosure of certain emails waived the privilege as to all of the remaining emails. Defendant contends the emails which

have been withheld are privileged under the attorney-client privilege and work-product privilege, and that no waiver occurred under either circumstance.

### 1. WORK-PRODUCT DOCTRINE

Rule 26(b)(3) protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). Thus, the party invoking the doctrine "must demonstrate that the materials . . . were prepared in anticipation of litigation." *Long*, 204 F.R.D. at 136.

Defendant asserts the attorney-client privilege for all the challenged communications, and work-product doctrine for only some of them. No where in Defendant's brief, however, does the phrase "anticipation of litigation" appear. (Dkt. 370). Defendant claims the work-product doctrine protects against disclosure because "[l]itigation ensued a mere eight (8) weeks later when john filed suit."

However, the "mere fact that litigation actually ensue[d]," does not automatically justify a claim of the work-product doctrine, and Defendant has not shown they could point to "some articulable claim, likely to lead to litigation, [had] arisen.'" *Binks*, 709 F.2d at 1118-19. Therefore, the work-product doctrine is inapplicable to the challenged communications.

### 2. ATTORNEY-CLIENT PRIVILEGE AND WAIVER

Defendant also asserts the attorney-client privilege as a basis for withholding certain documents. Rather than challenge whether the communications are indeed privileged, Plaintiff argues that any such privilege was waived.

*Evans* noted that while disclosure to a third party ordinarily waives the attorney-client privilege, disclosure to an agent of the parties does *not* waive the privilege. 113 F.3d at 1462.

This Court previously ordered the production of documents from defendant GRS to Plaintiff, which GRS did not oppose. (Dkt. 347).[2] Defendant is correct that privilege applies "on a *document-by-document* basis," not a "same subject matter" basis. (Dkt. 370 at 29) (comparing *Long,* 204 F.R.D. at 134 with (Dkt. 353 at 20)). However, the question of waiver does involve analysis of whether the communications "concern the same subject matter." Fed. R. Evid. 502.

The test under FRE 502 is whether, "(1) the waiver is intentional; (2) the disclosed and undisclosed communication or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502.

Plaintiff argues for an expansive interpretation of this Court's prior order, stating "[t]he Court rejected USI's claim of privilege." (Dkt. 353 at 15, n. 6). This is incorrect. In fact, the Court did not analyze USI's assertion of attorney-client privilege with regard to those documents. (Dkt. 347). Instead, the Court considered the description of such documents as identified in the privilege log and the GRS defendants' position with regard to such documents. Therefore, there is no waiver or prior ruling that mandates disclosure of the now at-issue emails.

Additionally, while the emails may concern the same subject matter, Plaintiff has failed demonstrate that Defendant intentionally waived a claim of privilege or that the additional emails in fairness must be considered together. The request for Defendant to produce the "Withheld Emails" is **DENIED**.

D. ESTABLISHING FACTS AND PRECLUDING TESTIMONY

Plaintiff asks the Court to sanction Defendant in a very specific way – by deeming certain facts established as true and by precluding certain witnesses from testifying under Rule 37(b)(2). The Seventh Circuit makes clear no sanctions under

---

[2] Defendant USI questions whether the Court considered USI's response to Plaintiff's motion. (Dkt. 370 at 29) (citing (Dkt. 334)). When issuing rulings, the Court does not necessarily formally address every argument, case, or justification presented by the parties. The prior dispute was between Plaintiff and defendant GRS concerning documents also within USI's possession. The Court considered the arguments and found production to be the proper course of action in that instance.

Rule 37(b) are appropriate until an order is issued pursuant to Rule 37(a) and a party fails to comply with that order. *Evans*, 932 F.3d at 1046 (7th Cir. 2019).

Defendant has not failed to comply with an order issued under Rule 37(a). Therefore, the relief sought under Rule 37(b) is not appropriate, and Plaintiff's request for such relief is **DENIED**.

### E. ATTORNEY'S FEES

Federal Rules of Civil Procedure 26 and 37 provide that a prevailing party may be awarded expenses incurred in making or responding to a motion to compel or motion for a protective order. Fed. R. Civ. P. 26(c)(3); Fed. R. Civ. P. 37(a)(5). Payment will not be ordered if the losing party's actions were substantially justified, or if other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A), (B).

The Court finds the requisite criteria for awarding attorney's fees have not met by either party with regard to the matters at issue here. Therefore, the Court **DENIES** both parties' requests for attorney's fees.

## IV. Conclusion

The Plaintiff's *Motion to Compel and for Sanctions as to Defendant University of Southern Indiana.* ([Dkt. 352](#)) is **GRANTED IN PART** and **DENIED IN PART**. The following **ORDERS** are entered:

(1) Plaintiff's requests for the Clean Catalog information and Maxient report documents are **DENIED**.
(2) Plaintiff's request for documents related to the Title IX update presentation referenced in Bates No. 10787 is **GRANTED** as to any materials shown or distributed to members of the USI faculty, administration, or staff.
(3) Plaintiff's request for the production of documents identified in Defendant's privilege log is **DENIED**.
(4) Plaintiff's request for sanctions under Fed. R. Civ. P. 37(b) is **DENIED**.

(5) Both Plaintiff's request and Defendant's request for attorney's fees are **DENIED**.

**SO ORDERED.**

Crystal S. Wildeman
United States Magistrate Judge
Southern District of Indiana

**Date: April 4, 2024**

**Distributed electronically to all ECF-registered counsel of record.**