**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION**

| | | |
|---|---|---|
| JOHN DOE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 3:21-cv-144-TWP-CSW |
| | ) | |
| UNIVERSITY OF SOUTHERN | ) | |
| INDIANA, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**UNIVERSITY OF SOUTHERN INDIANA'S REPLY
TO PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE
<u>DISCLOSED OPINIONS OF SAUNDRA K. SCHUSTER</u>**

Defendant, University of Southern Indiana ("USI"), by counsel, replies to Plaintiff John Doe's response (ECF 395) (the "Opposition") to USI's Motion to Exclude Disclosed Opinions of Saundra K. Schuster (ECF 381).

**A. The Schuster opinions do not map up to the rule of decision stated by the Seventh Circuit for this case, the plain language of Department of Education guidance, or John's theory of relief.**

**1. The rule of decision in this case.**

The Opposition fails to show how Schuster's standard of care opinions speak to any fact relevant to intent to discriminate against men. This is an intentional gender discrimination case. John is not contending that USI was incompetent or negligent.

The jury in this case would not be tasked to evaluate USI's competency in the Title IX grievance process. The Seventh Circuit rejected the relevance of that argument long ago. "[A] plaintiff cannot prove gender discrimination by merely identifying mistakes or imperfections in the process." *Doe v. Univ. of S. Ind.*, 43 F.4th

1

784, 793 (7th Cir. 2022) (citing and quoting *Doe v. Samford University*, 29 F.4th 675,688 (11th Cir. 2022) ("A deviation from a Title IX policy is not, in and of itself, a violation of Title IX.")).

John admits that the Seventh Circuit opinion in this case requires him to show the factfinder "that the defendant deviated from proper procedures not because of human error but by design, to achieve covertly what it could not do openly: discriminate against the plaintiff on the basis of his sex." (ECF 395 p. 12 (quoting *Doe v. Univ. of S. Indiana*, 43 F.4th at 793). Nothing in this formulation turns on whether USI adheres to a consultant's opinion about what other schools do. Under the Seventh Circuit's formulation, "procedural irregularities" and "proper processes" are two sides of the same coin. A procedural irregularity is a departure from a "proper procedure". Thus, the threshold question for John's theory of relief is whether USI intentionally failed to comply with any "proper procedure" imposed by the plain language of Title IX regulations. It is irrelevant whether USI failed to adhere to the "industry standards" that Ms. Schuster advocates to her consulting clients.

## 2. What the Department of Education requires is a question of law on which Schuster's opinion cannot be considered by the jury.

The Opposition insists that "Title IX Regulations incorporat[e] best practices" (DE 395 p. 8). What practices are specified in "Title IX Regulations" is a question of law, not a question of what various schools do.

Ms. Schuster cannot opine on what the "Title IX Regulations" mandate because regulatory interpretation is a question of law, not "industry standards". *S.E.C. v.*

*Tourre*, 950 F.Supp.2d 666, 675 (S.D.N.Y. 2013) ("Expert testimony may not usurp the province of the judge to instruct on the law. . ..").

In one case cited in the Opposition, the court excluded one of Schuster's opinions for this very reason, "because [it] infringes on the role of the court to instruct the jury on what the law is". *Pogorzelska v. VanderCook Coll. of Music*, No. 19-cv-05683, 2023 U.S. Dist. LEXIS 97170, at *24 (N.D. Ill. June 5, 2023).

In another case cited in the Opposition, *Doe v. Coastal Carolina Univ.*, 4:18-cv-268-SAL, 2021 U.S. Dist. LEXIS 82292, (D.S.C. Mar. 8, 2021), the court invoked the same proposition. "Here, the ultimate issue is whether the University violated Title IX in its treatment of Plaintiff through its disciplinary process. Because expert testimony on this issue would supplant the jury's role in evaluating and determining the facts, Bullard may not testify as to whether the University violated Title IX." *Id*. at *9.

Schuster's opinions in this case fall on the wrong side of this limitation. She does not confine her opinions to description of practices, but instead repeatedly opines on the ultimate question of "USI's . . . compliance with Title IX":

- "There are several substantive issues that represent USI's failure to meet industry standards for **compliance with Title IX**."

