UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:21-cv-00144-TWP-CSW |
| | ) |
| UNIVERSITY OF SOUTHERN INDIANA, | ) |
| KAREN NUTTER, | ) |
| GRAND RIVER SOLUTIONS, INC., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANT MOTION TO DISMISS PLAINTIFF'S TITLE IX INJUNCTIVE RELIEF CLAIM FOR LACK OF STANDING**

This matter is before the Court on Defendant University of Southern Indiana's ("USI") Motion to Dismiss Plaintiff's Title IX Injunctive Relief Claim for Lack of Standing pursuant to Federal Rule of Civil Procedure 12(b)(1). (Filing No. 404). Plaintiff John Doe's ("John") Second Amended Complaint asserts three claims: Count I: Violation of Title IX (against USI only); Count II: Claims under 42 U.S.C. § 1983 (against all individual Defendants); and Count III: Intentional Infliction of Emotional Distress (against all Defendants) (Filing No. 196 at 50-55). This Order concerns only USI's request to dismiss John's injunctive relief claim under Title IX. USI contends that John's Title IX injunctive relief claim does not meet the standing test for subject matter jurisdiction and John's prayer for relief is moot. For the following reasons, the Motion is **granted**.

**I.      BACKGROUND**

As required when reviewing a motion to dismiss, the Court construes the Second Amended Complaint in the light most favorable to John, accepts John's well-pleaded facts as true, and draws all reasonable inferences in John's favor. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013) (citing *Iqbal*, 556 U.S. at 678). The fifty-seven page Second Amended Complaint

with attachments,[1] provides a plethora of facts relating to the alleged assault and investigation. This background section is not intended to provide a comprehensive explanation of all the facts of this case, rather, it discusses those relevant to the motion before the Court.

A.  **Factual Background**

This case concerns a sexual assault allegation submitted by Jane Doe ("Jane") accusing John of sexual assault that occurred on November 14, 2020, while both Jane and John were students at USI ([Filing No. 196](Filing No. 196) ¶¶ 63, 64). USI is an Indiana state public educational institution. *Id.* ¶ 2. As a public educational institution receiving federal financial assistance, USI is subject to Title IX. *Id.* ¶ 4. Title IX prohibits USI from excluding or depriving a student from educational participation or benefits on the basis of sex discrimination. *Id.* ¶ 5.

USI contracted and employed several individuals and businesses for help providing services related to Title IX. *Id.* ¶¶ 10, 19, 21, 26, 31, 36. USI, along with the individuals they contracted and employed ("Decision Makers"), investigated the sexual assault allegation submitted by Jane. (*See generally id.* ¶¶ 80-282). On August 4, 2021, USI held a Title IX hearing by Zoom. *Id.* ¶ 238. On August 25, 2021, USI, through its Decision Makers, issued a written determination, summary, and decision as to the allegations made by Jane ("Decision"). *Id.* ¶ 283. The Decision stated:

> Considering the totality of the evidence in the record, the Decision Makers find that [Jane's] account is more credible than [John's]. Because [Jane's] account is more credible than [John's], the Decision Makers further find that it is more likely than not that in the early morning hours of November 14, 2020, [John] touched [Jane's] breasts and vagina, and digitally penetrated her, without her consent. Because it is more likely than not that he engaged in these actions, the Decision Makers find that [John] violated University policy against Sexual Harassment, specifically Rape and Forcible Fondling.

---

[1] Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim; these documents may be considered by a district court in ruling on the motion to dismiss without converting the motion into a motion for summary judgment. Fed. R. Civ. P. 10(c), 12(b)(6), 56, 28 U.S.C.A.

*Id.* ¶ 287.  USI imposed the following sanctions: (1) suspension, effective fall semester 2021 and eligible to return spring semester 2023; and (2) Title IX Sexual Harassment education following return from suspension ("Sanctions").  *Id.* ¶ 288.

