UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:21-cv-00144-TWP-CSW |
| | ) |
| UNIVERSITY OF SOUTHERN INDIANA, | ) |
| KAREN NUTTER, | ) |
| GRAND RIVER SOLUTIONS, INC., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON PLAINTIFF'S MOTIONS TO SUPPLEMENT**

This matter is before the Court on Plaintiff John Doe's ("John") Motion to Supplement Summary Judgment Designation of Evidence and Filings (Filing No. 387), Second Motion to Supplement Summary Judgment Designation of Evidence and Filings with Judicial Admissions and Judicial Determinations (Filing No. 390), and Third Motion to Supplement Summary Judgment Designation of Evidence and Filings (Filing No. 418). For the following reasons, the motions are **denied**.

### I.  BACKGROUND

To provide context for the Court's ruling on the pending motions, the Court briefly summarizes the current allegations and the relevant procedural history. This background section is not intended to provide a comprehensive explanation of all the facts of this highly contested litigation, nor does anything set forth herein constitute findings of the Court.

**A.  Factual Background**

On February 25, 2021, Jane Doe ("Jane") made a complaint to the University of Southern Indiana ("USI") alleging that John had sexually assaulted her on November 14, 2020 (Filing No. 196 ¶¶ 63, 64, 85). At the time Jane made her complaint, USI's sexual harassment policy defined

sexual assault as: "[s]exual assault, meaning an offense classified as a forcible or nonforcible sex offense under the uniform crime reporting system of the Federal Bureau of Investigation. (https://ucr.fbi.gov/nibrs/2012/resources/nibrs-offense-definitions)." *Id.* ¶ 87.  USI knew on March 1, 2021, that the FBI's National Incident-Based Reporting System's definition of forcible rape was "the carnal knowledge of a person, forcibly and/or against that person's will or not-forcibly or against the person's will in instances where the victim is incapable of giving consent because of his/her temporary or permanent mental or physical incapacity." *Id.* ¶ 89.

After Jane filed her complaint, USI began a Title IX investigation.  To help with the investigation, USI contracted and employed several individuals. *Id.* ¶¶ 10, 19, 21, 26, 31, 36. USI contracted Grand River Solutions, Inc. ("GRS") to provide three persons to conduct the Title IX hearing involving John.  *Id.* ¶¶ 31, 35.  GRS designated Karen Nutter ("Nutter," and collectively with GRS, "GRS Defendants"), Kevin Lineberger, and Tera Johnson as the three persons to conduct USI's Title IX hearing involving John.  *Id.* ¶ 36.

On August 25, 2021, USI issued the written determination, summary, and decision (the "Decision") as to the allegations made by Jane.  *Id.* ¶ 283.  The Decision stated:

> **Hearing Overview: Allegations of Title IX Sexual Harassment**
>
> This hearing was conducted to determine whether [John], ("Respondent") engaged in prohibited conduct in violation of the University of Southern Indiana's Sexual Harassment Policy by committing Sexual Assault, defined as a forcible sex offense, that occurred on November 14, 2020 on the University's campus in . . . Specifically, [Jane] alleged that while in her residence hall room, Respondent kissed her, touched her breast, and digitally penetrated her vagina without her consent.
>
> As stated in the July 26, 2021 Hearing Notice, these allegations, if substantiated, would be a violation of one or more of the following:
>
> Sexual harassment under Title IX (20 U.S.C. §§ 1681-1688), Title IX Regulations (34 C.F.R. part 106), and
>
> Specifically, Sexual Harassment:

2

> 3. Sexual assault, meaning an offense classified as a forcible or nonforcible sex offense under the uniform crime reporting system of the Federal Bureau of Investigation (https://ucr.fbi.gov/nibrs/2012/resources/nibrs-offense-definitions). Specific language concerning these definitions can be found here: https://www.usi.edu/sexual-assault-prevention-and-response/sexual-harassmentreltated-polices-procedures/sexual-violenceassault/.
>
> Of particular relevance to these allegations:
>
> - The forcible sex offense of Rape is defined as "the penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim."
> - The forcible sex offense of Fondling is defined as "the touching of the private body parts of another person for the purpose of sexual gratification, forcibly and/or against that person's will or not forcibly or against the person's will in instances where the victim is incapable of giving consent because of his/her youth or because of his/her temporary or permanent mental or physical incapacity."