- "There are several substantive issues that represent USI's failure to uphold Title IX industry standard practices. These failures collectively provide overwhelming evidence of a failure to meet industry standards for **Title IX compliance**." (*Id*. at p. 20).

- "Based upon a review of the documents provided to me by counsel as identified in Section V., within the context of my knowledge and experience in Title IX matters, I can state with a reasonable degree of professional certainty that there were multiple failures on the part of the University of Southern Indiana

to meet the industry standards for **Title IX compliance in the present case**."

(ECF 332-37 p. 13) (emphasis added). These opinions on ultimate facts are inadmissible intrusions on the Court's role to determine questions of law and the jury's role to decide whether USI has complied with the law.

### 3. The Opposition admits that the Department of Education requires "minimum steps" not industry standards. Schuster admits that it is not relevant whether a school's process is "the best possible".

The Opposition admits that, according to the Department of Education, its Title IX "Grievance process" regulations "set out the **<u>minimum steps</u>** that a school must take in response to notice of alleged sexual harassment." (ECF 395 p. 6) (emphasis added). None of the disclosed Schuster opinions refers to minimum steps.

Further, Schuster herself has rejected the relevance of "best practice" contentions. The opinion in *Pogorzelska v. VanderCook Coll. of Music*, *supra*, 2023 U.S. Dist. LEXIS 97170, quotes Schuster's opinion: "The question is not whether the particular process employed by the school was the best possible process, or even whether it was a good process". (*Id*. at *23).

John extensively quotes Department of Education statements that acknowledge a wide array of opinions about "best practices and regulations" that are all permissible (but not obligatory) from a wide array of sources, including not only the Department of Education itself but also "non-Department sources". (ECF 395 p. 6). Those quotations show that there is no obligation to adhere to an "industry standard". John does not cite a single passage in Title IX or a single case precedent

that uses the term "industry standard". Therefore, Schuster's opinions on "industry standards" are not relevant to the jury's task.

### 4. John's theory of relief alleges anti-male procedures, not below-standard procedures.

John's own theory of relief is not about "standards" at all. John alleges that "the entire disciplinary process was conducted in a manner that was permeated by bias against Plaintiff". (Second Am. Compl., at ¶ 404). John's Consolidated Summary Judgment Brief (ECF 342) promises to show the jury "a pattern of intentional covert misconduct by USI, Doss, Devonshire, and Nutter violating Title IX" and "the covert activities and intentional procedural irregularities of USI and its Title IX representatives to discriminate against John on the basis of his sex (ECF 342 pp. 45, 48).

This is not an allegation of incompetent or below-standard practices. It is an allegation that USI's process was engineered to guarantee that the male would lose. Schuster does not offer any opinions on whether any of USI's processes were engineered to make the male lose. Therefore, her opinions are plainly not relevant to John's conspiratorial theory of "covert activities", "intentional procedural irregularities", anti-male intent, and anti-male impact.

### B. John's all-or-nothing argument about Schuster, Devonshire, and Nutter is misconceived.

The Opposition contends that this Court cannot exclude Schuster's opinions if the door remains open for John's counsel to elicit opinions from Devonshire and Nutter, who each were named as Defendants in John's Second Amended Complaint.

The first problem with this argument is that it disrespects this Court's role as gatekeeper to spare the jury from listening to any disclosed expert opinion that is not relevant or reliable. Whether disclosed opinions of the retained expert Schuster are relevant or reliable does not hinge on whether any other witness's opinion is admissible under Rule 702.

Second, the Opposition mangles the concept of a "disclosed" expert opinion. The Opposition offers a laundry list of "Devonshire's disclosed Title IX expert opinions" and "Nutter's disclosed expert Title IX expert opinions". Plaintiff's counsel apparently believes that, via deposition cross-examination, he has elicited "expert" admissions from Devonshire and Nutter. (Tellingly, there is not a single citation to any testimony by either of them.) The plain language of Federal Rule of Civil Procedure 26(b)(2) shows that a witness's response to deposition cross-examination is not "disclosure" of an expert opinion. According to Rule 26(b)(2), the disclosure is by the party, not the witness: a "party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."