On September 1, 2021, John submitted a written appeal of the Decision to USI.  *Id.* ¶ 317.  USI appointed an Indianapolis lawyer, Christopher Bayh of Barnes & Thornburg, to act as USI's appellate officer (the "Appeal Officer").  *Id.* ¶ 319.  On September 22, 2021, the Appeal Officer sent John a cover letter and his appeal decision denying his appeal and affirming the Decision and the Sanctions ("Appeal Decision").  *Id.* ¶ 335.

**B.      Procedural Background**

On September 4, 2021, John filed the original Complaint in state court (Filing No. 1-1). USI removed the case to federal court on September 29, 2021 (Filing No. 1). On October 18, 2021, John filed an Amended Complaint against USI only which included three claims: (1) violation of Title IX; (2) preliminary and permanent injunction; and (3) attorneys' fees (Filing No. 27).

On April 24, 2023, John filed the operative Second Amended Complaint against USI and added Defendants Dameion Doss ("Doss"), Beth Devonshire ("Devonshire"), D. Stafford & Associates ("Stafford"), Karen Nutter ("Nutter) and Grand River Solutions, Inc. ("Grand River") (Filing No. 196). The Second Amended Complaint asserts three claims: Count I: Violation of Title IX (against USI only); Count II: Claims under 42 U.S.C. § 1983 (against all Defendants); and Count III: Intentional Infliction of Emotional Distress (against all Defendants).  *Id.* at 50-55.  USI sought dismissal of Count III (Filing No. 209), Doss and Devonshire sought dismissal of Counts II and III (Filing No. 219), and Stafford sought to dismiss Counts I, II, and III (Filing No. 248).

On March 25, 2024, the Court granted USI's Motion to Dismiss Count III of the Second Amended Complaint, granted Doss and Devonshire's Motion to Dismiss Counts II and III of the

3

Second Amended Complaint, and granted Stafford's request to dismiss Count III ([Filing No. 379](#)). Doss, Devonshire, and Stafford have been terminated from this case. *Id.*

The claim remaining against USI is under Title IX. John seeks damages and "injunctive relief, including vacating and setting aside the Decision, Appeal Decision and Sanctions and expunging Plaintiff's educational records at USI" ([Filing No. 196 at 56](#)). John also prays for "an injunction (i) ordering USI to vacate the Decision, Appeal Decision, and Sanctions, (ii) ordering USI to vacate and end the suspension and any readmission requirement, (iii) ordering USI to expunge Plaintiff's educational records, (iv) ordering USI from making or maintaining any notation on Plaintiff's educational records relating to an investigation of Jane Doe's complaint, and (iv) ordering USI to take all actions necessary to show that Plaintiff did not lose good standing at USI" ([Filing No. 196](#) ¶ 413).

On May 6, 2024, USI filed a Motion to Dismiss John's Title IX Injunctive Relief Claim for Lack of Standing ([Filing No. 404](#)). John responded in opposition ([Filing No. 417](#)) and USI replied ([Filing No. 423](#)).

## II.   LEGAL STANDARD

A challenge to standing is properly brought under Rule 12(b)(1) for a lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

"The district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)

4

(citation omitted).  Furthermore, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Id.* (citation and quotation marks omitted).

### III. DISCUSSION

USI argues that dismissal of John's Title IX injunctive relief claim is appropriate because the Second Amended Complaint does not meet the standing test for subject matter jurisdiction (Filing No. 405 at 1).  John responds that USI advances the wrong standard, their motion is knowingly baseless, and that the Court should award him fees in responding to the same (Filing No. 417 at 2).  The Court will first address USI's Motion to Dismiss and then address John's request for fees.

**A.   USI's Motion to Dismiss**

Count I of the Second Amended Complaint asserts a claim against USI under Title IX which provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  John seeks an injunction:

> (i) ordering USI to vacate the Decision, Appeal Decision, and Sanctions, (ii) ordering USI to vacate and end the suspension and any readmission requirement, (iii) ordering USI to expunge Plaintiff's educational records, (iv) ordering USI from making or maintaining any notation on Plaintiff's educational records relating to an investigation of Jane's complaint, and (iv) ordering USI to take all actions necessary to show that John did not lose good standing at USI.

(Filing No. 196 ¶ 413).