*Id.* ¶ 286.  The Decision concluded:

> Considering the totality of the evidence in the record, the Decision Makers find that [Jane's] account is more credible than [John's]. Because [Jane's] account is more credible than [John's], the Decision Makers further find that it is more likely than not that in the early morning hours of November 14, 2020, [John] touched [Jane's] breasts and vagina, and digitally penetrated her, without her consent.
>
> Because it is more likely than not that he engaged in these actions, the Decision Makers find that [John] violated University policy against Sexual Harassment, specifically Rape and Forcible Fondling.

*Id.* ¶ 287.  USI represented in its interrogatory answers dated January 24, 2023, that it modified and supplemented certain language in USI's sexual harassment policy on August 2, 2023.  *Id.* ¶ 232.  USI asserted that it modified and supplemented the definition of rape and forcible fondling as part of its sexual harassment policy on August 2, 2021.  *Id.* ¶ 233.

John alleges that USI's entire Title IX disciplinary process was conducted in a manner that was permeated by gender bias because USI created a new allegation against John and imposed a definition of "rape" which was contrary to the February policy.  *Id.* ¶¶ 356, 404.

B. **Procedural Background**

On April 24, 2023, John filed the operative Second Amended Complaint against Defendants USI, Dameion Doss, Beth Devonshire, D. Stafford & Associates, Nutter and GRS (Filing No. 196). The Second Amended Complaint asserts three claims: Count I: Violation of Title IX (against USI only); Count II: Claims under 42 U.S.C. § 1983 (against all Defendants); and Count III: Intentional Infliction of Emotional Distress ("IIED") (against all Defendants). *Id.* at 50-55.

The Case Management Plan was created on September 15, 2022 (Filing No. 164) and amended on May 24, 2023 (Filing No. 223). Non-expert witness discovery and discovery relating to liability issues were to be completed by October 12, 2023 (Filing No. 223 at 3). Any dispositive motions were to be filed on or before November 9, 2023, and all briefing was to be complete by January 18, 2024. *Id.* On November 9, 2023, USI and the GRS Defendants filed Motions for Summary Judgment (Filing No. 314; Filing No. 317, respectively). On December 15, 2023, John filed a Cross-Motion for Summary Judgment as to Liability (Filing No. 329). After two motions for an extension of time were granted (Filing No. 348; Filing No. 368), briefing for the summary judgment motions were complete on February 22, 2024.

While summary judgment briefing was underway, John filed a Motion to Compel and for Sanctions as to USI (Filing No. 352). John asked the Court to order USI to produce:

- a. the Policy information contained on USI's Clean Catalog software system that (i) USI currently possesses as to the sexual harassment policies for the period from July 9, 2021, through August 25, 2021, and (ii) that USI provided to its counsel months ago to create the Spreadsheet;
- b. all documents responsive to RFP Nos. 267, 271, 275, 279, 283;
- c. all documents responsive to RFP No. 258; and
- d. USI Bates Nos. 10493-10545, 09099-09101 and 09103-09554 on the Log.

*Id.* at 1. On April 4, 2024, the Magistrate Judge granted in part and denied in part John's Motion to Compel (Filing No. 384). As ordered by the Magistrate Judge, USI produced a single email

4

dated August 11, 2021, from Beth Devonshire to the USI Administrator which included a single attachment (the "Update") (Filing No. 387-1). The Update is a copy of a PowerPoint presentation about Title IX that was communicated to USI faculty and staff. USI was not ordered to produce any additional Clean Catalog information because the Magistrate Judge stated "[i]t would be quite burdensome indeed to attempt to produce something that does not exist. [USI] has stated unequivocally that additional documents do *not* exist." (Filing No. 384 at 7) (emphasis in original).