Third, there is no need for USI to bring a *Daubert* motion to exclude opinions that a current or former co-Defendant does not intend to offer. Neither Devonshire nor Nutter, nor any other Defendant, has designated Devonshire or Nutter as a "witness it may use at trial to present evidence under Federal Rule of Evidence 702".

Fourth, USI disagrees with John's contention that Devonshire and Nutter will offer any opinion that falls under Federal Rule of Evidence 702 and would show that USI "deviated from proper procedures not because of human error but by design, to

achieve covertly what it could not do openly: discriminate against the plaintiff on the basis of his sex." *Doe v. Univ. of S. Ind.*, *supra*.

Most fact-witnesses hold opinions. Some witnesses have relevant knowledge and experience. A cross-examination that tries to elicit such a fact-witness's views is, at most, a topic for motions *in limine*, not a *Daubert* motion. John does not cite any authority to show that such cross-examination is automatically admissible, if not challenged in a *Daubert* motion.

### C. Decisions on prior *Daubert* challenges to Schuster's opinions in deliberate indifference cases do not support the Opposition's arguments.

#### 1. John's theory of relief is "erroneous outcome" not "deliberate indifference".

John has not sued USI for failure to protect him from harassment. John admits that he has not alleged a deliberate-indifference theory of relief; rather, he has (in his words) "alleged intentional gender bias" in "a Title IX grievance process". (ECF 395 p. 17 n. 5). This admission demolishes the relevance of Schuster's opinions about "whether a school's actions were 'clearly unreasonable in light of the known circumstances" (ECF 332-37 at p. 13). John has not alleged that USI's actions were an unreasonable response to sexual harassment of him. He has alleged that USI's actions were designed to find him culpable of sexual assault. For purposes of evaluating the relevance of Schuster's opinions in *this case*, it does not matter what other courts say about Schuster's reasonable-response opinions in deliberate-indifference cases.

John's Title IX theory of relief in this case has been construed by this Court and the Seventh Circuit as an erroneous outcome claim, not a deliberate indifference claim. *See Doe v. Univ. of S. Ind.*, No. 3:21-cv-TWP-MPB, 2022 U.S. Dist. LEXIS 84079, \*11-12, 22-23 (S.D. Ind. May 10, 2022) and *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 799 (7th Cir. 2022).

> One category of Title IX claims attacking a university's disciplinary proceeding is the "**erroneous outcome**" claim, where "the plaintiff was innocent and wrongly found to have committed an offense." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). "A plaintiff alleging an '**erroneous outcome**' claim under Title IX must first 'allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the proceedings' and then also 'allege particular circumstances suggesting that gender bias was a motivating factor behind the **erroneous** finding.'" *Doe v. Purdue Univ.*, 281 F. Supp. 3d 754, 774 (N.D. Ind. 2017) (quoting *Yusuf*, 35 F.3d at 715).

*Doe v. Univ. of S. Ind.*, 2022 U.S. Dist. LEXIS 84079 at \*11-12 (emphasis added).

> At oral argument, John referenced a USI school newspaper article that accused USI of not taking allegations of sexual misconduct seriously and "allowing a rapist to run on campus." (Filing No. 109 at 18.) He argued that because of "public pressure", USI made him the sacrificial male lamb and intentionally withheld exculpatory evidence concerning credibility. *Id.* at 34. But John has produced no evidence to support his assertion that USI's **erroneous** decision was based on male gender bias. As noted in *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 954 (N.D.I.L. 2017), several courts have similarly rejected **erroneous outcome claims** based upon allegations of general anti-male bias resulting from public and government pressure. (internal citations omitted).

*Id.* at \*22-23 (emphasis added). *See also Doe v. Univ. of S. Ind.*, 43 F.4th at 799 (reviewing John's allegations in the context of a Title IX erroneous outcome claim).

The Seventh Circuit's decision never refers to a Title IX deliberate indifference claim.