USI argues that all forms of requested injunctive relief should be denied because John cannot meet the standing requirements as "[t]here is no ripe allegation of loss of Title IX

5

educational opportunity," "the grounds for suspension are moot," "USI's mere possession of archival documentation of [a Title IX determination] does not create any actual or imminent harm," and John's repeated disclosure of his USI disciplinary determination nullifies any redress Title IX injunctive relief could provide (Filing No. 405 at 2).

### 1.     Standing

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "A concrete injury is essential to standing: 'No concrete harm, no standing.'" *Ewing v. MED-1 Sols.*, LLC, 24 F.4th 1146, 1151 (7th Cir. 2022).

"A 'concrete' injury must be *'de facto'*; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). However, concrete is not necessarily synonymous with "tangible." *Id.* Although tangible injuries are easier to identify, intangible harms can also amount to concrete injuries. *Ewing*, 24 F.4th at 1151. The United States Supreme Court clarified in *TransUnion* that in a suit for injunctive relief, a risk of future harm can be concrete. *Id.* at 434-35. A party may pursue injunctive relief to prevent harm from occurring so long as the risk of harm is sufficiently imminent and substantial. *Id.* at 435; *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (noting that an "objectively reasonable likelihood" that an injury might occur is not enough to establish standing; the injury must be "certainly impending").

As a preliminary matter, the Court must address John's argument that USI has advanced the wrong standard (Filing No. 417 at 4). John argues for USI's motion to be summarily dismissed

because USI fails to advance the standard for "mootness" and has improperly placed the burden of proof on him. *Id*. John is correct that a party asserting mootness bears the burden to establish that a once-live case has become moot. *See W. Virginia v. EPA*, 597 U.S. 697, 719 (2022). However, USI is not arguing that the case is moot because a substantial amount of time has passed or because of some intervening circumstance but, rather, that John has not alleged a concrete injury (*see generally* Filing No. 405). *See also Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (The "confusion [between standing and mootness] is understandable, given [the Supreme Court's] repeated description of mootness as 'the doctrine of standing set in a time frame'").

USI argues that John does not have Article III standing to bring his claims for injunctive relief because he cannot allege an injury in fact, and any injury he alleges cannot be redressed by a favorable decision (*see* Filing No. 405 at 1-2). John alleges the following injuries in fact: (1) ongoing harm, including damages to his academic and personal reputation; (2) the loss of his education and educational related activities at USI; and (3) denial of the benefits of education and educational related activities at his chosen school (Filing No. 196 ¶ 411). The Court determines that summarily dismissing the motion is not appropriate, and thus, will discuss each alleged injury as it relates to each related claim for injunctive relief.

2.      **Injunctive Relief Claims**

John seeks injunctive relief in five different ways. "[A] plaintiff must demonstrate standing for each form of relief sought. A plaintiff may have standing to pursue damages but not injunctive relief, for example, depending on the circumstances." *Kenseth v. Dean Health Plan*, 722 F.3d 869, 890 (7th Cir. 2013). Thus, "[t]o have standing for prospective injunctive relief, a plaintiff must face a real and immediate threat of future injury as opposed to a threat that is merely conjectural

or hypothetical." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (internal quotation marks omitted).

      **a.**      **Ordering USI to vacate and end the suspension and any readmission requirement**

John seeks vacation of the suspension imposed by USI and of the conditions imposed for readmission. USI argues John's request for USI to vacate and end the suspension and any readmission requirement is moot because the suspension ended in 2023 and John has testified that "there's no way I could ever—I don't think I could ever step foot back on [ USI's] campus." (*See* Filing No. 341-11 at 254:16-18; *see also* Filing No. 405 at 6-8). In *Doe v. Purdue University* ("*Purdue 1*"), the Seventh Circuit found that because the original complaint did not allege that the plaintiff intended to re-enroll at Purdue – a necessary fact to demonstrate a cognizable injury from the barriers to re-entry, the plaintiff lacked standing to seek removal of the conditions of re-entry imposed by the school. 928 F.3d 652, 666 (7th Cir. 2019).