On April 11, 2024, John filed a Motion to Supplement his summary judgment briefing with the Update produced by USI as a result of the Motion to Compel (Filing No. 387). On April 16, 2024, John filed another Motion to Supplement his summary judgment briefing, this time with "judicial admissions" and "judicial determinations" from the Magistrate Judge's Order on the Motion to Compel (Filing No. 390). On May 22, 2024, John submitted his third Motion to Supplement (the "Third Motion") (Filing No. 418). In the Third Motion, John seeks to supplement his summary judgment briefing with a PowerPoint presentation titled, "Title IX Training for Univ 101" ("Univ 101 PowerPoint") (*see* Filing No. 418 at 1). John received the Univ 101 PowerPoint as part of discovery on June 19, 2023, but did not realize it was illegible until preparing his final witness list on May 10, 2024 (Filing No. 418 at 2; Filing No. 427 at 3). John contends the foregoing is relevant, material, and conclusive evidence that supports his Title IX claim and remaining IIED claims against the GRS defendants.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order." A party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a

movant's affidavits and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact. *Korf v. Ball State Univ.*, 726 F.2d 1222, 1230 (7th Cir. 1984) (quoting *Lamb's Patio Theatre v. Universal Film Exchs.*, 582 F.2d 1068, 1071 (7th Cir. 1978)). This requires an affidavit from the non-movant identifying the material facts that it anticipates discovering. *See Grundstat v. Ritt*, 166 F.3d 867, 873 (7th Cir. 1999).

### III.    DISCUSSION

John has filed multiple motions to supplement his summary judgment briefing (*see* Filing No. 387; Filing No. 390; Filing No. 418). John fails to cite any rule or provide any case law that would permit him to supplement his summary judgment briefing, but the Court presumes he is seeking relief pursuant to Federal Rule of Civil Procedure 56(d) or Local Rule 56-1(d).

Under Federal Rule of Civil Procedure 56(d), a court may defer considering a motion, issue any order it deems appropriate, or allow a party more time to take discovery if the non-movant shows by affidavit or declaration that, for specified reasons, it could not present facts essential to justify its opposition. Relatedly, Local Rule 56-1(d) permits a non-movant the ability to file a surreply in instances where the movant cites new evidence in the reply or objects to the admissibility of evidence cited in the response. S.D. Ind. L.R. 56-1(d). If a surreply is appropriate, it must be filed within seven days after the movant serves the reply. *Id.*

There is no provision in Fed. R. Civ. P. 56(d) or Local Rule 56-1(d) that allows John, the movant, to file a surreply so none of John's motions to supplement can be construed as requests for leave to file surreply in support of his own cross-motion. John could have filed a surreply in opposition of Defendants' summary judgment motions, but he missed the deadline to do so. Defendants filed their replies on January 30, 2024 (Filing No. 362; Filing No. 364). John had until February 6, 2024, to file a surreply. John did not file his first motion to supplement until April 11,

6

2024, approximately 72 days after the Defendants had filed their reply.  Furthermore, John's motions do not qualify as surreplies because none of the motions identify or object to any "new evidence in the reply" that USI or the GRS Defendants filed on January 30, 2024.