## 2. Citations to *Daubert* challenges to Schuster's opinions in deliberate indifference cases are off point.

The *McGowan* case cited in the Opposition, which did not involve Schuster, was brought by nine former student athletes who suffered hip injuries while members of a women-only rowing team and alleged that the school violated Title IX by discriminating against female athletes in the way it allocated its funding and resources. *McGowan v. SMU*, 3:18-cv-00141-N, 2024 U.S. Dist. LEXIS 38037, \*2 (N.D. Tex. Mar. 4, 2024). That case did not involve Title IX's sexual misconduct grievance process and therefore fails to show that Schuster's industry-standard opinions are relevant to John's claim against USI.

The Opposition cites *Pogorzelska v. VanderCook Coll. of Music*, supra, and *Roohbakhsh v. Bd. of Trs. of the Neb. State Colleges*, 2019 U.S. Dist. LEXIS 190266, \*11 (D. Neb. Oct. 31, 2019) to argue relevance, but the Opposition also acknowledges that both cases concerned Title IX deliberate indifference claims. *See* (ECF 395 at p. 17, n. 5). Therefore, those cases do not show relevance of Schuster's opinion in this case.

**D. The Opposition does not show how Schuster's opinions are reliable.**

The burden of showing reliability is on John. However, the Opposition makes little effort to show how Schuster derived her opinions in this case, or why those derivations are reliable. The Opposition does not show the foundation or method for any of Schuster's opinions in this case. As a result, the Opposition defaults on Plaintiff's burden to show reliability. The Opposition tries to bootstrap a judicial opinion about a different Schuster opinion in a deliberate-indifference case, where the court stated: "Schuster's method of opining on the reasonableness of

9

VanderCook's response to Plaintiff's allegations based on her training and experience is a permissible methodology." (ECF 395 p. 14). Schuster's "method of opining" on "reasonableness . . . of response" is immaterial here because Schuster has not opined on USI's "reasonableness . . . of response".

The Opposition does not dispute that Schuster relies on rescinded federal guidance. (ECF 395 at pp. 19-20; ECF 381 at pp. 11-13). The Opposition does not dispute her misstatements of 34 CFR § 106.45. (*Id.* at pp. 1-22; *Id.* at pp. 12-13). The

This accumulation of gaps and defects compels the conclusion that Schuster's opinions are not the product of a reliable expert method.

### E. John's unprofessional allegation of misconduct and demand for attorney fees show disrespect for the task at hand.

John fails to cite any instance in the 31-history of *Daubert* motions in which a court has awarded attorney fees based on the inherent authority to sanction misconduct. As the proponent of the admissibility of the Schuster opinions, John alone has the burden of proof in the *Daubert* motion. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009); *Block v. Ethicon, Inc.*, No. 1:19-cv-04546-SEB-TAB, 2020 U.S. Dist. LEXIS 205148, at *3-4 (S.D. Ind. Nov. 2, 2020) ("The proponent of expert testimony bears the burden of establishing admissibility by a preponderance of the evidence."). Putting John to his proof is inherent in Rule 702, and USI has done nothing more than put John to the task that the law assigns him. The relevance and reliability defects in the Schuster's opinions are overt and must be addressed on the merits, not disparaged by ad hominem attacks on USI's good faith.

**Conclusion**

For the foregoing reasons and all the reasons cited in USI's Motion, the Court

should exclude Schuster's Report and opinions.

Dated: May 17, 2024                          Respectfully submitted,

                                             /s/ William P. Kealey
                                             William P. Kealey (Atty. No. 18973-79)
                                             Joseph H. Harrison III (Atty. No. 35248-53)
                                             STUART & BRANIGIN LLP
                                             300 Main Street, Suite 900
                                             P.O. Box 1010
                                             Lafayette, IN 47902-1010
                                             Telephone:  765-423-1561
                                             Facsimile: 765-742-8175
                                             Email: wpk@stuartlaw.com
                                                       jhh@stuartlaw.com
                                             *Attorneys for Defendant*
                                             *University of Southern Indiana*

11