Similarly, here, John lacks standing. John's request for USI to end the suspension is moot because John was eligible to return spring semester 2023 (Filing No. 196 ¶ 288). John has not alleged that he intends to return to USI; in fact, he testified to the opposite. (*See* Filing No. 341-11 at 254:1-18; *see also* Filing No. 417 at 6). Because John has no intention of returning to USI he fails to demonstrate a cognizable injury from the barriers to re-entry. USI's request to dismiss John's claim for an injunction ordering the end of John's suspension subject to any readmission requirement is **granted**.

      **b.**      **Ordering USI to vacate the Decision, Appeal Decision, and Sanctions**

John also seeks an injunction ordering USI to vacate the Decision, Appeal Decision, and Sanctions. The Second Amended Complaint alleges that absent injunctive relief, the Decision, Appeal Decision, and Sanctions will make it unlikely for John to be able to continue his education

8

into graduate school with the determinations of sexual assault on his educational records (Filing No. 196 ¶ 429). Although it is true that a determination of sexual assault might make it harder for John to get accepted into a graduate program, John has not alleged any intent to apply to a graduate program.

The Supreme Court's decision in *Clapper* clarified that although a risk of future harm could be concrete for the purposes of injunctive relief, that risk of future harm must be imminent. *Clapper*, 568 U.S. at 398. In *Clapper*, the court discussed whether plaintiffs had standing to seek a permanent injunction against § 1881a authorized surveillance permitted by Section 702 of the Foreign Intelligence Surveillance Act of 1978. *Id.* Section 1881a provides that upon the issuance of an order from the Foreign Intelligence Surveillance Court, "the Attorney General and the Director of National Intelligence may authorize jointly, for a period of up to 1 year …, the targeting of persons reasonably believed to be located outside the United States to acquire foreign intelligence information." §1881a(a). Plaintiffs argued that they could establish injury-in-fact because there was an objectively reasonable likelihood that their communications with their foreign contacts would be acquired under § 1881a at some point in the future. *Id.* at 406. The court held that plaintiffs' theory of standing relied on a "highly attenuated chain of possibilities" (such as if the government would target communications to which plaintiffs were a party and if the government would use § 1881a-authorized surveillance to do so) that did not satisfy the requirement that the threatened injury must be certainly impending. *Id.* at 414.

There is an objectively reasonable likelihood that a graduate program would not accept John after disclosing that he was the defendant in a Title IX investigation and was determined to have committed sexual assault. However, this likelihood only exists *if* John completes the

9

graduation application process and *if* the graduate program asks for past disciplinary actions.[2] Like in *Clapper*, John's standing relies on a series of actions that have not been alleged. Without a present intent to apply to a graduate program, John's alleged injury is merely hypothetical and does not satisfy the requirement that the threatened injury is certainly impending. USI's request to dismiss John's claim for an injunction ordering USI to vacate the Decision, Appeal Decision, and Sanctions is **granted**.

        c.      **Ordering expungement of John's disciplinary record, ordering USI from making or maintaining any notation on Plaintiff's educational records relating to an investigation of Jane's complaint, and ordering USI to take all actions necessary to show John did not lose good standing**

Lastly, John seeks an injunction ordering USI to expunge his educational records as it pertains to the Title IX investigation and to take all actions necessary to show John did not lose good standing (Filing No. 196 ¶ 413). USI argues that John's request that USI not show his disciplinary history on his academic transcript is moot because there is no allegation or evidence that his disciplinary history appears on his academic transcript or ever will (Filing No. 405 at 5). Even if true, this fact does not render John's entire request for expungement of his disciplinary record moot. John's prayer for relief is not solely related to his academic transcript. The Second Amended Complaint sufficiently alleges that records of the Title IX disciplinary process exist, and John seeks expungement of those records (Filing No. 196 ¶¶ 355, 357).