John argues he is seeking to supplement the summary judgment briefing based on documents received from the April 4, 2024 Order granting in part his Motion to Compel ([Filing No. 384](#)).  However in his February 22, 2024 Reply Brief on Cross-Motion for Summary Judgment, John anticipated that he would have needed to supplement his summary judgment briefing (*see* [Filing No. 373 at 10](#) n.3).  John should have filed a Rule 56(d) motion at that time requesting the Court to stay ruling on the summary judgment motions and an extension of the summary judgment briefing deadlines until the Magistrate Judge ruled on the Motion to Compel.  *See Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006) (finding that plaintiff should have filed a Rule 56(f) motion when it became clear that the parties' discovery dispute was not going to be resolved prior to the expiration of summary judgment briefing deadlines).[1]  However, even if John had submitted his motions to supplement within the required 7-day window, his motions do not follow the directives of Rule 56(d) as his motions include no affidavit or declaration.  *Cf. Spierer v. Rossman*, No. 1:13-cv-00991-TWP, 2014 WL 4908023, at *6 (S.D. Ind. Sept. 30, 2014) (noting that because plaintiff did not submit a Rule 56(d) motion with his affidavit there was nothing for the court to act upon to issue an order).

The Court also finds that the supplements John wishes to include are cumulative of the evidence and arguments he presented to the Court on summary judgment.  First, John seeks to supplement his summary judgment briefing with the Update.  John argues that the Update is proof

---

[1] On December 1, 2010, the Federal Rules of Civil Procedure were amended.  Prior to December 1, 2020, the substance of what is now Rule 56(d) was contained in the former Rule 56(f). The standards applied to Rule 56(f) apply equally to Rule 56(d).

7

that there were no pre-hearing policy amendments approved or implemented. John makes this same argument in his summary judgment briefing and submits multiple exhibits to support his position (*see* Filing No. 342 at 25-27; Filing No. 341-2; Filing No. 341-8; Filing No. 330-18). Second, John seeks to supplement his summary judgment briefing with judicial admissions and judicial determinations. "A judicial admission is a statement, normally in a pleading, that negates a factual claim that the party making the statement might have made or considered making." *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010). In order to qualify as a judicial admission, an attorney's statements must be deliberate, clear, and unambiguous. *Id*. USI's statement that no additional Clean Catalog information exists is not an admission that there was no pre-hearing policy amendments made. It simply means that there is no Clean Catalog information stating that there was a pre-hearing policy amendment made. Similarly, the Magistrate's Judge statement that it would be hard for USI to produce a document that they state does not exists is not a determination evidencing "USI and [GRS Defendants'] false narrative." (*see* Filing No. 390 at 13). Lastly, John seeks to supplement his summary judgment briefing with a legible version of the Title IX Training for Univ 101 because he argues it demonstrates that no pre-hearing policy amendments were made. Again, this same argument is set forth in the summary judgment briefing for which John has provided several exhibits as support.

      The Cross-Motions for Summary Judgment have been ripe for ruling since February 22, 2024, and the inclusion of the proposed supplements would require additional briefing and cause unnecessary delay to a case that has been pending for almost three years. Accordingly, because John's motions to supplement are untimely, do not comport with the Local Rules, and the evidence he seeks to include is cumulative, John's Motions to Supplement the Summary Judgment Record are **denied**.

## IV.   CONCLUSION

For the reasons stated above, John's Motion to Supplement Summary Judgment Designation of Evidence and Filings (Filing No. 387), Second Motion to Supplement Summary Judgment Designation of Evidence and Filings with Judicial Admissions and Judicial Determinations (Filing No. 390), and Third Motion to Supplement Summary Judgment Designation of Evidence and Filings (Filing No. 418) are **DENIED**.

**SO ORDERED.**

Date:  8/1/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Keith W. Vonderahe
ZIEMER STAYMAN WEITZEL & SHOULDERS
kvonderahe@zsws.com

Matthew Stephen Koressel
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
mkoressel@zsws.com

Robert L. Burkart
ZIEMER STAYMAN WEITZEL & SHOULDERS
rburkart@zsws.com

William P. Kealey
STUART & BRANIGIN LLP
wpk@stuartlaw.com

Aj Bokeno
WILSON ELSER
aj.bokeno@wilsonelser.com

Edward M. O'Brien
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
edward.obrien@wilsonelser.com