John contends that the Seventh Circuit's *Purdue 1* is illustrative here. *See* 928 F.3d at 666. In *Purdue 1*, where the plaintiff requested an injunction ordering university officials to expunge the finding of guilt from his disciplinary record, the court held that "John's marred record is a

---

[2] The Court acknowledges John's argument that he started college applications and closed them to avoid having to report his sexual assault determination (*see* Filing No. 417 at 7 n.5). This action is not enough to establish standing. without submitting the college application, any harm that might result is hypothetical.

continuing harm for which he [could] seek redress." *Id.* However, there is a clear distinction between the plaintiff in *Purdue 1* and John. In *Purdue 1*, the plaintiff alleged in his complaint that he intended to pursue a career in the Navy and that a guilty finding on his disciplinary record prohibited him from doing so. *See id.* The Seventh Circuit considered this allegation to be sufficient as it pled a liberty interest as required by § 1983, and stated in its holding "if the guilty finding is expunged, a career in the Navy may once again be open to him." *Id.* The plaintiff in *Purdue 1* met the elements of Article III standing because he (1) suffered an injury – his inability to pursue a career in the Navy; (2) the injury was caused by the university when they put a guilty finding on his disciplinary record; and (3) his inability to join the Navy would likely be redressed by the university removing the guilty finding off his record. Additionally, the plaintiff's allegation sufficiently demonstrated risk of future harm was actual and imminent.

John, unlike the plaintiff in *Purdue 1*, cannot point to an injury-in-fact. John's response discusses the many ways the Court can provide effectual relief but fails to identify an injury that is concrete, particularized, and actual or imminent (*see generally* Filing No. 417). The question of whether or not actions taken by the court can redress an injury comes only *after* establishing that there has been an alleged injury. As the Court previously explained in its Order on Defendants' Motion to Dismiss, the Second Amended Complaint does not allege a deprivation of a liberty interest in pursuing the occupation of one's choice (Filing No. 379 at 24-25). Therefore, John's case varies from the plaintiff in *Purdue 1* on this basic fact. However, the Second Amended Complaint alleges John has been injured in other ways unrelated to a deprived occupational liberty.

John alleges that because of USI's actions, he is suffering on-going harm due to the loss of his education and educational related activities at USI (Filing No. 196 ¶ 411). The Second Amended Complaint further alleges that as a result of USI's gender bias and wrongful conduct he

is no longer a student in good standing at USI and has lost his USI academic and athletic scholarships. *Id.* ¶ 355. This injury John alleges is in the past and is not grounds for prospective injunctive relief. There is no threat of future loss to John's education at USI or loss to educational related activities at USI because the Second Amended Complaint does not allege that John intends to return to USI.

The Second Amended Complaint also alleges that USI has inflicted on-going harm, including damages to John's academic and personal reputation, by branding him as a rapist and sex offender (Filing No. 196 ¶¶ 361, 411). John argues that he has standing for "[c]learing one's name of a Title IX rape and forcible fondling and expunging the records thereof." (Filing No. 417 at 12.) Again, the relief John seeks is backward looking and not prospective in nature. The Second Amended Complaint alleges that harm to John's reputation began with social media posts accusing him of assaulting seven different female students, calling him a predator, and asking others to sign a petition (*see* Filing No. 196 ¶¶ 76-77). These social media posts began prior to the Title IX investigation initiated by USI (*id.* ¶¶ 70-73). This harm is insufficient to establish standing because based on the allegations in the Second Amended Complaint, the social media complaints and reputational harm cannot be attributed to USI. To establish standing an alleged injury must be caused by the defendants.

Lastly, the Second Amended Complaint alleges that USI has caused a denial of the benefits of education and educational related activities at John's chosen school, on the basis of its intentional sex discrimination. As stated above, for injunctive relief based on a prospective barrier to return to college, John must sufficiently allege that he intends to return to college. *See Purdue 1*, 928 F.3d at 666. The Second Amended Complaint does not allege that John is intending to apply to another college and therefore, any denial of educational opportunity is merely conjectural and

not imminent. Based on the allegations in the Second Amended Complaint, no other college will see John's USI records because he is not submitting applications for enrollment and therefore no injury is imminent. USI's request to dismiss John's claim for an injunction ordering the expungement of John's disciplinary record, ordering USI from making or maintaining any notation on John's educational records relating to an investigation of Jane's complaint, and ordering USI to take all actions necessary to show John did not lose good standing is **granted**.[3]

**B.      John's Request for Fees[4]**

John has moved for an award of attorney's fees arguing that USI acted in bad faith and has ignored its duty of candor to the Court (Filing No. 417 at 14). An award for attorney fees is appropriate when "the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Stive v. United States*, 366 F.3d 520, 521 (7th Cir. 2004). Such an award is inappropriate here. First, USI is not the "losing party" in this Order. Second, John has not demonstrated that USI's conduct satisfies this high standard.

John argues that USI has ignored its duty of candor to the Court because their motion cites and relies on several cases from the Northern District of Indiana. Specifically, John argues that USI advanced similar arguments to those put forth, and ruled against, in *Doe v. Purdue Univ.* ("*Purdue 2*"), No. 2:17-cv-33-JVB-APR, 2024 WL 1907046 (N.D. Ind. May 1, 2024). *Purdue 2* is an Order on a Motion to Dismiss Plaintiff's Title IX Injunctive Relief Claim. *Purdue 2* is the same case that was remanded at the pleading stage in *Purdue 1*.

---

[3] Because the Court has found that John fails to allege an injury-in-fact, the Court need not address USI's argument that John's extensive disclosure of his disciplinary history nullifies any possibility that expungement would redress a risk of harm (*see* Filing No. 405 at 10; Filing No. 417 at 11-12).

[4] The Court reminds John that all motions must be filed separately. Under Local Rule 7-1(a), "a motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court." Additionally, when requesting fees, the movant's attorney must file with the motion a statement showing that the attorney made reasonable efforts to confer with opposing counsel and resolve the matters raised in the motion. *See* S.D. Ind. L.R. 7-1(g)(1).

Under Rule 3.3(a)(2), an attorney "shall not knowingly … fail to disclose to the tribunal legal authority in the *controlling jurisdiction* known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." (Emphasis added.) Judicial opinions from the Northern District of Indiana are not controlling on the Court. Decisions from the Northern District of Indiana may be *persuasive* to the Court, but they do not bind the Court. The Court is bound by authority from the Seventh Circuit and the United States Supreme Court only.

To the extent John is also arguing that USI failed to disclose the holding in *Purdue 1* or *Purdue 2* to the Court, his argument fails for several reasons. First, *Purdue 1* is not directly adverse to USI's position. As described in detail above, the facts of this case and *Purdue 1* are materially different. Second, USI disclosed, and often times relied on, the ruling in *Purdue 1*. Throughout USI's briefing they introduce *Purdue 1* as authority that indirectly supports the arguments they make by way of comparison. Third, USI did bring to the Court's attention *Purdue 2*, albeit on a point that was immaterial to the Court's ruling (*see* [Filing No. 405 at 8](#)). Accordingly, John's request for fees in responding to USI's Motion to Dismiss is **denied**.

## IV.     CONCLUSION

For the reasons stated above, USI's Motion to Dismiss Plaintiff's Title IX Injunctive Relief Claim for Lack of Standing ([Filing No. 404](#)) is **GRANTED**. John's request for fees is **DENIED**. The claims remaining are Count I: Violation of Title IX against USI for damages only, Count II: Claims under 42 U.S.C. § 1983 against Nutter; and Count III: Intentional Infliction of Emotional Distress against Grand River and Nutter. The Court will issue rulings on the pending summary judgment motions in short order.

Because of the impending trial date, Defendant USI may file an expedited Answer to the Second Amended Complaint within seven (7) days of the date of this Order.

**SO ORDERED.**

Date: 7/23/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Keith W. Vonderahe
ZIEMER STAYMAN WEITZEL & SHOULDERS
kvonderahe@zsws.com

Matthew Stephen Koressel
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
mkoressel@zsws.com

Robert L. Burkart
ZIEMER STAYMAN WEITZEL & SHOULDERS
rburkart@zsws.com

William P. Kealey
STUART & BRANIGIN LLP
wpk@stuartlaw.com

Aj Bokeno
WILSON ELSER
aj.bokeno@wilsonelser.com

Edward M. O'Brien
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
edward.obrien@wilsonelser.com